**DEFENDANT'S APPENDIX TO SUPPLEMENTAL BRIEF**
**March 18, 2005**


| **Description** | **Tab** |
| --- | --- |
| Declaration of Joan Barminski, dated March 17, 2005 | A |
| Letter dated August 2, 2001 from Thomas M. Gladney, Arguello, to Dr. Maher Ibrahim, Minerals Management Service re: Update to Suspension Request, Rocky Point Unit, Leases P-0452 and P-453 | 1 |
| Letter dated August 4, 2000 from Maher A. Ibrahim, Minerals Management Service, to T.E. Enders, Aera Energy LLC re: Plan for Re-Unitization, Lion Rock, Point Sal, Purisima Point and Santa Maria Units, and Lease OCS-P 0409 Offshore Santa Maria Basin | 2 |
| 30 C.F.R. § 250.12 (1984) (Suspension of operations and lease cancellation.) | B |
| 30 C.F.R. § 250.110 (1999) (Suspension of production or other operations.) | C |
| 30 C.F.R. § 282.13 (2005) (Suspension of production or other operations.) | D |
| 30 C.F.R. § 250.1301 (2005) (What are the requirements for unitization?) | E |
| 15 C.F.R. § 930.32 (2005) (Consistent to the maximum extent practicable) | F |

# TAB A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DECLARATION OF JOAN BARMINSKI**

Joan Barminski declares and states as follows:

1. I am the Deputy Regional Manager of the Pacific Outer Continental Shelf Region, Minerals Management Service ("MMS"), United States Department of the Interior. At all

relevant times regarding the matters addressed in this declaration, I was either the Chief of the Office of Reservoir Evaluation and Production, or the Chief, Production, Development and Resrevoir Analysis Section, of the Pacific Outer Continental Shelf Region of MMS. I make this declaration based upon my personal knowledge.

2. Attached as Exhibit 1 to this declaration is a true and accurate copy of a letter dated August 2, 2001 to Dr. Maher Ibrahim, Regional Supervisor, Production, Development, and Resource Evaluation, of the Pacific Outer Continental Shelf Region of MMS, from Mr. Thomas M. Gladney, Project Manager, Arguello Inc. The subject of the letter is Update to Supsension Request, Rocky Point Unit, Leases P-0452 and P-0453.

3. Attached as Exhibit 2 to this declaration is a true and accurate copy of a letter dated August 4, 2000 to Mr. T. E. Enders, Aera Energy LLC, from Dr. Maher Ibrahim, Regional Supervisor, Production, Development, and Resource Evaluation, of the Pacific Outer Continental Shelf Region of MMS. The subject of the letter is Plan for Re-Unitization, Lion Rock, Point Sal, Purisima Point and Santa Maria Units, and Lease OCS-P 0409, Offshore Santa Maria Basin.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2005.

Joan Barminski

Joan Barminski

**EXHIBIT 1**

ARGUELLO

8/3/01 copies to:
Mayerson
Sharabi
Baranoski
Ibrahim
FO, Dunaway
EE, Wilhelmsen
Arnesen

RECEIVED
AUG - 3 2001
PRODUCTION, DEVELOPMENT AND RESOURCE EVALUATION
PACIFIC OCS REGION

August 2, 2001
Dr. Maher Ibrahim
Regional Supervisor
Production, Development, and Resource Evaluation
Minerals Management Service
U. S. Department of the Interior
770 Paseo Camarillo
Camarillo, CA 93010

Re: Update to Suspension Request
Rocky Point Unit
Leases P-0452 and P-0453

Dear Dr. Ibrahim:

Thank you for providing Arguello the opportunity to review our May 1999 and April 2001 suspension requests for leases P-0452 and P-0453 of the Rocky Point Unit in view of your letter of July 2, 2001 substituting a directed Suspension of Operations.

Attached to this letter is a revised schedule of work to account for the time we estimate for the consistency process and other activities to take place.

As you may be aware, a revised Development and Production Plan (DPP) for Rocky Point Unit was submitted to the California Coastal Commission in May 2001 where it has been undergoing consistency review. In our schedule we assume that the MMS will make a Consistency Determination on the Rocky Point Suspensions of Production in December 2001 and the revised DPP will be determined as Consistent by June 1, 2002. Following that we will source and mobilize a suitable drilling rig, submit our application to drill, and drill the initial Rocky Point Unit development well. First production under this schedule would be anticipated to occur in April 2003.

Also attached for your review is an updated discussion of activities that have occurred since May 1999.

As you are aware, our approved April 2001 Suspension of Production contained certain milestone activities including completion of a drilling technology report, completion of a petro-physical analysis report, and completion of mapping based on 3-d seismic reinterpretation. Regardless of the status of the Suspension, Arguello is going forward with these activities and will complete them all on or before the milestone dates. These activities will take place wholly within an office workplace; therefore, they have no

environmental impacts what-so-ever. We do not anticipate any other preliminary type activities to have any environmental impacts.

Your consideration of this update request is appreciated.

