# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

****************************************

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al*., | |
| *Plaintiffs,* v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| **************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al*., | |
| *Plaintiffs,* v. | |
| | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| **************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| **************************************** | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATUS REPORT**

The Government's June 13, 2005 "Status Report" begins with a re-argument of its contention that the "red light" suspensions resulting from the application of the 1990 CZMA Amendments had no impact on some of the leases -- a position the Government already set forth in its March 18, 2005 "Supplemental Brief in Response to the Court's Order Dated March 9, 2005," which Plaintiffs thoroughly rebutted in their March 28, 2005 "Plaintiffs' Supplemental Brief in Response to The Court's March 9, 2005 Order."

The Government continues to ignore the facts that (1) the drilling of exploratory or development wells lies at the heart of the lessees' contractual rights, (2) the drilling of such wells was not merely permitted, but required by the November 1999 "green light" suspensions, (3) such drilling activity has been forbidden ever since the issuance of the July 2001 "red light" suspensions, and (4) the MMS-prescribed timetables for such drilling set forth in the November 1999 "green light" suspensions are now long in the past. *See* Plaintiffs' March 28, 2005 Supplemental Brief at pp. 1-6.

The Government observes that such drilling, once it commenced, would itself preserve the leases during the period of drilling; but that academic observation ignores the fact that the "red light" suspensions have precluded plaintiffs from reaching that point.

Defendant next attempts a *deus ex machina* extraction from its legal quandary. Defendant references an ongoing administrative proceeding involving the lessees' appeal to the Interior Board of Land Appeals ("IBLA") of the Mineral Management Service's August 1999 decisions to terminate four of the forty lawsuit leases. The IBLA on September 7, 2004, set aside MMS's August 1999 decisions, finding that MMS's decisions "dubious" and its "conclusory findings" "fundamental[ly] flaw[ed]": "the record before us does not establish the basis for MMS's . . . decisions that the 'geophysical data and interpretation no longer support inclusion of the excluded leases within their respective units.'" *In re Samedan Oil Corp.*, 163

IBLA 63, 69-70 (Sept. 7, 2004). The IBLA referred the matter to an Administrative Law Judge ("ALJ") for an evidentiary hearing. *Id.* [1]

The Government's Status Report relies upon testimony at this evidentiary hearing that the Justice Department lawyers signing the Report admit they have not read, but promise at some unspecified point in the future to seek to have released from the confidentiality order that restricts its dissemination so that it can be presented to this Court. The Government nowhere explains why it has not already sought this relief from the ALJ who issued the confidentiality order, or consent to that relief from the other parties to that proceeding, even though the testimony to which the Government refers, that of Mr. Ron Heck, took place nearly a month ago, on May 19 and 20, 2005.

Undersigned counsel represents the lessee parties in the IBLA ALJ proceedings and *are* thoroughly familiar with all of the testimony. They can confidently state that (1) their consent to release this portion of the testimony from the confidentiality order would have been readily provided, and (2) nothing in Mr. Heck's testimony bears the remotest resemblance to the "admissions against interest" that the Government promises.

The Government's suggestion that Mr. Heck's testimony will prove that the "red light" suspensions have had no effect is baffling. Mr. Heck represents Samedan Oil Company, and the Samedan lease at issue in the IBLA proceeding, Lease P-0462, was part of the Gato Canyon Unit. Uncontroverted record evidence establishes that, prior to the issuance of the July 2001 "red light" suspensions, Samedan's activities leading to the drilling of a Gato Canyon exploratory well were proceeding apace, and Samedan was in the midst of conducting geohazard

---

[1] These four leases are not part of plaintiffs' pending summary judgment motion, *see* Memorandum In Support Of Plaintiffs' Motion For Summary Judgment As To Liability And For Partial Summary Judgment With Respect To Plaintiffs' Claim For Damages at pp. 3-4 (August 31, 2004).

surveys with respect to the exploratory well drill site. That work included a seismic survey, and a survey boat was in port, awaiting the delivery of equipment (air guns) in route from Houston.

Upon receiving the "red light" suspensions forbidding any operations on the leases, Samedan was forced at considerable expense to terminate the scheduled delivery of the equipment to California and to release the survey boat. *See* Heck Supp. Decl. Exh. 103 at pp. 2-3.[2] Because of the "red light" suspensions, the surveying has never been completed, and of course, no well has ever been allowed to be drilled.

Based on the description in the Status Report, the Government is almost certainly relying upon Mr. Heck's testimony regarding Samedan's plans under the November 1999 "green light suspensions" to conduct certain non-mandatory office analyses during the eighteen month period between the MMS-prescribed November 2001 deadline for filing a revised exploration plan (after the geohazard surveys were completed) and the drilling an exploratory well in May 2003, *see* Heck Decl. Exh. 46 at p. 0964.[3] The eighteen months between those two dates reflected the fact that wells were to be drilled sequentially on five of the units using a single semi-submersible drilling rig (ship), with the Gato Canyon unit being fourth in line, *see* Plaintiffs' March 28, 2005 Supplemental Brief at pp. 2-3.

Without disclosing the content of Mr. Heck's testimony, one can readily observe that any new "green light" suspensions that might be granted would also necessarily provide for a comparable period of time between Samedan's filing of a revised exploration plan for the Gato

---

[2] The Heck Supplemental Declaration is attached to Plaintiffs' Reply Brief In Support Of Their Motion For Summary Judgment As To Liability And Partial Summary Judgment As To Damages, And Brief In Opposition To Defendant's Motion To Dismiss And Cross-Motion For Summary Judgment (Nov. 18, 2004).

[3] The Heck Declaration was submitted with Plaintiffs' Brief In Support Of Their Motion For Summary Judgment As To Liability And Partial Summary Judgment As To Damages (Aug. 31, 2004).

Canyon Unit and the drilling of an exploratory well. There accordingly would be no reason to perform the planned office analyses at an earlier time.

Indeed, even if there were not such a built-in time period for performing these office activities, no one (but the Government) would default the lessees for holding up planning activities given the now four-year state of uncertainty as to whether the lessees will ever be allowed to drill on the lawsuit leases.

**CONCLUSION**

In these circumstances, it seems clear that the Government's Status Report was filed to forestall any imminent decision on the pending summary judgment motions. No grounds for delay have been established, and resolution of the pending cross motions for summary judgment should proceed in the normal course.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove
E. Edward Bruce
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568

Attorneys for All Plaintiffs in Nos. 02-30C and 04-1822C

June 17, 2005