IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al.,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | |

**DEFENDANT'S MOTION FOR LEAVE TO FILE**
**ITS NOTICE OF SUPPLEMENTAL AUTHORITY**

In accordance with the Court's order of September 2, 2005 barring any further briefing absent order of the Court, defendant, the United States, respectfully requests leave to submit this

notice of supplemental authority as a result of the recent decision in *Indiana Michigan Power Company v. United States*, ___ F.3d ___, slip op. (Fed. Cir. Sept. 9, 2005). A copy of the slip opinion is attached for the Court's convenience. We respectfully seek leave to file this notice of supplemental authority because the United States Court of Appeals for the Federal Circuit directly addresses the theory of anticipatory repudiation, which provides the express basis for plaintiffs' claims in these consolidated cases. This important decision has a direct effect upon plaintiffs' theory of liability in these cases.

In *Indiana Michigan*, the court of appeals affirmed this Court's judgment dismissing the plaintiff's damages claims against the United States in that case. Slip. op. at 1. In its decision, the court of appeals agreed with this Court that Indiana Michigan had not asserted anticipatory repudiation of the entire contract. *Id.* at 5. The court concluded, among other things, that "the nature of Indiana Michigan's action does not lend itself to the moniker of anticipatory repudiation." *Id.* The court continued:

> An anticipatory repudiation is a "renunciation of a contractual duty *before* the time fixed in the contract for . . . performance[.]" . . . For an aggrieved party to recover damages for anticipatory repudiation, it must elect to treat the repudiation as a total breach. . . . On the other hand, "[i]f the injured party elects to or is required to await the balance of the other party's performance under the contract, [its] claim is said instead to be one for damages for partial breach." . . . A partial breach is "[a] a claim for damages . . . based on only part of the injured party's remaining rights to performance."

*Id.* at 5-6 (quoting *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (emphasis and alternation in *Franconia*); Restatement (Second) of Contracts § 236 cmt. b (1981)).

The court of appeals held that "Indiana Michigan could not have claimed anticipatory repudiation even if it wanted to; while the government did indicate that it would not meet the

1998 deadline, its actions did not portend an absolute refusal to perform the contract." *Id.* at 6. The court noted that statute compelled Indiana Michigan to bring an action for partial, not total, breach. *Id.*

*Indiana Michigan* is pertinent to our motion to dismiss and cross-motion for summary judgment, in which we demonstrated that plaintiffs' amended complaint fails to state a claim for anticipatory repudiation entitling plaintiffs to restitution. Unlike in *Mobil Oil Exploration & Producing S.E., Inc. v. United States*, 530 U.S. 604 (2000), *Franconia*, and, even, *Indiana Michigan*, here, there was never any "time fixed" in the leases for the Government's acting upon lease suspension requests. Accordingly, as in *Indiana Michigan* (albeit for different reasons), the Government in these cases could not have renunciated its contractual duty "before" a nonexistent fixed time for performance. Similarly, as in *Indiana Michigan*, plaintiffs did not immediately treat the enactment of the 1990 amendments to the Coastal Zone Management Act as a total breach – here, for 11 years following the alleged "repudiation" by the Government.

Accordingly, for these reasons, we respectfully request that the Court grant leave to file this notice of supplemental authority.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/David M. Cohen
DAVID M. COHEN
Director

/s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director
STEPHEN C. TOSINI
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-8640

September 12, 2005

Attorneys for Defendant

# United States Court of Appeals for the Federal Circuit

04-5122

INDIANA MICHIGAN POWER COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Alexander D. Tomaszczuk, Shaw Pittman LLP, of McLean, Virginia, argued for plaintiff-appellant. With him on the brief were Jay E. Silberg, Devon E. Hewitt, Michael G. Lepre, Daniel S. Herzfeld, and Jack Y. Chu, of Washington, DC.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director. Of counsel on the brief were John C. Ekman, Heide R. Herrmann, and Marian E. Sullivan, Trial Attorneys. Also, of counsel was Scott Damelin. Of counsel on the brief was Jane K. Taylor, Attorney, Office of General Counsel, United States Department of Energy, of Washington, DC.

