IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director
STEPHEN C. TOSINI
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969
Attorneys for Defendant

January 18, 2006

**TABLE OF CONTENTS**

**PAGE(S)**

BACKGROUND ..... 2

ARGUMENT ..... 5

I. PLAINTIFFS' MOTION IS UNAUTHORIZED BY THE COURT'S RULES ..... 5

II. THE GOVERNMENT TIMELY ASSERTED ITS RECOUPMENT CLAIMS ..... 8

A. The Court Has Not Resolved All Claims Flowing From The Rescission ..... 8

B. The Pending Motion To Strike Ignores Basic Pleading Practice ..... 10

C. Rescission Requires Restoration Of The Parties To The *Status Quo Ante* ..... 14

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

**PAGE(S)**

American Heritage Bancorp v. United States,
56 Fed. Cl. 596 (2003) ........................................ 11, 13

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) ........................................ 6

California v. Norton,
311 F.2d 1162 (9th Cir. 2002) ........................................ 2

Chilivis v. SEC,
673 F.2d 1205 (11th Cir. 1982) ........................................ 11

Clark v. United States,
19 Cl. Ct. 220 (1990) ........................................ 8

Dahl v. United States,
695 F.2d 1373 (Fed. Cir. 1982) ........................................ 14

Fisher v. United States,
31 Fed. Cl. 396 (1994) ........................................ 8

Hansen Bancorp, Inc. V. United States,
367 F.3d 1297 (Fed. Cir. 2004) ........................................ 15, 16

Impresa Construzioni Geom. Domenico Garufi v. United States,
61 Fed. Cl. 175 (2004) ........................................ 6

Landmark Land Co. v. FDIC,
256 F.3d 1365 (Fed. Cir. 2001) ........................................ 14, 15

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 633 (2002) ........................................ 7

Miller v. Am. Export Lines,
313 F.2d 218 (2d Cir. 1963) ........................................ 11

N.Y. Mail & News Transp. Co. v. United States,
154 F. Supp. 271 (Ct. Cl. 1957) ........................................ 14

Pandrol USA, LP v. Airboss Ry. Prods., Inc.,
320 F.3d 1354 (Fed. Cir. 2003) .................................................................... 11, 12

Pinter v. Dahl,
482 U.S. 622 (1988) ............................................................................................ 14

Stearns Co., Ltd. v. United States,
34 Fed. Cl. 264 (2002) ........................................................................................ 7

Tenneco Resins Inc. v. Reeves,
752 F.2d 630 (Fed. Cir. 1985) ........................................................................ 13, 14

Universal Restoration, Inc. v. United States,
8 Cl. Ct. 510 (1985) ............................................................................................ 11

Zenith Radio Corp. v. Hazeltine Research Inc.,
401 U.S. 321 (1971) ............................................................................................ 13

**MISCELLANEOUS**

Restatement (Second) of Contracts § 378 .......................................................................... 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**

Pursuant to RCFC 7.1(a), defendant, the United States, respectfully submits this opposition to "Plaintiffs' Motion To Strike The Government's 'Additional Statement' Contained In The December 20, 2005 Joint Status Report," filed on January 4, 2005 by the plaintiffs in Nos. 02-30C and No. 04-1822C. This novel motion seeks to strike from a joint status report the

Government's statement of its litigation position, which we previously set forth in the three answers filed in these consolidated cases on November 30, 2005, pursuant to RCFC 12(b). As we demonstrate below, the pending motion to strike is unfounded, both procedurally and substantively.

**BACKGROUND**

In January 2002, most, but not all, of the plaintiffs brought the action numbered 02-30C for breach of contract. We subsequently filed a motion to stay the proceedings pending the Government's appeal to the United States Court of Appeals for the Ninth Circuit in *California v. Norton*, or, in the alternative, a motion to dismiss for lack of jurisdiction. At the time we filed our motion, plaintiffs had asserted no repudiation claims, and their other claims were time-barred because the 1990 amendments to the Coastal Zone Management Act had been enacted more than six years before plaintiffs brought suit in 2002. *See* Def. Mot. To Dismiss (No. 02-30C) at 18.

