IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMBER RESOURCES COMPANY., et al.,<br><br>Plaintiffs,<br><br>THE UNITED STATES,<br><br>Defendant. | ) | |
| ANADARKO E&P COMPANY, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION**
**<u>OF THE COURT'S RESCISSION OF LEASE OCS P-0452</u>**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

STEPHEN C. TOSINI
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-8640

March 2, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION OF THE COURT'S RESCISSION OF LEASE OCS P-0452 . . . . . . . . 1

ARGUMENT . . . . . . . . . . 4

I. PLAINTIFFS CONCEDE THE POTENTIAL DRAINAGE OF LEASE OCS-P 0452, WHICH THEY NEVER REVEALED IN THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DAMAGES . . . . . . . . . . 4

II. THE GOVERNMENT REQUIRES DISCOVERY TO RESPOND TO DR. MANNON'S FACIALLY UNSUPPORTED ASSERTIONS . . . . . . . . . . 5

A. The Evidence Of A Sealing Fault Is Unknown . . . . . . . . . . 7

B. The Total Recoverable Oil In OCS-P 0452 . . . . . . . . . . 8

C. The Drainage From Lease OCS-P 0452 . . . . . . . . . . 9

D. Dr. Mannon's Declaration Revives Our Assertion Of Rule 56(f) . . . . . . . . . . 9

III. PLAINTIFFS IGNORE THE ROLE OF UNITIZATION IN THE APPLICATION OF THE RULE OF CAPTURE . . . . . . . . . . 10

IV. DELTA'S RIGHT TO ACQUIESCE TO THE DRAINAGE OF LEASE OCS-P 0452 WAS A SUBSTANTIAL BENEFIT IT RECEIVED FROM THE LEASE . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

Amber Resources Co. v. United States,
68 Fed. Cl. 535 (2005) . . . . . . . . . . 2, 16

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 10

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . 15, 16

Louisiana ex rel. Guste v. United States,
832 F.2d 935 (5th Cir. 1987) . . . . . . . . . . 11

N.W. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan..,
489 U.S. 493 (1989) . . . . . . . . . . 11, 12

Opryland USA Inc. v. The Great American Music Show, Inc.,
970 F.2d 847 (Fed. Cir. 1992) . . . . . . . . . . 10

Southeastern Pipe Line Co., Inc. v. Tichacek,
997 S.W. 2d 166 (Tex. 1999) . . . . . . . . . . 12

State of Ala. v. U.S. Dept. of Interior,
84 F.3d 410 (11th Cir. 1996) . . . . . . . . . . 11, 12

Stearns Airport Equip. Co. v. FMC Corp.,
170 F.3d 518 (5th Cir. 1999) . . . . . . . . . . 10

## STATUTES AND REGULATIONS

30 C.F.R. § 250.1101(b) . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al.,<br><br>Plaintiffs,<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION OF THE COURT'S RESCISSION OF LEASE OCS P-0452**

Defendant, the United States, respectfully submits this reply to plaintiffs' February 21, 2006 opposition to its motion for reconsideration of the Court's order of November 15, 2005, reissued on November 17, 2005, to the extent that the Court rescinded Lease OCS P-452 owned

by plaintiff, Delta Petroleum Corporation ("Delta"). *See Amber Resources Co. v. United States*, 68 Fed. Cl. 535, 557-61 (2005).

In our motion, we demonstrated that newly-discovered evidence establishes that Delta cannot return Lease OCS-P 0452 to the Government in the condition in which it received it due to apparent drainage of Lease OCS-P 0452 by adjacent leaseholders, including Delta. *See* Def. Mot. (citing Declaration of Drew Mayerson ("Mayerson Decl.") ¶ ¶ 7-8). Unlike other impairments of the 36 leases' value that the Court considered and rejected as a bar to rescission in its re-issued November 17, 2005 decision, *see Amber*, 68 Fed. Cl. at 558 n.43, the potential past, present, and future drainage of Lease OCS-P 0452, which plaintiffs failed to disclose in their motion for partial summary judgment as to damages, has not occurred, and will not occur, in a manner contemplated by Lease OCS-P 0452.