Sincerely,

Thomas M. Gladney
Project Manager

# Rocky Point Ur Offshore California
## Suspension of Production - Development P. am Schedule of Events Leading to Production

| ID | Task Name |
|---|---|
| 1 | |
| 2 | **Internal/ External Studies** |
| 3 | *Reprocessing of 3D Seismic* |
| 4 | Geological/geophysical re-interpretation |
| 5 | Drilling Technology Study |
| 6 | RPU Cores - Petrophysical analysis |
| 7 | **FDP Permit Modification** |
| 8 | Prepare and Submit Application |
| 9 | *Application Deemed Complete* |
| 10 | Initial Study Issued |
| 11 | Prepare EA/MND, obtain comments |
| 12 | Hearing and Permit Issuance |
| 13 | **DPP and SOP Approval** |
| 14 | Generation and Submission of Project Description |
| 15 | Revise Point Arguello DPP, to use Platforms and related facilities |
| 16 | DPP submitted to MMS |
| 17 | DPP Comments & Deficiencies |
| 18 | DPP Consistency Determination Submitted to CCC |
| 19 | Environmental Assessment Process, involves coordination with state, county |
| 20 | *SOP consistency determination submitted to CCC* |
| 21 | CCC Consistency Review of SOP and DPP |
| 22 | **Drilling and Production** |
| 23 | Submit Application to Drill |
| 24 | Drilling rig sourcing, mobilization |
| 25 | Spud Unit Well, Suspension of Production Period Terminates |
| 26 | Drill initial Unit production well |
| 27 | *Production Startup* |



**EXHIBIT 2**

# United States Department of the Interior

MINERALS MANAGEMENT SERVICE
Pacific OCS Region
770 Paseo Camarillo
Camarillo, California 93010-6064

IN REPLY REFER TO: 7100

August 4, 2000

Mr. T. E. Enders
Aera Energy LLC
P.O. Box 11164
Bakersfield, CA 93389-1164

Re: Plan for Re-Unitization
Lion Rock, Point Sal, Purisima Point and
Santa Maria Units, and Lease OCS-P 0409
Offshore Santa Maria Basin

Dear Mr. Enders:

We acknowledge receipt of your letter dated July 21, 2000. The information submitted by Aera Energy LLC, along with other information available to MMS, does not support the concept of consolidation of the offshore Santa Maria Basin acreage into one unit. The idea of consolidating 180 square miles into a single unit would not expedite or promote development, as required by 30 CFR 250.1301.

We are available to meet with you to discuss the issues of re-unitization, but only after we receive and have time to review Aera's complete and current geologic, geophysical, and engineering interpretation and analysis of the area comprising the four offshore Santa Maria Basin units and Lease OCS-P 0409. Development and production scenario(s) under the proposed unitization are also needed. The requested information is necessary to review any unitization proposal. We need to review the same information that Aera, as operator, and its partners use to arrive at and support the re-unitization proposal.

If you need further clarification about required information, please let us know.

Sincerely,

Harold Syms for

Maher A. Ibrahim
Regional Supervisor
Production, Development and Resource Evaluation

**TAB B**

Citation 30 CFR S 250.12 | Search Result | Rank 6 of 22 | Database CFR84

Title 30--Mineral Resources
Chapter II--Minerals Management Service, Department of the Interior
Subchapter B--Offshore
Part 250--Oil and Gas and Sulphur Operations in the Outer Continental Shelf
Jurisdiction and Functions

s 250.12 Suspension of operations and lease cancellation.

(a)(1)(i) The Director may suspend or temporarily prohibit production or any other operation or activity when the lessee fails to comply with a provision of the Act or any other applicable law, a provision of a lease or permit, a provision of these and other applicable regulations, OCS Orders, or any other written orders or field rules including orders for the filing of reports and well records or logs within the time specified.

(a)(1)(ii) The Director may suspend or temporarily prohibit production or any other operation or activity pursuant to any lease issued or maintained under the Act when the Director determines that there is a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), or to the marine, coastal, or human environment.

(a)(1)(iii) The Director may, pursuant to the provisions of subsections 5(a) and 12(c) and (d) of the Act, suspend or temporarily prohibit production or any other operations or activities when such action is in the interest of national security or defense.

(a)(1)(iv) The Director may suspend or temporarily prohibit production or any other operation or activity to facilitate the preparation of an environmental impact statement or environmental analysis, or for any other purpose necessary for the implementation of the National Environmental Policy Act.

(a)(2) The Director may suspend or temporarily prohibit production or any other operation or activity separately as to oil or gas, or as to any other mineral designated in the suspension order as to all or any portion of the leasehold.

(a)(3) The Director shall issue orders of suspension or temporary prohibition pursuant to this subsection either in writing or orally with subsequent written confirmation.

(b)(1) Upon the request of a lessee, the Director may suspend or temporarily prohibit production or any other operation or activity pursuant to a lease when the Director determines that the suspension or temporary prohibition is in the national interest and will--

(b)(1)(i) Facilitate proper development of a lease;

(b)(1)(ii) Allow for the construction of, or for the negotiation for the use of, transportation facilities;

(b)(1)(iii) Facilitate the installation of equipment the Director determines is necessary for safety or environmental reasons; or

(b)(1)(iv) Allow for inordinate delays encountered by the lessee in obtaining any required permit or consent from a Federal, State, or local Government authority, including administrative or judicial challenges or appeals.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b)(2) The lessee must submit, with a request for a suspension, the reasons for requesting the suspension, a schedule of work leading to the expeditious initiation or restoration of production or any other operation or activity, and any other information the Director may require.