Jerry Stouck, Spriggs & Hollingsworth, of Washington, DC, for amici curiae Yankee Atomic Electric Company, et al. Richard W. Oehler, Perkins Coie LLP, of Seattle, Washington, for amicus curiae Wisconsin Electric Power Company. With him on the brief were Martin P. Willard and Donald J. Carney, of Washington, DC; Ronald A. Schechter, Arnold & Porter LLP, of Washington, DC, for amici curiae Southern Nuclear Operating Company, et al. With him on the brief was Robert L. Shapiro; Howard N. Cayne, Arnold & Porter LLP, of Washington, DC, for amicus curiae Sacramento Municipal Utility District. With him on the brief was Timothy R. Macdonald; and Norman M. Hirsch, Jenner & Block LLP, of Chicago, Illinois, for amici curiae Energy Northwest, et al. With him on the brief was David Jiménez-Ekman.

Joseph M. Perillo, Fordham Law School, of New York, New York, for amici curiae The Detroit Edison Company, et al.

Appealed from: United States Court of Federal Claims

Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

04-5122

INDIANA MICHIGAN POWER COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: September 9, 2005

---

Before MAYER, LOURIE, and BRYSON, Circuit Judges.

MAYER, Circuit Judge.

Indiana Michigan Power Co. ("Indiana Michigan") appeals the judgment of the United States Court of Federal Claims, Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), dismissing its damages claims against the United States Department of Energy ("DOE" or "government") for breach of contract. We affirm.

Background

This action is one of several filed by the nation's nuclear electric utilities in the Court of Federal Claims seeking damages arising from the government's failure to accept and dispose of spent nuclear fuel ("SNF"). The general factual background of the contracts and circumstances surrounding SNF cases have been well outlined in the

trial court's opinion, as well as in opinions by this and other courts. See Me. Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1337-40 (Fed. Cir. 2000); Ind. Mich. Power Co. v. Dep't of Energy, 88 F.3d 1272, 1273-74 (D.C. Cir. 1996). Therefore, only the facts necessary for an understanding of the issues that give rise to this appeal are discussed.

Under the Nuclear Waste Policy Act ("NWPA"), Pub. L. No. 97-425, Title III, § 302, 96 Stat. 2257 (Jan. 7, 1983) (codified at 42 U.S.C. § 10222 (2000)), Congress directed DOE to "enter into [Standard Contracts with all entities that] generate[] or hold[] title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel" in consideration for initial and recurring annual fees, with removal to begin no later than January 31, 1998. Seeking to avoid the inefficient and potentially unsafe prospect of allowing individual utilities to recycle or dispose of their own SNF, Congress enacted the NWPA to "establish the Federal responsibility, and a definite Federal policy, for the disposal of" spent nuclear fuel. Roedler v. Dep't of Energy, 255 F.3d 1347, 1350 (Fed. Cir. 2001) (quoting 42 U.S.C. § 10131(b)(2) (2000)). Nuclear plant operators and utilities were mandated by Congress to enter into Standard Contracts, the terms of which are presented at 10 C.F.R. § 961.11, as a prerequisite to obtaining renewal of their operating licenses. 42 U.S.C. § 10222(a)(1); Maine Yankee, 225 F.3d at 1337 ("The [NWPA] effectively made entry into such contracts mandatory for the utilities[.]").