The Court granted our motion for a stay, and the proceedings in No. 02-30C were stayed until December 2002, when the Ninth Circuit issued its decision in *California v. Norton*, 311 F.2d 1162 (9th Cir. 2002). In addition, in response to our motion to dismiss, the plaintiffs in No. 02-30C subsequently cured the jurisdictional defects of their original complaint by amending their complaint to allege that the 1990 amendments to the Coastal Zone Management Act constituted an anticipatory repudiation of their leases by the Government. *See* Am. Compl. (No. 02-30C) ¶¶ 68-69.

After the stay ended in late 2002, the parties completed briefing upon our motion to dismiss in No. 02-30C, now based upon the amended complaint's failure to state a claim upon which relief may be granted, in 2003. The Court later ordered the parties in No. 02-30C to

provide supplemental briefing upon issues raised by our motion to dismiss. In September 2003, the parties to No. 02-30C complied by timely responding to the Court's numerous questions regarding the essence of plaintiffs' claims.

On August 31, 2004, the plaintiffs in No. 02-30C filed a motion for summary judgment as to liability and partial summary judgment as to damages. On October 15, 2004, we filed a re-stated motion to dismiss, or, in the alternative, cross-motion for summary judgment, and an opposition to plaintiffs' motion for summary judgment as to liability and partial summary judgment as to damages. In our response to the proposed findings of uncontroverted fact of the plaintiffs in No. 02-30C, we repeatedly cited to RCFC 56(f), noting that we had not had any opportunity to conduct discovery as to plaintiffs' allegations, nor had we had any opportunity to depose plaintiffs' principal declarant, Ronald G. Heck. We acknowledged, however, that there was no material dispute as to the limited factual issue regarding the amount of bonus payments received by the Government for the 36 leases at issue.

After consolidating No. 02-30C with Nos. 04-1822C and 05-249C, on November 15, 2005, the Court denied our motion to dismiss and cross-motion for summary judgment, and it granted plaintiffs' motion for summary judgment as to liability and partial summary judgment as to damages. The Court held that the consolidated plaintiffs had demonstrated a material breach of 36 leases and ordered the rescission of these leases. The Court further held that there was no material dispute as to the amount of the bonus payments received by the Government for the 36 leases at issue. The Court rejected our argument that rescission was not available here as a threshold matter due to plaintiffs' destruction of the value of the leases, as part of the benefits received from the Government for the leases. The Court held that the consolidated plaintiffs

undertook the exploration activities pursuant to the leases, and, therefore, rescission was not unavailable under these circumstances. Slip op. (re-issued Nov. 17, 2005) at 37-38 n.43. The Court further held that the consolidated plaintiffs were entitled to restitution of the amounts paid by their predecessors-in-interest for the 36 leases. *Id.* at 40-42.

The Court did not resolve all claims flowing from the newly-ordered rescission, including plaintiffs' claims for reliance damages. *Id.* at 42. At no point in its 42-page slip opinion, re-issued on November 17, 2005, did the Court make any determination that plaintiffs had received absolutely no performance by the Government during the 20 to 30 years of the leases' history, or that plaintiffs had not, in fact, destroyed the speculative value of the leases through their activities. *See, generally*, Slip op. The Court did order the parties to file, by December 20, 2005, a joint status report that stipulates to each plaintiff's share of damages on the assumption that the Court's opinion is correct. Slip op. at 42.

At all times during the pendency of our motion to dismiss, discovery was premature pursuant to the Court's rules because the Government had not filed an answer. However, in 2003, for the sole purpose of facilitating settlement discussions, the plaintiffs in No. 02-30C agreed to respond to limited interrogatories propounded by the Government. Nonetheless, to date, none of the parties in these consolidated actions has conducted any depositions or engaged written discovery that would assist in trial preparation.