Rather, the drainage of Lease OCS-P 0452 is the result of Delta's acquiescence to the drainage by it and its fellow owners of Lease OCS-P 0451. This right of acquiescence was a right of ownership that arose directly from Delta's ownership of Lease OCS-P 0452. *See* 30 C.F.R. § 250.1101(b). Delta would not have had the right to acquiesce to this drainage had it never owned the sole and controlling interest in Lease OCS-P 0452. Now, having enjoyed the unique benefits of its ownership of Lease OCS-P 0452, Delta stands to profit directly from its acquiescence to the drainage of Lease OCS-P 0452 due to its approximately 11 percent ownership interest in Lease OCS-P 0451. *See* Mayerson Decl. ¶ 7. (We have not had an opportunity to learn, through discovery, whether Delta entered into any other financial arrangements to receive compensation for the drainage of Lease OCS-P 0452.)

Plaintiffs do not deny the essential facts of our motion for reconsideration. Nonetheless, they urge the Court to deny reconsideration for three primary reasons.

First, they contend, based exclusively upon a new expert declaration by Robert W. Mannon (as to which we have been afforded no discovery), that no drainage of Lease OCS-P 0452 occurred prior to November 15, 2005, the date on which the Court issued its opinion granting plaintiffs' motion for summary judgment as to liability and partial summary judgment as to damages. Assuming the correctness of Dr. Mannon's unsupported assertions, plaintiffs posit that Delta's acquiescence to the drainage of Lease OCS-P 0452 had not yet impaired the lease when the Court issued its opinion granting Delta rescission of Lease OCS-P 0452.

Second, they contend, again relying upon Dr. Mannon's new declaration, that the amount of drainage from Lease OCS-P 0452 is insignificant compared to the amount of reserves available, and, accordingly, the drainage by adjacent leaseholders does not prevent Delta from returning Lease OCS-P 0452 to the Government in substantially the same condition in which it received the lease interest.

Finally, plaintiffs contend that, pursuant to the common law rule of capture, the owners of Lease OCS-P 0451 are entitled to drain oil from Lease OCS-P 0452 without compensating the owner of Lease OCS-P 0452, and that Delta's acquiescence to the drainage was superfluous and not relevant as a matter of law.

As we demonstrate below, none of plaintiffs' assertions is availing, and, plaintiffs' assertion that the Government conferred Delta "*no* benefit" under Lease OCS-P 0452, Pl. Opp. at 13 (emphasis in original), is simply wrong as a matter of law. Further, at a minimum, the Government requires additional discovery pursuant to Rule 56(f) of the Rules of this Court

before the Court may resolve the issues of fact raised by plaintiffs' expert declaration in support of their opposition to our motion for reconsideration. For our demonstration, we rely upon the attached Declaration of Richard F. Strickland, as well as the Rule 56(f) Declaration of Patricia M. McCarthy.

## ARGUMENT

### I. PLAINTIFFS CONCEDE THE POTENTIAL DRAINAGE OF LEASE OCS-P 0452, WHICH THEY NEVER REVEALED IN THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DAMAGES