(b)(3) In determining whether a suspension of production or any other operation or activity is in the national interest, the Director shall consider:

(b)(3)(i) All known significant national benefits and national costs;

(b)(3)(ii) Whether environmental problems or other unforeseen conditions necessitate a significant halt in production or any other operation or activity; and

(b)(3)(iii) Whether, during the primary term, the lessee has been prompt and efficient in the exploration or in attempts to explore the lease.

(b)(4) A suspension of production or any other operation or activity may be granted under this subsection for periods of time each of which must not exceed 5 years.

(c) For leases in the Gulf of Mexico and as provided for by lease stipulation, the Director shall suspend or temporarily prohibit production or any other operation or activity pursuant to a lease when such lease is in water depths of 400 to 900 meters, provided that the suspension or temporary prohibition shall be for such period of time as is necessary to complete the activities described in a development and production plan approved by the Regional Supervisor in accordance with § 250.34-2. However, in no case shall the suspension or temporary prohibition be for a period of time which exceeds 5 years.

(d)(1) When the Director suspends or temporarily prohibits production or any other operation or activity pursuant to paragraph (a), (b), or (c) of this section, the term of the lease shall be extended for a period of time equivalent to the period that the suspension or prohibition is in effect. However, no lease shall be extended pursuant to this subsection when the Director's suspension or temporary prohibition is the result of the lessee's or permittee's gross negligence or of a knowing and willful violation of a provision of the Act, of the regulations, or of a lease or permit.

(d)(2) Any suspension may be terminated at any time when the Director determines that the circumstances which justified the granting of the suspension no longer exist. When the Director terminates a suspension prior to the end of the period of time for which the suspension was originally granted, the Director shall specify in the notice of termination the reason(s) for the termination and the effective date for the termination of the suspension.

(d)(3) Any suspension shall terminate automatically upon the commencement of production or any other suspended operation or activity.

(e)(1) When the Director suspends or temporarily prohibits production or any other operation or activity pursuant to paragraph (a)(1)(ii) of this section, the Director may require the lessee to conduct (a) site-specific study or studies to identify and evaluate the cause(s) of the hazard(s) generating the suspension, the potential damage from the hazard(s), and the measures available for mitigating the hazard(s). The content and scope of the study or studies shall be approved or prescribed by the Director. Prior to approval of a study program, the Director may invite comments and recommendations, on an informal basis, from interested Federal Departments and Agencies, affected States and local governments, and other interested parties. The lessee shall furnish

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

copies and all results of the study or studies to the Director. The cost of the study or studies shall be borne by the lessee unless the Director arranges for the cost of the study or studies to be borne by a party other than the lessee. The lessee may be reimbursed for the cost of information and data as otherwise authorized in this Part of the regulations. The Director shall make such results available to interested parties and to the public.

(e)(2) On the basis of the results of the study or studies conducted in accordance with paragraph (e)(1) of this section and other information available to and identified by the Director, the Director will submit a report to the Secretary. The report shall indicate the damage or threat of damage being avoided and shall recommend mitigating measures, if any, that may successfully alleviate such damage or threat of damage. On the basis of the Director's report and recommendations, and other information or advice the Secretary deems and identifies as relevant, the Secretary shall require the lessee to take appropriate measures to mitigate or avoid the damage or potential damage, which resulted in the suspension or temporary prohibition of production or of any other operation or activity, as a condition for permitting the resumption of exploration, development, or production activities on the lease. The lessee shall submit, when deemed appropriate by the Director, a revised exploration plan or a revised development and production plan in accordance with § 250.34 of this part. The revised plan shall incorporate the mitigating measures required by the Secretary. In choosing between alternative mitigating measures, the Secretary will balance the cost of the required measures against the reduction or potential reduction in damage or threat of damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment.

(e)(3) If the lessee cannot comply with the conditions established by the Secretary for ending the suspension or temporary prohibition of production or any other operation or activity on the lease, or if the Secretary determines that adequate protection from serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment will not be provided by the mitigating measures, the Secretary shall leave the suspension in effect.

(e)(4) The Secretary may terminate a suspension and cancel a lease in accordance with the provisions of this subsection when:

(e)(4)(i) Continued activity pursuant to the lease or permit would probably cause serious harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment;

(e)(4)(ii) The threat of harm or damage will not disappear or decrease to an acceptable extent within a reasonable period of time; and

(e)(4)(iii) The advantages of cancellation outweigh the advantages of continuing the lease or permit in force.

(e)(5) Cancellation of a lease pursuant to this subsection is in the Secretary's discretion, but cannot occur until the operation or activity in question under the lease or permit has been under suspension or temporary prohibition, with due extension of the term of the lease, continuously for a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

period of 5 years or, upon the request of the lessee, for a lesser period of time. If a lease is cancelled under this section, the lessee shall be entitled to compensation pursuant to the provisions of paragraph (h) of this section.

(e)(6) Cancellation of a lease pursuant to this subsection will become effective only after the affected lessee has been given notice and an opportunity for a hearing.