On June 14, 1983, Indiana Michigan entered into a Standard Contract with DOE, under which removal of SNF from its Bridgman, Michigan, nuclear plant was to begin in

2001.[1] In 1994, DOE announced that it would not begin SNF collection until 2010 because its planned storage repository would not be ready until then. Notice of Inquiry, Office of Civilian Radioactive Waste Management: Waste Acceptance Issues, 59 Fed. Reg. 27,007-27,008 (May 25, 1994). One year later, DOE asserted that it had neither a statutory nor contractual obligation to accept the utilities' nuclear waste in the absence of such repository or temporary storage facility. Maine Yankee, 225 F.3d at 1338 (citing Final Interpretation of Nuclear Waste Acceptance, 50 Fed. Reg. 21,793 (1995)).

On June 8, 1998, the utility sued the government for partial breach of the Standard Contract in the Court of Federal Claims, asking damages for: pre-breach mitigation costs, totaling \$23.9 million, incurred for its 1989 through 1994 rerack[2] and expansion of its existing SNF pool in 1993 and 1994; and future damages, totaling \$83.8 million, for forecasted investment in the construction of a private storage facility for housing SNF not collected by DOE by the contracted-for collection start date. In light of this court's decisions holding DOE liable for breach of contract in SNF cases in Maine Yankee, 225 F.3d at 1342, and Northern States Power Co. v. United States, 224 F.3d 1361, 1367 (Fed. Cir. 2000), the trial court entered judgment for Indiana Michigan on the issue of liability on January 17, 2003. Ind. Mich. Power Co. v. United States, No. 98-486C (Fed. Cl. Jan. 17, 2003). The trial court subsequently denied Indiana Michigan's claimed damages, holding that, because Indiana Michigan claimed partial

---

[1] This three-year lag in performance for Indiana Michigan was established by the Standard Contract's delivery queue, which gave priority for collection to older SNF lots owned by other nuclear utilities.

[2] A rerack consists of removing existing fuel racks from the reactor wet storage pool and replacing them in a tighter formation so the same pool can accommodate more rods.

versus total breach, recovery for pre-breach mitigation costs and present recovery for future damages is precluded. Indiana Michigan appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

Discussion

We review the Court of Federal Claims's decision de novo for errors of law and for clear error on findings of fact. See Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1379 (Fed. Cir. 2001). "A finding may be held clearly erroneous when . . . the appellate court is left with a 'definite and firm conviction that a mistake has been committed.'". In re Mark Indus., 751 F.2d 1219, 1222-23 (Fed. Cir. 1984) (citations omitted).

The remedy for breach of contract is damages sufficient to place the injured party in as good a position as it would have been had the breaching party fully performed. San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1562 (Fed. Cir. 1997). "[T]he general principle is that all losses, however described, are recoverable." Restatement (Second) of Contracts § 347 cmt. c (1981). Damages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty. Energy Capital Corp. v. United States, 302 F.3d 1314, 1320 (Fed. Cir. 2002). While the amount of damages need not be "ascertainable with absolute exactness or mathematical precision[,]" recovery for speculative damages is precluded. San Carlos Irrigation & Drainage Dist., 111 F.3d at 1563 (citation omitted).

I.

Indiana Michigan argues that its rerack and investment in the temporary holding facility were done to mitigate the government's partial breach. The government argues that the only way Indiana Michigan could recover the costs for its pre-breach activities would be under the doctrine of anticipatory repudiation, a claim it avers Indiana Michigan has waived. Alternatively, it simply argues that the trial court applied the correct rule of law when it announced a per se ban on recovery of pre-breach mitigation damages for partial breach claims.

A.

We agree with the trial court that Indiana Michigan is not here alleging anticipatory repudiation of the entire contract, but bases its claim on partial breach. Insofar as the government raises its anticipatory breach theory in support of the trial court's finding that Indiana Michigan is not entitled to recovery,[3] its argument fails. First, neither the trial record, see Indiana Michigan, 60 Fed. Cl. at 648 n.21 ("[Appellant] did not claim anticipatory breach, despite frequent discussions on the issue during trial."), nor Indiana Michigan's briefs contain a claim for a total anticipatory breach. Second, contrary to the government's assertion, the nature of Indiana Michigan's action does not lend itself to the moniker of anticipatory repudiation. An anticipatory repudiation is a "renunciation of a contractual duty before the time fixed in the contract for . . .