On November 30, 2005, the Government timely filed its first pleadings in these consolidated actions pursuant to RCFC 12(a)(2)(A). In accordance with RCFC 12(b), we filed three answers to plaintiffs' complaints filed in these actions, and we asserted numerous affirmative defenses, including those based upon the settled principle that any rescission requires

restoration of the parties to the s*tatus quo ante*, such as the Government's recoupment of any and all benefits conferred upon plaintiffs and their predecessors-in-interest during the 20 to 30 years of contract performance.

Notably, given the pending motion to strike, none of the plaintiffs filed a motion to strike any of our affirmative defenses from our three answers, which motion was due by no later than December 23, 2005.

On December 20, 2005, the parties filed the joint status report, pursuant to which, as ordered by the Court, we stipulated as to each plaintiffs' share of the bonus payments received by the Government, assuming the correctness of the re-issued November 17 opinion. Consistent with the our answers filed on November 30, 2005, settled law, and the issues left open by the Court's re-issued November 17, 2005 opinion, we also noted that each plaintiff's recovery is subject to the Government's recoupment claim, which can be established only after discovery and trial. Plaintiffs added a note of disagreement to our statement in the December 20, 2005 joint status report (which statement, apparently, is not the subject of the pending motion to strike filed by plaintiffs in No. 02-30C and No. 04-1822C).

Thus, the pending motion to strike apparently asks this Court to revise the December 20 joint status report to include plaintiffs' note of disagreement to a Government litigation position that would appear nowhere in the joint status report if the motion to strike were granted.

## ARGUMENT

### I. PLAINTIFFS' MOTION IS UNAUTHORIZED BY THE COURT'S RULES

Although the plaintiffs in Nos. 02-30C and 04-1822C cite no authority for their motion to strike, they presumably filed it pursuant to RCFC 12(f). Rule 12(f) provides as follows:

> Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party ***within 20 days after service of the pleading*** upon the party or upon the court's own initiative at any time, the court may order stricken ***from any pleading*** any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

RCFC 12(f) (emphases added).

As an initial matter, a joint status report is not a pleading, so RCFC 12(f) does not apply by its terms. *See, e.g.*, *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 180 n.15 (2005) (denying motion to strike affidavit because affidavit is not a pleading). Plaintiffs cite no authority for striking the statement of a party's litigation position from a non-pleading, such as a joint status report. Moreover, our answers filed on November 30, 2005 ***are*** pleadings, and those answers set forth the identical language that plaintiffs now seek to have stricken by from the joint status report. Although there would have been no colorable basis for a motion to strike our affirmative defenses, plaintiffs nonetheless were required to file a motion to strike material from our answers by no later than December 23, 2005. Significantly, they never filed any such motion with regard to the only pleadings ever filed by the Government in these actions.

Further, even assuming, for argument's sake, that a joint status report is a pleading within the meaning of RCFC 12(f), the plaintiffs in Nos. 02-30C and 04-1822C have failed to establish that the statement of our litigation position constituted either an "insufficient defense" or set forth "redundant, immaterial, impertinent, or scandalous matter." *See* RCFC 12(f). At a minimum, a simple statement regarding the Government's litigation position in this litigation cannot be seen as either "impertinent" or "scandalous," and the moving plaintiffs do not so allege. Further, the moving plaintiffs fail to establish that the statement of our litigation position creates any prejudice to them or confusion in this matter. *See Impresa Construzioni Geom.*

*Domenico Garufi v. United States*, 61 Fed. Cl. 175, 177 (2004) (denying plaintiffs' motion to strike "[b]ecause the referenced material creates no prejudice or confusion in this matter and does not bear upon the cost issue decided by the court, . . ."); *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 633 n.6 (2002) (denying motion to strike where defendant did not show that filing "created an undue and unforeseen burden on its resources.") (citation omitted); *Stearns Co., Ltd. v. United States*, 34 Fed. Cl. 264, 268-69 (2002) (denying motion to strike "troubling" affidavit containing legal conclusions, ruling that Court would discount the affiant's "purely legal conclusions").