In their opposition to our motion for reconsideration, plaintiffs concede the essential facts presented by our motion. They admit that, at a minimum, there ***will*** be drainage of oil from Lease OCS-P 0452 due to the activities of Delta and the other owners of Lease OCS-P 0451. *See* Pl. Opp. at 3-5 (citing Mannon Decl.). They do not deny that they knew about the possibility of drainage as early as February 2003, when Delta first supported the request of Arguello, Inc. for contraction of the Rocky Point Unit. *See* Def. MFR at 4-5; Pl. Opp. at 5. Plaintiffs make no effort to explain their failure to disclose any of these facts ***at any time*** during the briefing and argument of their motion for summary judgment as to liability and partial summary judgment as to damages, which was supported by the declarations of Ronald G. Heck, nor do they make any effort to reconcile the sworn statement by Mr. Heck that no production has occurred with respect to Lease OCS-P 0452 with the inconsistent sworn statement of Dr. Mannon. That is, taking everything that Dr. Mannon avers as true (which would be unwarranted, as we demonstrate below), nothing in Mr. Heck's unequivocal declaration warned the Court, even remotely, that, indeed, Delta and the other owners of Lease OCS-P 0451 will be draining oil from Lease OCS-P

0452. *See* Declaration of Ronald Heck ("Heck Decl.") ¶ 22 ("no oil or gas has ever been produced from any of the lawsuit leases.").

At best, plaintiffs impliedly seek to salvage Mr. Heck's declaration by contending that "no oil had been drained from Lease OCS-P 0452 as of the time of the Court's November 15, 2005 decision." Pl. Opp. at 2. Again, however, at no point did either Mr. Heck or plaintiffs warn the Court that Mr. Heck's unambiguous assertion, which contained no caveats, would be false if the Court were to wait until some time after the magic date of November 15, 2005 to issue an order rescinding the leases, including Lease OCS-P 0452. At a minimum, therefore, plaintiffs' opposition to our motion for reconsideration establishes that plaintiffs and their principal declarant, Mr. Heck, have not been entirely forthcoming with the Court regarding the facts and circumstances of Lease OCS-P 0452.

## II. THE GOVERNMENT REQUIRES DISCOVERY TO RESPOND TO DR. MANNON'S FACIALLY UNSUPPORTED ASSERTIONS

Plaintiffs' opposition to our motion for reconsideration is supported, indispensably, by a 13-page declaration of an alleged expert, Robert W. Mannon, whom we have never had any opportunity to depose. *See* Pl. Opp. at 2, 3, 4, 5, 6, 9, 12 (citing Mannon Decl.). Dr. Mannon makes a number of assertions that plaintiffs deem critical, or, in one instance, supposedly "fatal" to our motion. *See* Pl. Mot. at 2.

First, Dr. Mannon swears, without reservation, that "as of November 15, 2005, there had been no drainage from Lease OCS-P 0452 by any of the wells on the east half of Lease OCS-P 0451." Mannon Decl. ¶ 27. According to plaintiffs, Delta did nothing to impair leases prior to the date on which the Court issued its opinion granting plaintiffs' motion for partial summary judgment as to damages.

Second, and more importantly, Dr. Mannon states, without caveat, that "[a] significant sealing fault extends diagonally northwest to southeast across the boundary of Leases OCS-P 0451 and 0452." *Id.* ¶ 10. According to Dr. Mannon, "[t]his fault prevents the flow of oil across the fault from one side to the other," and, therefore, "oil accumulations on the east side of the fault will not flow west toward Lease OCS-P 0451." *Id.* Although Dr. Mannon provides a graphic depiction of the alleged sealing fault, he does not identify the evidence supporting the existence of this alleged "sealing fault." *See id.* As Drew Mayerson, Chief of the Office of Reservoir Evaluation and Production of the Pacific Outer Continental Shelf Region of the Minerals Management Service ("MMS"), previously explained in his declaration in support our motion for reconsideration, "recent geological interpretation by Arguello Inc. indicates a sealing fault in Lease OCS-P 0451 between Lease OCS-P 0451 and Lease OCS-P 0452, though MMS does not have sufficient well test data to confirm Arguello Inc.'s interpretation." Mayerson Decl. ¶ 8. Plaintiffs contend that Dr. Mannon's declaration establishes that the estimated drainage from Lease OCS-P 0452 will be insignificant compared to the available reserves, and, therefore, the drainage will not substantially impair the condition of the leases.