(f) Whenever an exploration plan is disapproved because the Director determines that approval of the activities called for in the plan would probably cause serious harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment, and the proposed activity cannot be modified to avoid these dangers, the Secretary may, once the primary lease term has been extended continuously for a period of 5 years following the disapproval, or, upon request of the lessee, at an earlier time, terminate the suspension or temporary prohibition and cancel the lease, and the lessee shall be entitled to compensation pursuant to subsection (h) of this section.

(g)(1) Where a development and production plan is submitted before the subsequent approval of a coastal zone management program for an affected State, pursuant to the Coastal Zone Management Act, and the plan is disapproved because the lessee does not receive concurrence by such State pursuant to section 307(c)(3)(B)(i) or (ii) of the Coastal Zone Management Act, and the Secretary of Commerce does not make the finding authorized by section 307(c)(3)(B)(iii) of the Coastal Zone Management Act; or if the Secretary makes findings pursuant to § 250.34-2(g)(2)(iii)(C):

(g)(1)(i) The term of the lease shall be duly extended and, at any time within 5 years after such disapproval, the lessee may reapply for approval of the same or a modified plan, and the Director shall approve, disapprove, or require modification of the plan in accordance with the provisions of 30 CFR 250.34-2; and

(g)(1)(ii) Upon expiration of the 5-year period described in paragraph (g)(1)(i) of this section or, at the Secretary's discretion, at an earlier time upon request of the lessee, if the Director has not approved a plan, the Secretary shall cancel the lease and the lessee shall be entitled to compensation pursuant to paragraph (g) of this section.

(g)(1)(iii) The Secretary may, at any time within the 5-year period described in paragraph (g)(1)(i) of this section, require the lessee to submit a development and production plan for approval, disapproval, or modification. If the lessee fails to submit a required plan expeditiously and in good faith, the Secretary shall find that the lessee has not been prompt and efficient in pursuing obligations under the lease, and, notwithstanding the provisions of paragraph (g)(1)(i) of this section, the Secretary shall immediately initiate procedures to cancel the lease under the provisions of subsection 5(c) of the Act, and the lessee shall not be entitled to compensation.

(g)(2) Where a development and production plan is submitted after approval of a State's coastal zone management program pursuant to the Coastal Zone Management Act, and the plan is disapproved because the lessee does not receive concurrence by the State pursuant to section 307(c)(3)(B)(i) or (ii) of the Coastal Zone Management Act, and the Secretary of Commerce does not make the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

finding authorized by section 307(c)(3)(B)(iii) of the Coastal Zone Management Act, the lessee shall not be entitled to compensation when the lease expires.

(g)(3) Whenever the owner of a lease fails to submit a development and production plan in accordance with 30 CFR 250.34-2, or fails to comply with an approved plan, the lease may be cancelled in accordance with sections 5(c) or (d) of the Act. Cancellation of a lease because of failure to submit a plan or to comply with an approved plan, including required modifications or revisions, shall not entitle the lessee to any compensation.

(g)(4) Whenever the owner of a nonproducing lease fails to comply with any of the provisions of the Act, or of the lease, or of the regulations issued under the Act, and the default continues for a period of 30 days after the mailing of a notice by registered letter to the lease owner, the Secretary may cancel the lease pursuant to subsection 5(c) of the Act, and the lessee shall not be entitled to compensation.

(g)(5) Whenever the owner of any producing lease fails to comply with any of the provisions of the Act, of the lease, or of the regulations issued under the Act, the Secretary may cancel the lease pursuant to subsection 5(d) of the Act, and the lessee shall not be entitled to compensation.

(g)(6) Whenever a development and production plan is disapproved because of a failure to demonstrate compliance with the requirements of the Act or other applicable Federal law, including the air quality regulations prescribed by the Secretary pursuant to section 5(a)(8) of the Act, the lessee shall not be entitled to compensation when the lease expires.

(h) Cancellation of a lease under subsections (e) and (f) and paragraph (g) of this section shall entitle the lessee to receive such compensation as the lessee shows the Director as being equal to the lesser of:

(h)(1) The fair value of the cancelled rights as of the date of cancellation, taking account of both anticipated revenues from the lease and anticipated costs, including costs of compliance with all applicable regulations and operating orders, liability for cleanup costs or damages, or both, in the case of an oilspill, and all other costs reasonably anticipated on the lease; or

(h)(2) The excess, if any, over the lessee's revenues from the lease (plus interest thereon from the date of receipt to date of reimbursement) of all consideration paid for the lease and all direct expenditures made by the lessee after the date of issuance of the lease and in connection with exploration or development, or both, pursuant to the lease (plus interest on this consideration and expenditures from date of payment to date of reimbursement), except that:

(i) With respect to leases issued before enactment of the Act, compensation shall be equal to the amount specified in paragraph (h)(1) of this section; and

(ii) In the case of jointly held leases which are cancelled due to the failure of one or more partners to exercise due diligence, the innocent parties shall have the right to seek damages for losses from the responsible party or parties and the right to acquire the interests of the negligent party or parties and be issued the lease in question.