[3] In offering its anticipatory breach theory, the government directly contradicts the trial court's finding that this theory does not apply here. But this is permissible even though it did not cross-appeal. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court, but may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (internal quotation and citation omitted)).

performance[.]" Franconia Assocs. v. United States, 536 U.S. 129, 143 (2002) (emphasis and alteration in original) (internal quotation and citation omitted). For an aggrieved party to recover damages for an anticipatory repudiation, it must elect to treat the repudiation as a total breach. See id. On the other hand, "[i]f the injured party elects to or is required to await the balance of the other party's performance under the contract, [its] claim is said instead to be one for damages for partial breach." Restatement (Second) of Contracts § 236 cmt. b (1981). A partial breach is "[a] claim for damages . . . based on only part of the injured party's remaining rights to performance." Id. § 236(2).

Here, Indiana Michigan could not have claimed anticipatory repudiation even if it wanted to; while the government did indicate that it would not meet the 1998 deadline, its actions did not portend an absolute refusal to perform the contract. The NWPA itself, and the Standard Contract's terms drafted pursuant to it, compelled Indiana Michigan to bring an action for partial, not total, breach. Had Indiana Michigan brought an action for total breach, DOE would have been discharged from further responsibility under the contract, a situation apparently not desired by appellant and foreclosed by statute. The NWPA directed that DOE and all nuclear utilities enter into Standard Contracts, 42 U.S.C. § 10222(a)(1), and concomitantly conditioned the issuance and renewal of Nuclear Regulatory Commission operating licenses upon the execution of those contracts, id. § 10222(b)(1)(A). Additionally, the NWPA provided that DOE was exclusively responsible for SNF collection and disposal in the United States, thereby prohibiting Indiana Michigan or any other nuclear utility from seeking alternative disposal means. See 42 U.S.C. § 10131(a)(4), (b)(2); Roedler, 255 F.3d at 1350.

Therefore, Indiana Michigan had no choice but to hold the government to the terms of the Standard Contract while suing for partial breach.

B.

While we agree with the trial court that Indiana Michigan's claim is for damages for partial breach, we disagree that pre-breach costs are per se unrecoverable. In finding pre-breach damages unrecoverable, the trial court cited Coughlin v. Blair, 262 P.2d 305, 311 (Cal. 1953), for the proposition that damages for partial breach are limited to costs incurred from the date of the breach to the time of trial: "If the breach is partial only, the injured party may recover damages for nonperformance only to the time of trial[.]" Indiana Michigan, 60 Fed. Cl. at 642 (emphasis added).

At first blush, this statement parallels the general rule for contract damages: that breach-of-contract damages are measured from the date of breach. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("Generally, in the case of a breach of a contract, a cause of action accrues when the breach occurs." (internal quotation and citation omitted)); see also 11 Arthur L. Corbin, Corbin on Contracts § 1005 (Interim ed. 1993) ("[C]ompensation for the plaintiff's losses is to be made with reference to the conditions existing at the time when performance is due and the contract is broken."). Holding pre-breach damages unrecoverable, or that pre-breach damages are recoverable only for anticipatory repudiation leading to a total breach, would, however, compromise a party's obligation to mitigate damages. The general rule must be reconciled with a party's obligation to mitigate damages which befall it during the periods both antedating and postdating the breach. "[A] party cannot recover damages for loss that he could have avoided by reasonable efforts." Robinson v.

United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (quoting Restatement (Second) Contracts § 350 cmt. b (1981)) (emphasis in original). Mitigation is appropriate where a reasonable person, in light of the known facts and circumstances, would have taken steps to avoid damage. See Robinson, 305 F.3d at 1334 (citing Restatement (Second) of Contracts § 350 cmt. b).