At best, the plaintiffs in Nos. 02-30C and 04-1822C imply that the statement of our litigation position in the joint status report was either an "insufficient defense" or "redundant" and "immaterial." *See* RCFC 12(f). As to whether our statement was "redundant" or "immaterial," the moving plaintiffs arguably could have pointed to the fact that, having already pled our affirmative defenses in our answers, our statement in the joint status report could have been redundant in a technical sense.

However, the consolidated plaintiffs' own response in the December 20, 2005 joint status report, as well as the pending motion to strike of plaintiffs in Nos. 02-30C and 04-1822C, amply demonstrate that all plaintiffs are now unprepared to accept the consequences of the rescission that they voluntary sought. Accordingly, the reiteration of our litigation position in the joint status report ultimately has proved to be highly material and necessary. It is essential that the Court be made aware of the parties' fundamental disagreement as to the black letter requirements of rescission, and the extent to which this disagreement may affect future proceedings in these actions.

As to whether our statement constitutes an "insufficient defense," as we demonstrate below, the moving plaintiffs' motion to strike is predicated upon fundamental misapprehensions of pleading practice and of the basic law of rescission. *See Fisher v. United States*, 31 Fed. Cl. 396, 398 (1994) (denying motion to strike Government's offset defense, holding that issue "is only amenable to resolution after this court has rendered a decision on the merits after trial"), *vacated upon other grounds*, 80 F.3d 1576 (Fed. Cir. 1996). At bottom, only the pending motion to strike is insufficiently defended.

## II. THE GOVERNMENT TIMELY ASSERTED ITS RECOUPMENT CLAIMS

### A. The Court Has Not Resolved All Claims Flowing From The Rescission

As plaintiffs well know, the effects of the ordered rescission are not final. Plaintiffs do not dispute that their reliance damages claims flow directly from the rescission ordered by the Court on November 15, 2005. Indeed, they cannot dispute this reality, because otherwise their reliance damages claims would be barred by the election of remedies doctrine. Plaintiffs cannot have it both ways. They cannot seek recovery based upon the voiding of the 36 leases and simultaneously obtain recovery based upon an assumption that each of the 36 leases has been fully performed. Plaintiffs have elected their remedy, rescission, and they are now bound by that election having successfully obtained it from this Court. Thus, any recovery they receive must be predicated upon the assumption that the leases never existed. *See, e.g., Clark v. United States*, 19 Cl. Ct. 220, 223 (1990) ("In the classic election of remedies case, one alternative remedy requires the plaintiff to affirm a voidable transaction, while the other remedy requires disaffirmance of the transaction."); Restatement (Second) of Contracts § 378 cmt. D (1981) ("[T]he remedy of restitution and that of damages for total breach are inconsistent.").

Without explanation or analysis, plaintiffs in Nos. 02-30C and 04-1822C contend that the Court may resolve only their remaining claims flowing from the ordered rescission, not those of the Government, whose recoupment claims did not even accrue until November 15, 2005, when the Court ordered rescission. *See* Pl. Mot. To Strike at 4-6. They insist that the Court resolved the Government's then non-existent recoupment claims against the Government, claiming, without citation to any authority, that the Government's potential recoupment claims somehow fell within the ambit of their motion for partial summary judgment as to damages, even though we had never filed any pleadings in these cases until November 30, and even though we were never given any opportunity to conduct discovery (except for limited settlement-related interrogatories), due to the pendency of our motion to dismiss for more than three years. *See id.* Plaintiffs do not even contend that our recoupment claim would somehow be capped by their as yet undecided reliance damages claims; rather, they contend that the Government is foreclosed from pursuing ***any*** recoupment claim. The moving plaintiffs offer no explanation or authority for their intrinsically arbitrary and illogical interpretation of the scope of their motion for partial summary judgment as to damages.