Dr. Mannon's declaration raises potentially disputed issues of material fact. Indeed, plaintiffs themselves, by relying so indispensably upon Dr. Mannon's declaration in their opposition to our motion for reconsideration, have made these alleged facts material. As Mr. Mayerson's declaration establishes, MMS has not yet been provided sufficient well test data to confirm the existence and extent of the alleged "sealing fault." *Id.* Further, as explained in the Declaration of Richard W. Strickland filed in support of this reply brief, substantial discovery is necessary to confirm or refute Dr. Mannon's assertions.

Dr. Strickland is the President of The Strickland Group, Inc., which provides petroleum consulting services in the area of reservoir engineering to oil and gas producers, pipeline companies, and other parties in the oil and gas industry. Strickland Decl. ¶ 2. He has taught courses in petroleum and reservoir engineering and the numerical simulation of oil and gas reservoirs at Texas A&M University, where he was an Associate Professor of Petroleum Engineering for six years, and in over 75 company-run or industry sponsored courses attended by reservoir engineers and geoscientists from almost every major oil company in the world. *Id.* ¶ 3. He had served as an officer and director of the Accrediting Board of Engineering and Technology, which accredits graduate and undergraduate engineering programs in the United States, and he has served on this board's Engineering Accreditation Commission. *Id.* ¶ 4. Dr. Strickland has performed studies on fields throughout the world, and he specifically has performed a number of studies of the Monterey formation onshore and offshore California over the last 20 years. *Id.* ¶ 2.

A recognized expert in petroleum engineering, *id.* ¶ 5, Dr. Strickland has reviewed Dr. Mannon's declaration and notes numerous areas that lack support and necessitate further inquiry. Dr. Strickland observes that Dr. Mannon made four primary conclusions of a technical nature, but for three of the conclusions, Dr. Mannon offered neither the raw data nor a description of his methodology. *Id.* ¶ 8. For the fourth conclusion, Dr. Mannon provided no raw data and only a vague description of his methodology. *Id.*

### A. <u>The Evidence Of A Sealing Fault Is Unknown</u>

As Dr. Strickland explains, Dr. Mannon's assertion as to the existence of a "sealing fault" is significant because it limits the areas which Dr. Mannon believes could be drained by the four

wells. *Id.* ¶ 8. However, Dr. Strickland notes that Dr. Mannon offers neither data nor insight as to how the data was analyzed to support either one of Dr. Mannon's two critical conclusions – one, that the fault exists; and two, that it is a sealing fault. *Id.* ¶ 13. In order for Dr. Strickland to fully evaluate Dr. Mannon's technical assertion, he would need the raw data on which Dr. Mannon's structural interpretation and sealing fault conclusion are based. *Id.* ¶ 16.

**B. <u>The Total Recoverable Oil In OCS-P 0452</u>**

Moreover, as Dr. Strickland explains, there similarly is no support provided for Dr. Mannon's calculation of the recoverable oil in OCS-P 0452, and the explanation provided for Dr. Mannon's methodology "lacks the essential rigor to evaluate the accuracy of the calculation." *Id.* ¶ 17. Plaintiffs rely upon this calculation to contend that the amount of oil to be drained by Delta and the other lessees of OCS-P 0451 is insignificant. Pl. Opp. at 8-10. This assumption is critical to plaintiffs' contention that Delta can return Lease OCS-P 0452 in the condition in which it received it because allegedly "Lease OCS-P 0452 will be left in substantially its original condition." *Id.* at 9.

Dr. Strickland notes that Dr. Mannon relied in part upon information from newly drilled wells in OCS-P 0451 that is not available to Dr. Strickland at this time. Strickland Decl. ¶ 18. He also notes that discrepancies exists between Dr. Mannon's previous analysis produced in this litigation (subject to the protective order in place), and that Dr. Mannon has provided no explanations for these deviations. *Id.* ¶ 19. To evaluate Dr. Mannon's calculation, Dr. Strickland requires discovery, including the raw data collected on the block, as well as a more specific explanation of Dr. Mannon's methodology. *Id.* ¶¶ 20-24.