[44 FR 61892, Oct. 26, 1979; 45 FR 20464, Mar. 28, 1980, as amended at 47 FR 25331, June 11, 1982; 47 FR 30057, July 12, 1982; 49 FR 17450, April 24, 1984; 49 FR 26665, June 27, 1984]

AUTHORITY: Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et seq., as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amended, 92 Stat. 629; National Environmental Policy Act of 1969, 42 U.S.C. 4332 et seq. (1970); Coastal Zone Management Act of 1972, as amended, 16 U.S.C. 1451 et seq.

SOURCE: 44 FR 61892, Oct. 26, 1979, unless otherwise noted.

EDITORIAL NOTE: Nomenclature changes to this part appear at 47 FR 28369, June 30, 1982.

30 CFR s 250.12

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB C**

**CODE OF FEDERAL REGULATIONS**
**TITLE 30--MINERAL RESOURCES**
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER B--OFFSHORE**
**PART 250--OIL AND GAS AND SULPHUR OPERATIONS IN THE OUTER CONTINENTAL SHELF**
**SUBPART A--GENERAL**

§ 250.110 Suspension of production or other operations.

(a) The Regional Supervisor may, on the Regional Supervisor's initiative or at the request of the lessee, suspend or temporarily prohibit production or any other operation or activity on all or any part of a lease (suspension) when the Regional Supervisor determines that such suspension is in the national interest and that the suspension is necessary as follows:

(1) To facilitate proper development of a lease including reasonable time to construct production facilities;

(2) To allow for the construction or negotiation for use of transportation facilities;

(3) To allow reasonable time to enter into a sales contract for oil, gas, or sulphur, when good faith efforts to secure such contract(s) are being made;

(4) To allow reasonable time to commence drilling operations when good faith efforts are prevented by reasons beyond the lessee's control, such as unexpected weather or unavoidable accidents; or

(5) To avoid continued operations which would result in premature abandonment of a producing well(s) or would not be economic.

(b) The Regional Supervisor may also direct or, at the request of the lessee, approve a suspension of any operation or activity, including production, because of the following:

(1) The lessee failed to comply with a provision of any applicable law, regulation, or order, or provision of a lease or permit;

(2) There is a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit, or the marine, coastal, or human environment;

(3) The suspension is in the interest of national security or defense;

(4) The suspension is necessary for the implementation of the requirements of the National Environmental Policy Act or to conduct an environmental analysis;

(5) The suspension is necessary to facilitate the installation of equipment necessary for safety and environmental reasons;

(6) The suspension is necessary to allow for inordinate delays encountered by the lessee in obtaining required permits or consents, including administrative or judicial challenges or appeals; or

(7) The suspension is necessary to comply with judicial decrees prohibiting production or any other operation or activity, or the permitting of those activities, effective the date set by the court for that prohibition.

(c) If provided for by lease stipulation, the Regional Supervisor shall suspend or temporarily prohibit production or any other operation or activity pursuant to a lease when such lease is in water depths of 400 to 900 meters, provided that the suspension or temporary prohibition shall be for such period of time as is necessary to complete

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the activities described in a Development and Production Plan approved by the Regional Supervisor in accordance with § 250.204. However, in no case shall the suspension under this paragraph be for periods of time which exceed a total of 5 years.

(d)(1) A suspension of production pursuant to paragraph (a)(1), (2), or (3) of this section may not be issued unless a well on the lease for which the suspension is requested has been drilled and determined to be producible in paying quantities in accordance with § 250.111.

(2) For sulphur operations, a suspension of production pursuant to paragraph (a)(1), (2), or (3) of this section may not be issued unless a deposit on the lease for which the suspension is requested has been drilled and determined to be producible in paying quantities in accordance with 30 CFR 250.1603.

(e) Except as provided in paragraph (c) of this section, suspensions under this section may be granted for periods of time each of which shall not exceed 5 years.

(f) When the Regional Supervisor orders or approves a suspension pursuant to paragraphs (a), (b), or (c) of this section, the term of the lease shall be extended for a period of time equal to the period that the suspension is in effect, except that no lease shall be so extended when the suspension is the result of the lessee's gross negligence or willful violation of the lease or governing regulations.

(g) The Regional Supervisor may, at any time within the period prescribed for a suspension issued pursuant to paragraph (b)(2) of this section, require the lessee to submit a plan for approval, disapproval, or modification in accordance with Subpart B, Exploration and Development and Production Plans.

(h)(1) When the Regional Supervisor directs or grants a suspension pursuant to paragraph (b)(2) of this section, the Regional Supervisor may require the lessee to conduct a site-specific study(s) to identify and evaluate the cause(s) of the hazard(s) generating the suspension, the potential damage from the hazard(s), and the measures available for mitigating the hazard(s). A reasonable scope of the study(s) shall be approved or prescribed by the Regional Supervisor. The lessee shall furnish copies and all results of the study(s) to the Regional Supervisor. The cost of the study(s) shall be borne by the lessee unless the Regional Supervisor arranges for the cost of the study(s) to be borne by a party(s) other than the lessee. The Regional Supervisor shall make such results available to interested parties and to the public.