Our breach-of-contract cases have dealt only with the duty to mitigate damages incurred after a total breach. See, e.g., LaSalle Talman Bank v. United States, 317 F.3d 1363, 1374 (Fed. Cir. 2003); Robinson, 305 F.3d at 1332; Cascade Pac. Int'l v. United States, 773 F.2d 287, 294 (Fed. Cir. 1985). But we see no reason why efforts to avoid damages in contemplation of a partial breach should not also be recoverable. Section 350, comment b of the Restatement of Contracts advises that "[o]nce a party has reason to know that performance by the other party will not be forthcoming, . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Indiana Michigan is "not precluded from recovery . . . to the extent that [it] has made reasonable but unsuccessful efforts to avoid loss." Id. § 350(2). Hence, mitigation damages are available for pre-breach costs should the obligee elect to treat the obligor's breach as partial, while pre-breach damages for anticipatory breach are available should a party elect to treat the obligor's breach as total.

It is beyond debate that because the government unequivocally announced in 1994 that it would not meet its contractual obligations beginning in 1998, the utilities were in fact obligated to take mitigatory steps. It would have been improvident for Indiana Michigan to have waited until January 1998 before deciding what to do with its

nuclear waste. Indeed, the loses which the utilities are obligated to mitigate are not merely pecuniary unto themselves, e.g., the increased cost of obtaining storage for SNF on short notice. Having been placed in a position where they are required to find alternate storage for SNF, the utilities must de facto accept responsibility to guard against the environmental impact of improperly-disposed and maintained SNF, a situation which the NWPA was enacted to avoid.

C.

While partial breach claimants may recover pre-breach mitigation damages, on these facts, the trial court's finding that Indiana Michigan is not entitled to damages is supportable. Usually, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 27 cmt. h (1982); see also Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, 344 F.2d 300, 306 (9th Cir. 1965), cert. denied, 382 U.S. 826 (1965) ("It is also the rule that where [collateral estoppel] is asserted, the earlier determination must have been of a question of fact essential to the earlier judgment."). Here, the trial court's incorrect legal determination that Indiana Michigan's pre-breach mitigation damages were not recoverable did not depend on its factual findings, and the facts derived are not so infected by legal error as to require remand.

The presence of a duty to mitigate does not perforce make the pre-breach costs incurred by Indiana Michigan to store its SNF recompensable; appellant must prove foreseeability, causation, and reasonableness. It failed to make such a showing. Indiana Michigan's pre-breach costs were not caused by any anticipated DOE delay in

performance. It authorized the expenditure for its reracking projects in 1989, in the normal course of business, six years before the 1994 Notice of Inquiry announced DOE's inability to begin timely SNF collection. In light of that fact, the trial court found that Indiana Michigan's rerack schedule was not affected by 1987 and 1989 DOE announcements projecting delays in the scheduled January 1998 acceptance start date. And appellant's decision to perform a full, instead of a partial, rerack in 1995 was purely a business judgment which it would have had to pursue irrespective of DOE's partial breach.

The credited evidence also showed that the utility's investment in the private storage facility was speculative and that the high cost of the venture was unforeseeable. In 1994, Indiana Michigan and several other nuclear utilities sought to construct and operate their own storage facility for SNF storage, ostensibly in contemplation of DOE's impending breach. Indiana Michigan invested $7.2 million. Its own witness characterized the planned facility, in which it abandoned financial investment in 2002, as "too speculative" when proposed. While DOE should have foreseen that its breach would force Indiana Michigan to find alternate storage for its SNF, it is not liable for such a speculative venture and unforeseeable costs.

II.

A.