In fact, as our summary judgment responses made clear, there was no material dispute ***only*** as to the amount of bonus payments received by the Government for the 36 leases at issue. This is what the Court held. *See* Slip op. at 37 n.42. We disputed every other aspect of plaintiffs' damages claims, and we repeatedly cited RCFC 56(f), noting our inability to conduct discovery due to the procedural posture of the litigation at the time. *See, generally,* Def. Resp. To Pl. Proposed Findings Of Fact (Oct. 15, 2005). Tellingly, nowhere in their motion do plaintiffs suggest how the Government possibly could have presented a potential recoupment

claim in the context of an opposition to a partial summary judgment motion, without having had any opportunity to take discovery of the plaintiffs and their predecessors-in-interest as to the benefits that each lessee had enjoyed over the past 20 to 30 years of lease performance by the Government.

After having successfully obtained partial summary judgment as to damages, plaintiffs may not unilaterally enlarge the scope of their original motion and declare that the Government's potential recoupment claims fell within the ambit of their motion for partial summary judgment, which plaintiffs themselves voluntarily labeled as "partial." If plaintiffs had wished to encompass all Government's potential claims of recoupment prior to discovery and trial, then they should have filed a fully dispositive motion for summary judgment as to damages. However, they elected not to do so, recognizing the existence of disputed material fact and not wishing to relinquish their claims for reliance damages. Again, they are bound by their election, and they may not change it after the fact.

**B. <u>The Pending Motion To Strike Ignores Basic Pleading Practice</u>**

The moving plaintiffs contend that the Government somehow waived its potential recoupment claims by not establishing them in its opposition to plaintiffs' motion for partial summary judgment as to damages. Pl. Mot. at 4-5 (citations omitted). We never had any such obligation.

Plaintiffs' contention of waiver ignores elemental pleading practice. Recoupment is properly pled in the answer. *See* RCFC 8(c) (affirmative defenses should be asserted "[i]n pleading to a preceding pleading"); RCFC 12(b) ("Every defense . . . whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading."). A motion for

summary judgment, or response to a motion for summary judgment, is ***not*** a responsive pleading. *See Chilivis v. SEC*, 673 F.2d 1205, 1209 (11th Cir. 1982) (citing *Miller v. Am. Export Lines*, 313 F.2d 218 n.1 (2d Cir. 1963)); *see also American Heritage Bancorp v. United States*, 56 Fed. Cl. 596, 605 (2003) (Government did not waive defenses and counterclaims by failing to raise them within 120 days of plaintiff's motion for summary judgment as contemplated by case management order because counterclaims and defenses could not be waived until an answer was filed). Although an affirmative defense directly raised by a motion for summary judgment can be subject to waiver, *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.2d 1354, 1366-67 (Fed. Cir. 2003), the moving plaintiffs cite no precedent for the proposition that a limited motion for partial summary judgment such as the one they filed in this case can produce such a waiver. Indeed, raising an affirmative defense in response to a summary judgment motion is not sufficient to preserve that defense under the Court's rules. *See Universal Restoration, Inc. v. United States*, 8 Cl. Ct. 510, 519 (1985) (holding that reference to counterclaim in cross-motion for summary judgment was insufficient to assert counterclaim where counterclaim was not asserted in answer), *rev'd on other grounds*, 798 F.2d 1400 (Fed. Cir. 1986).

Here, there can be no question that we timely and properly asserted the Government's recoupment claims in the three answers we filed in these consolidated actions. On November 15, 2005, the Court denied our motion to dismiss, and, pursuant to RCFC 12(a)(2)(A), we timely filed our answers on November 30, 2005. Each of our answers unambiguously asserts several recoupment affirmative defenses. For their part, plaintiffs never filed a timely motion to strike any of these defenses. Accordingly, the pending motion to strike a statement of the Government's litigation position from a joint status report ignores elemental pleading practice.

Further, even assuming, for argument's sake, that the pending motion to strike is consistent with the Court's rules, the motion would still rest upon an incorrect interpretation of the Government's obligations in responding to plaintiffs' motion for partial summary judgment as to damages. We were required to respond only to those issues raised by the plaintiffs in their motion for partial summary judgment motion. *See Pandrol USA*, 320 F.3d at 1364-65 (failure to assert counterclaim in opposition to motion for summary judgment did not waive that claim for purposes of trial where motion did not raise the counterclaim).