**C. <u>The Drainage From Lease OCS-P 0452</u>**

Finally, Dr. Strickland observes that Dr. Mannon concludes that only 85,000 barrels of oil will be drained from Lease OCS-P 0452 from the four wells to be drilled into the Northeastern pool of the Rocky Point Unit. *Id.* ¶ 25. Again, Dr. Mannon does not describe his methodology or specific assumptions he used in reaching his conclusions. *See id.*

Further, on its face, Dr. Mannon's conclusion as to the amount of drainage from Lease OCS-P 0452 is questionable. As Dr. Strickland explains, Dr. Mannon's declaration describes and depicts "four drilled or to-be-drilled wells that are clustered on the eastern side of the block with substantial perforated intervals within a thousand feet of the block boundary, including one well as close as 55 feet from the boundary." *Id.* ¶ 26. Given this, Dr. Strickland comments that "the idea that 12.6 million barrels could be withdrawn from these wellbores and only 'drain' 85,000 barrels (0.7%) from the adjacent block doesn't seem sensible." *Id.* Dr. Strickland notes that there may be an explanation for Dr. Mannon's analysis; however, plaintiffs have provided none of the raw data and methodological descriptions that would allow Dr. Strickland to evaluate Dr. Mannon's calculations. *Id.* ¶ 27.

**D. <u>Dr. Mannon's Declaration Revives Our Assertion Of Rule 56(f)</u>**

Plaintiff's proposed finding of uncontroverted fact numbered 38 in support of their motion for partial summary judgment as to damages provided as follows: "Complying with the district court's order and MMS's instructions, the Lessees have not conducted any operations on the Leases since June 20, 2001. (Heck Decl. ¶ 33)." At the time, the Government noted in response that "[d]iscovery has not yet commenced in this litigation due to the pendency of the Government's motion to dismiss," and, "[t]o the extent, if any, a further response is required to

Proposed Finding of Uncontroverted Fact No. 38, pursuant to RCFC 56(f), the Government would require additional discovery before rendering that further response." Further, as we demonstrated in our motion for reconsideration, in a declaration provided in support of plaintiffs' motion for partial summary judgment, Mr. Heck swore under oath that "'no oil or gas has ever been produced from any of the lawsuit leases.'" Def. MFR at 3 (quoting Heck Decl. ¶ 22).

Dr. Mannon's declaration, as well as plaintiffs' response to our motion for reconsideration, raise as potential material facts precisely how much oil has been and will be drained from Lease OCS-P 0452, and, therefore, the overall accuracy of plaintiffs' factual assertions in support of their motion for partial summary judgment, at least as they pertain to Lease OCS-P 0452. The court of appeals has made clear that where, as here, the discovery sought is "reasonably directed to 'facts essential to justify the party's opposition,' in the words of Rule 56(f), such discovery must be permitted or summary judgment refused." *Opryland USA Inc. v. The Great American Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *see also Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (Rule 56(f) motions "are generally favored, and should be liberally granted.") (citations omitted). At a minimum, the Government requires discovery to evaluate the accuracy of Dr. Mannon's factual assertions.

## III. PLAINTIFFS IGNORE THE ROLE OF UNITIZATION IN THE APPLICATION OF THE RULE OF CAPTURE

Plaintiffs contend that our motion for reconsideration should be denied because, pursuant to the rule of capture, the owners of Lease OCS-P 0451 may lawfully capture oil from Lease OCS-P 0452. Pl. Opp. at 10-13. As we demonstrate below, they over-simplify the rule of capture, and ignore the critical role of unitization, as well as the critical right of acquiescence

that Delta exercised before the Court ordered the rescission of Lease OCS-P 0452 on November 15, 2006.