(2) On the basis of the results of the study or studies conducted in accordance with paragraph (h)(1) of this section and other information available to and identified by the Regional Supervisor, the Regional Supervisor shall require the lessee to take appropriate measures to mitigate or avoid the damage or potential damage, which resulted in the suspension or temporary prohibition of production or of any other operation or activity, as a condition for permitting the resumption of exploration, development, or production activities on the lease. The lessee shall submit, when deemed appropriate by the Regional Supervisor, a revised Exploration Plan or a revised Development and Production Plan in accordance with § 250.204 of this part. The revised plan shall incorporate the mitigating measures required by the Regional Supervisor. In choosing between alternative mitigating measures, the Regional Supervisor will balance the cost of the required measures against the reduction or potential reduction in damage or threat of damage or harm to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment.

(i) The lessee must submit with a request for a suspension of production the reasons for requesting the suspension, a schedule of work leading to the commencement or restoration of production or any other operation or activity, and any other information the Regional Supervisor may require.

(j) Any suspension may be terminated at any time when the Director determines that the circumstances which justified the granting of the suspension no longer exist. When the Director terminates a suspension prior to the end of the period of time for which the suspension was originally granted, the Director shall specify in the notice

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of termination the reason(s) for the termination and the effective date for the termination of the suspension.

(k) Any suspension shall terminate automatically upon the commencement of production or any other suspended operation or activity.

[56 FR 32099, July 15, 1991; 63 FR 29479, 29484, May 29, 1998]

30 C. F. R. § 250.110

30 CFR § 250.110

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB D

**CODE OF FEDERAL REGULATIONS
TITLE 30--MINERAL RESOURCES
CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR
SUBCHAPTER B--OFFSHORE
PART 282--OPERATIONS IN THE OUTER CONTINENTAL SHELF FOR MINERALS OTHER THAN OIL, GAS, AND SULPHUR
SUBPART B--JURISDICTION AND RESPONSIBILITIES OF DIRECTOR**

Current through March 15, 2005; 70 FR 12611

§ 282.13 Suspension of production or other operations.

(a) The Director may direct the suspension or temporary prohibition of production or any other operation or activity on all or any part of a lease when it has been determined that such suspension or temporary prohibition is in the national interest to:

(1) Facilitate proper development of a lease including a reasonable time to develop a mine and construct necessary support facilities, or

(2) Allow for the construction or negotiation for use of transportation facilities.

(b) The Director may also direct or, at the request of the lessee, approve a suspension or temporary prohibition of production or any other operation or activity, if:

(1) The lessee failed to comply with a provision of applicable law, regulation, order, or the lease;

(2) There is a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit, or the marine, coastal, or human environment;

(3) The suspension or temporary prohibition is in the interest of national security or defense;

(4) The suspension or temporary prohibition is necessary for the initiation and conduct of an environmental evaluation to define mitigation measures to avoid or minimize adverse environmental impacts.

(5) The suspension or temporary prohibition is necessary to facilitate the installation of equipment necessary for safety of operations and protection of the environment;

(6) The suspension or temporary prohibition is necessary to allow for undue delays encountered by the lessee in obtaining required permits or consents, including administrative or judicial challenges or appeals;

(7) The Director determines that continued operations would result in premature abandonment of a producing mine, resulting in the loss of otherwise recoverable OCS minerals;

(8) The Director determines that the lessee cannot successfully operate a producing mine due to market conditions that are either temporary in nature or require temporary shutdown and reinvestment in order for the lessee to adapt to the conditions; or

(9) The suspension or temporary prohibition is necessary to comply with judicial decrees prohibiting production or any other operation or activity, or the permitting of those activities, effective the date set by the court for that prohibition.

(c) When the Director orders or approves a suspension or a temporary prohibition of operation or activity including production on all of a lease pursuant to paragraph (a) or (b) of this section, the term of the lease shall be extended for a period of time equal to the period of time that the suspension or temporary prohibition is in effect, except that no lease shall be so extended when the suspension or temporary prohibition is the result of the lessee's gross negligence or willful violation of a provision of the lease or governing regulations.

(d) The Director may, at any time within the period prescribed for a suspension or temporary prohibition issued pursuant to paragraph (b)(2) of this section, require the lessee to submit a Delineation, Testing, or Mining Plan for approval in accordance with the requirements for the approval of such plans in this part.

(e)(1) When the Director orders or issues a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

suspension or a temporary prohibition pursuant to paragraph (b)(2) of this section, the Director may require the lessee to conduct site-specific studies to identify and evaluate the cause(s) of the hazard(s) generating the suspension or temporary prohibition, the potential for damage from the hazard(s), and the measures available for mitigating the hazard(s). The nature, scope, and content of any study shall be subject to approval by the Director. The lessee shall furnish copies and all results of any such study to the Director. The cost of the study shall be borne by the lessee unless the Director arranges for the cost of the study to be borne by a party other than the lessee. The Director shall make results of any such study available to interested parties and to the public as soon as practicable after the completion of the study and submission of the results thereof.

(2) When the Director determines that measures are necessary, on the basis of the results of the studies conducted in accordance with paragraph (e)(1) of this section and other information available to and identified by the Director, the lessee shall be required to take appropriate measures to mitigate, avoid, or minimize the damage or potential damage on which the suspension or temporary prohibition is based. When deemed appropriate by the Director, the lessee shall submit a revised Delineation, Testing, or Mining Plan to incorporate the mitigation measures required by the Director. In choosing between alternative mitigation measures, the Director shall balance the cost of the required measures against the reduction or potential reduction in damage or threat of damage or harm to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment.