The trial court did not err in concluding that a claim for partial breach precludes an award of future damages. For this proposition it also cited <u>Coughlin</u>, 262 P.2d at 311: "If the breach is partial only, the injured party may recover damages for nonperformance only to the time of trial <u>and may not recover damages for anticipated</u>

future nonperformance." Indiana Michigan, 60 Fed. Cl. at 642 (emphasis added). Because of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach. See San Carlos Irrigation Dist., 111 F.3d at 1563 ("[C]ontract law precludes recovery for speculative damages." (citations omitted)); see also 9 Arthur L. Corbin, Corbin on Contracts § 956 (Interim ed. 1993) ("It has been thought that where there has been no repudiation [e.g., no total breach], the plaintiff can recover damages for his injury only to the date of the writ—that he must treat the breach as only 'partial'[.]" (emphasis added)). Future damages could have been awarded had Indiana Michigan claimed total breach. See Restatement (Second) of Judgments § 26 cmt. g (where a plaintiff commences an action for total breach, "he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract[.]" (emphasis added)). Because its claim is premised upon the government's partial breach, its damages were limited to those costs incurred prior to the date of its suit.

Indiana Michigan can, however, obtain recovery for post-breach damages as they are incurred. It argues that, because it is known that DOE will not perform until 2010 at the earliest, it ought to be awarded its future damages immediately. The government, for its part, agreed with the trial court's assertion that Indiana Michigan can maintain future suits. We agree with the government, and concur in the proposition that "[i]f the breach of an entire contract is only partial, the plaintiff can recover only such damages as he or she has sustained, leaving prospective damages to a later suit in the

event of further breaches."). 22 Am. Jur. 2d Damages § 488 (2003). The Restatement of Judgments counsels, in relevant part:

> (1) When any of the following circumstances exists, the general rule[s of merger and bar do] not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
>
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
>
> . . .
>
> (e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course[.]

Restatement (Second) of Judgments § 26 (1982). Comment g to that section states, in relevant part:

> A judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action.
>
> . . .
>
> In the event of a "material" breach . . . that is not accompanied or followed by a repudiation, the plaintiff is entitled to treat the contract as at an end and to recover damages for performances not yet due as well as those already due on the theory that there has been a total breach of contract. If the plaintiff does this, a judgment extinguishing the claim under the rules of merger or bar precludes another action by him for further recovery on the contract. On the other hand, although the breach is material, the plaintiff may elect to treat it as being merely a partial breach. If he so elects, he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date.

Id. § 26 cmt. g (emphasis added); see also 9 Corbin on Contracts, § 946 ("In some cases [an injured party] may elect to regard [a] breach as partial, proceed with [its] own performance, sue for the partial injury, and maintain a second suit in case a further breach occurs."). When a party sues for partial breach, it retains its right to sue for damages for its remaining rights to performance. Restatement (Second) of Contracts § 236(2) (1981). This is an exception to the doctrine of res judicata, which, in its claim preclusion form, provides that final judgment on a claim extinguishes "'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Young Eng'rs, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983) (quoting Restatement (Second) of Judgments § 24 (1982)). We agree with the exceptions to the rules of merger and bar set out in Restatement (Second) of Judgments, sections 26(1)(b) and (e). Indiana Michigan's grievance falls within subsection (e)'s exception for injury experienced during the execution phase of a continuing contract; because it has sued for partial breach, ongoing obligations exist for both parties.

B.

Because Indiana Michigan may bring suits for damages in the future, we must address its concern over the statute of limitations applicable to those suits. "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000). "The statute of limitations is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." Hart v.

United States, 910 F.2d 815, 818-19 (Fed. Cir. 1990). However, "a cause of action accrues [only] when all the events have occurred that fix the defendant's alleged liability and entitle the plaintiff to institute an action." Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995). In the case of the continuing contractual obligations owed after an initial suit for partial breach has been filed, subsequent claims for future damages are considered to accrue for the purposes of the statute of limitations at the time such damages are incurred. Accordingly, Indiana Michigan must bring any future actions for damages related to DOE's breach of the Standard Contract within six years of incurring such damages.

## Conclusion

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

## AFFIRMED