Although the moving plaintiffs rely heavily upon a different section of the court's decision in *Pandrol USA*, *see* Pl. Mot. at 5, that case demonstrates precisely why there was no such waiver in this case. Nothing in plaintiffs' motion for partial summary judgment as to damages required the Government to assert or establish its prospective recoupment claims. The Court has not determined the full effects of plaintiffs' claim for rescission, nor did plaintiffs' motion for partial summary judgment ever request such a determination. Accordingly, plaintiffs articulate no reason why the Government was supposedly required to demonstrate its recoupment claims in response to a motion for partial summary judgment, when plaintiffs themselves did not even attempt to demonstrate to the Court the full extent of their claims arising from the requested rescission. The opposing party is not required to respond to matters not raised by the moving party. Rather than supporting their claim of waiver, the relevant portion of the *Pandrol USA* decision ignored by the moving plaintiffs (without explanation) defeats their contentions as to waiver. *See Pandrol USA*, 320 F.3d at 1364-65.

Here, in their motion for partial summary judgment as to damages, plaintiffs asserted only that: (1) they were entitled to rescission as a remedy for the alleged total breach; (2) the

amount of the bonus payments received by the Government is undisputed; and (3) they were entitled to recover the bonus payments made by their predecessors-in-interest as a matter of law. The expressly limited motion never purported to seek full resolution of the effects of the requested rescission. In our response to plaintiffs' limited motion for partial summary judgment as to damages, we contended that: (1) among the benefits plaintiffs received during 20 to 30 years of lease performance by the Government was the destruction of the speculative value of the leases, precluding plaintiffs from returning the leases to the Government in the form in which they received them, and, accordingly, the threshold availability of rescission as a remedy for an alleged total breach; (2) the amount of the bonus payments received by the Government is undisputed; and (3) as a matter of law, plaintiffs may not recover in restitution payments received by the Government from third parties. The Court disagreed with our contentions as to (1) and (3). The Court did not purport to resolve all issues flowing from the ordered rescission, as it expressly deferred entry of final judgment. The moving plaintiffs do not explain, because they cannot explain, how the Government's recoupment claims, which did not even accrue until November 15, 2005, were essential to the resolution of issues (1), (2), and (3), which plaintiffs themselves chose to raise in their limited motion for partial summary judgment.

Finally, even assuming, for argument's sake, that our response to plaintiffs' motion for partial summary judgment as to damages was somehow lacking, and that timely pleading our affirmative defenses of recoupment in our answers was somehow insufficient to preserve those defenses, the Court would still have "broad discretion to allow new claims and defenses to be added to a case before the resolution of litigation in any event." *American Heritage*, 56 Fed. Cl. at 605 (citing *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1971); *Tenneco*

*Resins Inc. v. Reeves*, 752 F.2d 630, 635 (Fed. Cir. 1985)). In a multi-billion dollar action such as this one, plaintiffs offer no reason whatsoever as to why they should be unfairly enriched.

**C. Rescission Requires Restoration Of The Parties To The *Status Quo Ante***

The pending motion to strike also ignores the settled law of rescission. Contrary to the moving plaintiffs' premise, plaintiffs may not recover all of the money paid to the Government by them and others, while simultaneously retaining all of the admitted benefits that they and their predecessors have received from the Government over the course of 20 to 30 years of lease performance. Plaintiffs can cite no authority for their apparent position that rescission is an intrinsically punitive, implied-in-law remedy as to which the United States has waived sovereign immunity. There is none.

In fact, contrary to the moving plaintiffs' motion, it is a matter of settled law that restoration to the *status quo ante* is a required component of the rescission remedy. *See Pinter v. Dahl*, 482 U.S. 622, 642 n.18 (1988) ("[R]escission . . . requir[es] the buyer to return what he received from the seller."); *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1372 (Fed. Cir. 2001) ("[A] plaintiff seeking to be restored to the status quo ante must likewise restore to the defendant whatever the plaintiff has received."). This "well-established general rule" applies equally when the Government is the defendant. *Dahl v. United States*, 695 F.2d 1373, 1382 (Fed. Cir. 1982) (citing *N.Y. Mail & News Transp. Co. v. United States*, 154 F. Supp. 271, 276 (Ct. Cl. 1957)). If plaintiffs do not wish to be restored to the *status quo ante*, as all of their post-November 17, 2005 statements demonstrate, then they should not have requested rescission as a remedy.