Plaintiffs' description of the rule of capture is correct so far as it goes. Under the common law rule of capture, "the owner of land has the right to capture oil and gas underlying his property, including that which migrates to his property from another's land." *Louisiana ex rel. Guste v. United States*, 832 F.2d 935, 938 (5th Cir. 1987). And it is true that the rule of capture governs outer continental shelf leasing. *State of Ala. v. U.S. Dept. of Interior*, 84 F.3d 410, 413 (11th Cir. 1996); *State of La. v. United States*, 832 F.2d 935, 938 (5th Cir. 1987). However, plaintiffs ignore the vital role of unitization in outer continental shelf leasing, and the fact that the rule of capture is just one of many rules that govern the cooperative development of minerals from the leases at issue.

Contrary to the suggestion of plaintiffs' opposition, the rule of capture is not the only rule governing development of the leases at issue, and, if it were, chaos would ensue. In an unregulated world controlled by the rule of capture, owners would have enormous incentives to "rush to produce" to prevent other owners from draining oil or gas that they would otherwise produce. *N.W. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*. 489 U.S. 493, 498 (1989). This phenomenon is undesirable because "[a] rush to produce . . . may cause waste." *Id.* As the Supreme Court explained, oil or gas may be produced in excess of the demand, more wells may be drilled than are necessary for the efficient production of the pool, or the field may be drained in a way the precludes recovery of all potential resources. *Id.* Thus, a common plan for development is the most desirable way to ensure the optimal development and production of a lease. In *Northwest Central Pipeline Corporation*, the Supreme Court explained that "[t]he

common-law rule of capture, whereby gas was owned by whoever produced it from the common pool, left unchecked these twin problems of perceived inequities between owners of rights in the pool and of waste resulting from strong economic disincentives to conserve resources." *Id.* As a result, most oil and gas leases contain an implied covenant that imposes a duty to protect the leasehold from local and field-wide drainage. *See, e.g., Southeastern Pipe Line Co., Inc. v. Tichacek*, 997 S.W. 2d 166, 170 (Tex. 1999). Another "common protective measure is for the lessee to exercise its contractual pooling authority and combine tracts from two or more leases into a single unit around an existing well." *Id.*

In outer continental shelf leasing, MMS possesses discretion to minimize the negative effects of the application of the rule of capture because "it has authority to create lease tracts that correspond to reservoirs; and it has authority to require lessees to combine drilling and production efforts." *State of Alabama*, 84 F.3d at 413. As explained in the Mayerson Declaration, unitization is the principal way that MMS ensures the optimal development of the resources. *See* Mayerson Decl. ¶ 3.

Thus, contrary to plaintiffs' assertions, the owners of Lease OCS-P 0451 do not possess an unfettered right to deplete the resources of Lease OCS-P 0452. *See* Pl. Opp. at 11-12 ("Indeed, the rights of the Lease OCS-P 0451 lessees to this oil would be the same even if Lease OCS-P 0452 had never been issued."). Rather, as plaintiffs concede in a footnote, by regulation, the owners of Lease OCS-P 0451 were ***required*** to seek the permission of Delta to drill within 500 feet of Lease OCS-P 0452. *Id.* at 12 n.7 (citing 30 C.F.R. § 250.1101(b)).

Plaintiffs' suggestion that this consent is meaningless or superfluous, *see id.*, is as unsupported as it is beside the point. Here, there can be no question that Delta, in fact, did grant

the requested consent: On October 18, 2005, Delta wrote to the Pacific Region of MMS that it did not object to the plan of Arguello, Inc. to drill a sidetrack of a "well so that its bottom-hole location will be within 500 feet of the boundary between OCS-P 0451 and 0452." Mayerson Decl. ¶ 7 (citing October 18, 2005 letter from Kent B. Lina to Allen Shareghi). Earlier, in 2003, Roger A. Parker, the president of Delta, took pains to assure MMS, the Energy Division, and the California Coastal Commission that "it will not contend, before any county, state or federal government entity, that it is or should be entitled to explore or develop the OCS-P 0452 or 0453 Lease as a result of the fact that such county, state or federal entity permitted the E/2 of OCS-P 0451 Lease to be developed, or as a result of the actual development of the E/2 of the OCS-P 0451 Lease." Mayerson Decl. ¶ 5 (citing February 20, 2003 letter from Roger A. Parker to J. Lisle Reed, Steve Chase, and Peter Douglas). Delta's consent opened the gateway for the drainage of Lease OCS-P 0452.