(f)(1) If under the provisions of paragraphs (b) (2), (3), and (4) of this section, the Director, with respect to any lease, directs the suspension of production or other operations on the entire leasehold, no payment of rental or minimum royalty shall be due for or during the period of the directed suspension and the time for the lessee specify royalty free period of a period of reduced royalty pursuant to § 281.28(b) of this subchapter will be extended for the period of directed suspension. If under the provisions of paragraphs (b) (2), (3), and (4) of this section the Director, with respect to a lease on which there has been no production, directs the suspension of operations on the entire leasehold, no payment of rental shall be due during the period of the directed suspension.

(2) If under the provisions of this section, the Director grants the request of a lessee for a suspension of production or other operations, the lessee's obligations to pay rental, minimum royalty, or royalty shall continue to apply during the period of the approved suspension, unless the Director's approval of the lessee's request for suspension authorizes the payment of a lesser amount during the period of approved suspension. If under the provision of this section, the Director grants a lessee's request for a suspension of production or other operations for a lease which includes provisions for a time period which the lessee may specify during which production from the leasehold would be royalty free or subject to a reduced royalty obligation pursuant to § 281.28(b) of this subchapter, the time during which production from a leasehold may be royalty free or subject to a reduced royalty obligation shall not be extended unless the Director's approval of the suspension specifies otherwise.

(3) If the lease anniversary date falls within a period of suspension for which no rental or minimum royalty payments are required under paragraph (a) of this section, the prorated rentals or minimum royalties are due and payable as of the date the suspension period terminates. These amounts shall be computed and notice thereof given the lessee. The lessee shall pay the amount due within 30 days after receipt of such notice. The anniversary date of a lease shall not change by reason of any period of lease suspension or rental or royalty relief resulting therefrom.

<General Materials (GM) - References, Annotations, or Tables>

30 C. F. R. § 282.13

30 CFR § 282.13

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB E**

**CODE OF FEDERAL REGULATIONS
TITLE 30--MINERAL RESOURCES
CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR
SUBCHAPTER B--OFFSHORE
PART 250--OIL AND GAS AND SULPHUR OPERATIONS IN THE OUTER CONTINENTAL SHELF
SUBPART M--UNITIZATION**

Current through March 9, 2005; 70 FR 11826

§ 250.1301 What are the requirements for unitization?

(a) Voluntary unitization. You and other OCS lessees may ask the Regional Supervisor to approve a request for voluntary unitization. The Regional Supervisor may approve the request for voluntary unitization if unitized operations:

(1) Promote and expedite exploration and development; or

(2) Prevent waste, conserve natural resources, or protect correlative rights, including Federal royalty interests, of a reasonably delineated and productive reservoir.

(b) Compulsory unitization. The Regional Supervisor may require you and other lessees to unitize operations if unitized operations are necessary to:

(1) Prevent waste;

(2) Conserve natural resources; or

(3) Protect correlative rights, including Federal royalty interests, of a reasonably delineated and productive reservoir.

(c) Unit area. The area that a unit includes is the minimum number of leases that will allow the lessees to minimize the number of platforms, facility installations, and wells necessary for efficient exploration, development, and production of mineral deposits, oil and gas reservoirs, or potential hydrocarbon accumulations. A unit may include whole leases or portions of leases.

(d) Unit agreement. You, the other lessees, and the unit operator must enter into a unit agreement. The unit agreement must: allocate benefits to unitized leases, designate a unit operator, and specify the effective date of the unit agreement. The unit agreement must terminate when: the unit no longer produces unitized substances, and the unit operator no longer conducts drilling or well-workover operations ( § 250.180) under the unit agreement, unless the Regional Supervisor orders or approves a suspension of production under § 250.170.

(e) Unit operating agreement. The unit operator and the owners of working interests in the unitized leases must enter into a unit operating agreement. The unit operating agreement must describe how all the unit participants will apportion all costs and liabilities incurred maintaining or conducting operations. When a unit involves one or more net-profit-share leases, the unit operating agreement must describe how to attribute costs and credits to the net-profit-share lease(s), and this part of the agreement must be approved by the Regional Supervisor. Otherwise, you must provide a copy of the unit operating agreement to the Regional Supervisor, but the Regional Supervisor does not need to approve the unit operating agreement.

(f) Extension of a lease covered by unit operations. If your unit agreement expires or terminates, or the unit area adjusts so that no part of your lease remains within the unit boundaries, your lease expires unless:

(1) Its initial term has not expired;

(2) You conduct drilling, production, or well-reworking operations on your lease consistent with applicable regulations; or

(3) MMS orders or approves a suspension of production or operations for your lease.

(g) Unit operations. If your lease, or any part of your lease, is subject to a unit agreement, the entire lease continues for the term provided in the lease, and as long thereafter as any portion of your lease remains part of the unit area, and as long as operations continue the unit in effect.

(1) If you drill, produce or perform well-workover operations on a lease within a unit, each lease, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

part of a lease, in the unit will remain active in accordance with the unit agreement. Following a discovery, if your unit ceases drilling activities for a reasonable time period between the delineation of one or more reservoirs and the initiation of actual development drilling or production operations and that time period would extend beyond your lease's primary term or any extension under § 250.180, the unit operator must request and obtain MMS approval of a suspension of production under § 250.170 in order to keep the unit from terminating.