In its re-issued November 17, 2005 decision, the Court rejected our argument that the nature of the benefits admittedly received by plaintiffs acted as a bar to the threshold availability

of rescission as a remedy. Slip op. at 37 n.43. The Court specifically held that "plaintiffs' restitution claims should not be barred by the alleged impact of their exploratory activities when such activities were part of "the inherent nature of the[ir] transaction[s]" with the government." *Id.* at 38 n.43 (citing *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1319 (Fed. Cir. 2004)). The Court added: "The exploration of these leases has come to no surprise to the government – it should not be shielded from restitution liability simply because its breach coincided with the contractually-provided activities that may have reduced the leases' market value." *Id.*

However, the Court never ruled that plaintiffs and their predecessors-in-interest received no benefit from 20 to 30 years of lease performance, or that plaintiffs and their predecessors-in-interests never conducted any exploration activities that diminished the fair market value of the leases. The Court instead ruled that the nature of the benefits received by plaintiffs did not bar the award of rescission in these consolidated cases. This ruling in no way excuses plaintiffs from accepting the consequences of the rescission remedy that they voluntarily sought. Rather, they ***must*** return the benefits that they and their predecessors-in-interest received, as a required means of restoring the parties to the *status quo ante.*

Indeed, plaintiffs' position directly contradicts the controlling precedent of *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004). Here, the Court ruled that rescission was not barred because the plaintiffs' exploratory activities were part of "the inherent nature of the[ir] transaction[s]" with the government." Slip op. at 38 n.43. Under these circumstances, as the court noted in *Hansen*, the general rule holding that "any award of restitution to a plaintiff should be offset by the benefits he or she already has received from the

defendant," has become directly applicable in this case. *Hansen*, 367 F.3d at 1315. Plaintiffs cannot have it both ways: they cannot prevail upon an argument that the benefits they received were pursuant to the leases, and, thus, not a bar to rescission, and simultaneously contend that those same benefits are somehow immunized from offset for reasons that remain unexplained. *See id.* ("*Landmark* [*Land Co., Inc. v. FDIC*, 256 F.3d 1365 (Fed. Cir. 2001)] makes clear that offset is only proper where the benefits at issue were received directly from the breaching party.").

Further, plaintiffs wholly overlook the holding of *Hansen*. In that case, the court held: "[W]e do not think that the Hansens' restitution claim may not proceed based solely on the consequences of the merger transaction." 367 F.3d at 1319. However, the Court specifically noted that "[i]f mismanagement is established, the Hansens may be accountable for any diminishment of the character or value of the property that can be directly traced to their mismanagement." *Id.*

In short, this Court ruled that plaintiffs' destruction of the speculative value of the leases did not constitute a bar to rescission. Given this ruling, *Hansen* requires that any restitution award be offset by the benefits plaintiffs received directly from the Government. Further, *Hansen* requires that plaintiffs be held accountable for any diminishment of the character or value of the property that can be directly traced to their actions. As in *Hansen*, a trial is required for those determinations. Restitution is not, as plaintiffs repeatedly imply, a one-sided remedy that punishes the breaching party. Rather, it is a neutral remedy that erases the effects of a total breach by restoring the parties to the *status quo ante*. Consequently, following discovery, the Government shall establish at trial its recoupment claims and enable the Court to restore the

parties to the *status quo ante* – the legal result which is required by the Court's re-issued November 17, 2005 decision.

**CONCLUSION**

For these reasons, we respectfully request that this Court deny plaintiffs' motion to strike.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

STEPHEN C. TOSINI
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-8640

January 18, 2006

Attorneys for Defendant