## IV. DELTA'S RIGHT TO ACQUIESCE TO THE DRAINAGE OF LEASE OCS-P 0452 WAS A SUBSTANTIAL BENEFIT IT RECEIVED FROM THE LEASE

Delta's acquiescence to the drainage of Lease OCS-P 0452 is not without meaning. Plaintiffs' attempts to downplay the significance of Delta's acquiescence are unavailing. *See* Pl. Mot. at 12 (suggesting that Government is compensated for oil drained from Lease OCS-P 0452 by royalty payments upon Lease OCS-P 0451).

At bottom, plaintiffs do not deny that Delta freely exercised its right to acquiesce to the drainage of Lease OCS-P 0452 by virtue of Delta's sole ownership of that lease, and that Delta also voluntarily elected to come into this Court and demand that it be stripped, *ab initio*, of any right of ownership in that lease, including its right to acquiesce to the drainage of the lease by others. They impliedly admit, therefore, that Delta's acquiescence to the drainage of Lease

OCS-P 0452 is now void due to the Court's re-issued November 17, 2005 opinion rescinding Lease OCS-0452, among other leases. They do not deny that Delta also owns an approximately 11 percent financial interest in Lease OCS-P 0451.

Plaintiffs contend, however, that Delta's acquiescence is immaterial because the Government approves the locations of all wells drilled on the Pacific outer continental shelf, and it specifically approves a well within 500 feet of the lease boundary. Pl. Opp. at 12. Plaintiffs speculate that the Government, as lease owner (now that the lease has been rescinded), would have acquiesced to the drainage of Lease OCS-P 0452 because of the possibility of royalty payments by the owners of Lease OCS-P 0451 on the oil drained from Lease OCS-P 0452.

Plaintiffs conflate MMS's role as regulator with its now theoretical role as leaseholder in light of the rescission ordered in November 2005. The roles are different. As regulator, MMS demanded the contraction of the Rocky Point Unit through the removal of the eastern half of Lease OCS-P 0451, only ***after*** Delta had acquiesced to the contraction in February 2003. As regulator, MMS approved the placement of the well within 500 feet of the boundary for Lease OCS-P 0452, only ***after*** Delta had plainly and unambiguously consented to the drilling of the well in October 2005. At the time MMS approved the activities that would lead to drainage of Lease OCS-P 0452, MMS had received bonus payments for Lease OCS-P 0452. MMS had received consideration for the resources. As regulator, MMS had no reason not to approve the requests, given Delta's plain and explicit acquiescence.

As a result of the rescission, however, MMS will have to return all bonus payments received for Lease OCS-P 0452. Plaintiffs cite no evidence whatsoever to establish the central hypothesis of their opposition – that MMS, stepping into the shoes of Delta in light of the

rescission, likewise would have acquiesced to the drainage of Lease OCS-P 0452, even without the possibility of bonus payments for that lease. *See* Pl. Opp. at 12 ("Indeed, the rights of hte Lease OCS-P 0451 lessees to this oil would be the same even if Lease OCS-P 0452 had never been issued."). Plaintiffs imply that the royalty payments made by the owners of Lease OCS-P 0451 on the oil drained from Lease OCS-P 0452 would have been so lucrative as to cause MMS to forgo the possibility of seeking bonus payments for Lease OCS-P 0452. Nothing cited by plaintiffs supports this pure speculation.