(2) When a lease in a unit agreement is beyond the primary term and the lease or unit is not producing, the lease will expire unless:

(i) You conduct a continuous drilling or well reworking program designed to develop or restore the lease or unit production; or

(ii) MMS orders or approves a suspension of operations under § 250.170.

[63 FR 29479, 29486, May 29, 1998; 64 FR 72794, Dec. 28, 1999]

<General Materials (GM) - References, Annotations, or Tables>

30 C. F. R. § 250.1301

30 CFR § 250.1301

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB F**

**CODE OF FEDERAL REGULATIONS**
**TITLE 15--COMMERCE AND FOREIGN TRADE**
**SUBTITLE B--REGULATIONS RELATING TO COMMERCE AND FOREIGN TRADE**
**CHAPTER IX--NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, DEPARTMENT OF COMMERCE**
**SUBCHAPTER B--OCEAN AND COASTAL RESOURCE MANAGEMENT**
**PART 930--FEDERAL CONSISTENCY WITH APPROVED COASTAL MANAGEMENT PROGRAMS**
**SUBPART C--CONSISTENCY FOR FEDERAL AGENCY ACTIVITIES**

Current through March 9, 2005; 70 FR 11826

§ 930.32 Consistent to the maximum extent practicable.

(a)(1) The term "consistent to the maximum extent practicable" means fully consistent with the enforceable policies of management programs unless full consistency is prohibited by existing law applicable to the Federal agency.

(2) Section 307(e) of the Act does not relieve Federal agencies of the consistency requirements under the Act. The Act was intended to cause substantive changes in Federal agency decisionmaking within the context of the discretionary powers residing in such agencies. Accordingly, whenever legally permissible, Federal agencies shall consider the enforceable policies of management programs as requirements to be adhered to in addition to existing Federal agency statutory mandates. If a Federal agency asserts that full consistency with the management program is prohibited, it shall clearly describe, in writing, to the State agency the statutory provisions, legislative history, or other legal authority which limits the Federal agency's discretion to be fully consistent with the enforceable policies of the management program.

(3) For the purpose of determining consistent to the maximum extent practicable under paragraphs (a)(1) and (2) of this section, federal legal authority includes Federal appropriation Acts if the appropriation Act includes language that specifically prohibits full consistency with specific enforceable policies of management programs. Federal agencies shall not use a general claim of a lack of funding or insufficient appropriated funds or failure to include the cost of being fully consistent in Federal budget and planning processes as a basis for being consistent to the maximum extent practicable with an enforceable policy of a management program. The only circumstance where a Federal agency may rely on a lack of funding as a limitation on being fully consistent with an enforceable policy is the Presidential exemption described in section 307(c)(1)(B) of the Act (16 USC 1456(c)(1)(B)). In cases where the cost of being consistent with the enforceable policies of a management program was not included in the Federal agency's budget and planning processes, the Federal agency should determine the amount of funds needed and seek additional federal funds. Federal agencies should include the cost of being fully consistent with the enforceable policies of management programs in their budget and planning processes, to the same extent that a Federal agency would plan for the cost of complying with other federal requirements.

(b) A Federal agency may deviate from full consistency with an approved management program when such deviation is justified because of an emergency or other similar unforeseen circumstance ("exigent circumstance"), which presents the Federal agency with a substantial obstacle that prevents complete adherence to the approved program. Any deviation shall be the minimum necessary to address the exigent circumstance. Federal agencies shall carry out their activities consistent to the maximum extent practicable with the enforceable policies of a management program, to the extent that the exigent circumstance allows. Federal agencies shall consult with State agencies to the extent that an exigent circumstance allows and shall attempt to seek State agency concurrence prior to addressing the exigent circumstance. Once the exigent circumstances have passed, and if the Federal agency is still carrying out an activity with coastal effects, Federal agencies shall comply with all applicable provisions of this subpart to ensure that the activity is consistent to the maximum extent practicable with the enforceable policies of management programs. Once the Federal agency has addressed the exigent circumstance or completed its emergency response activities, it shall provide the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

State agency with a description of its actions and their coastal effects.

(c) A classified activity that affects any coastal use or resource is not exempt from the requirements of this subpart, unless the activity is exempted by the President under section 307(c)(1)(B) of the Act. Under the consistent to the maximum extent practicable standard, the Federal agency shall provide to the State agency a description of the project and coastal effects that it is legally permitted to release or does not otherwise breach the classified nature of the activity. Even when a Federal agency may not be able to disclose project information, the Federal agency shall conduct the classified activity consistent to the maximum extent practicable with the enforceable policies of management programs. The term classified means to protect from disclosure national security information concerning the national defense or foreign policy, provided that the information has been properly classified in accordance with the substantive and procedural requirements of an executive order. Federal and State agencies are encouraged to agree on a qualified third party(ies) with appropriate security clearance(s) to review classified information and to provide non-classified comments regarding the activity's reasonably foreseeable coastal effects.

<General Materials (GM) - References, Annotations, or Tables>

15 C. F. R. § 930.32

15 CFR § 930.32

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.