Plaintiffs engage in this speculation because they want to deny that Delta enjoyed a valuable benefit from holding Lease OCS-P 0452. However, they cannot deny the existence of this benefit received by Delta. As a direct result of its ownership in that lease, Delta was able to permit it and the other owners of Lease OCS-P 0451 to obtain valuable oil from Lease OCS-P 0452. Had a disinterested stranger, holding no interest in Lease OCS-P 0451, owned Lease OCS-P 0452 instead of Delta, the disinterested stranger may not have acquiesced to the drainage of Lease OCS-P 0452. Delta, and the other owners of Lease OCS-P 0451, would be in a less advantageous position today had the objecting stranger owned the lease rather than Delta. Morever, plaintiffs can cite no evidence whatsoever for their further speculation that MMS would have overruled the objections of an adjoining lessee and permitted the drainage of Lease OCS-P 0452. *See* Pl. Opp. at 12 n.7.

Finally, plaintiffs erroneously rely upon *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004), to contend that the drainage does not constitute a bar to rescission of Lease OCS-P 0452. *See* Pl. Opp. at 10. As we demonstrated at pages 7 through 9 of our motion for reconsideration, we contended in opposition to plaintiffs' motion for summary judgment that

plaintiffs' destruction of the speculative value of the leases due to their admitted exploration activities constituted a bar to rescission pursuant to section 384 of the Restatement (Second) of Contracts. This Court rejected our reliance upon section 384 of the Restatement, citing *Hansen* and holding that "plaintiffs' restitution claims should not be barred by the alleged impact of their exploratory activities when such activities were part of 'the inherent nature of the[ir] transaction[s]" with the government." *Amber*, 68 Fed. Cl. at 558 n.43 (citing *Hansen*, 367 F.3d at 1319). As we demonstrated in our motion for reconsideration, the drainage of Lease OCS-P 0452 was not part of the "inherent nature" of Delta's transactions with the Government regarding Lease OCS-P 0452. Def. MFR at 9.

In their brief in opposition, plaintiffs provide a lengthy block quotation from *Hansen*, and simply assert, without explanation, that "even if Lease OCS-P 0452 had been substantially altered, that would erect no bar to restitution." Pl. Opp. at 10. However, the situation described in *Hansen* plainly does not apply to a lessee who uses its rights under the lease to permit adjacent lessees to impair the value of the lease. Taken to its logical extreme, plaintiffs' contention would mean that the bar upon rescission set forth in section 384 of the Restatement could never have any meaning. However, the court of appeals has held to the contrary, and expressly adopted this section of the Restatement. *See Hansen*, 367 F.3d at 1315.

In short, Delta was able to use its sole ownership of Lease OCS-P 0452 to gain a financial advantage that was not specifically contemplated by the lease. Contrary to plaintiffs' characterization of our argument, we do not contend that there was anything "untoward" about Delta's conduct. *See* Pl. Opp. at 12. Delta was well within its rights to acquiesce to the drainage of Lease OCS-P 0452. However, now that the lease has been rescinded *ab initio*, Delta is not

entitled to retain and continue to receive the benefits of once owning Lease OCS-P 0452 ***and*** still recover all of the bonus payments too. Delta may not have its cake and eat it too. This is all we contend.

**CONCLUSION**

For these reasons, and the reasons set forth in our motion for reconsideration, we respectfully request that this Court grant our motion for reconsideration of the rescission of Lease OCS-P 0452. Alternatively, we respectfully request that the Court hold our motion for reconsideration in abeyance pending adequate discovery as to the facts asserted in plaintiff's proposed finding of undisputed fact in support of their motion for partial summary judgment as to damages, and in the recently-filed declaration of Robert W. Mannon.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen by Mark A. Melnick
DAVID M. COHEN
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

STEPHEN C. TOSINI
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-8640

March 2, 2006

Attorneys for Defendant