# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,*<br><br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| **************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,*<br>v. | |
| | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| **************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| **************************************** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (1) ESTABLISHING THE ABSENCE OF ANY LEGALLY COGNIZABLE "BENEFITS" TO BE OFFSET AGAINST PLAINTIFFS' RESTITUTION AWARD; (2) ESTABLISHING THEIR ENTITLEMENT TO RECOVER SUNK COSTS AS RESTITUTIONARY DAMAGES; AND (3) DISMISSING ALL OF DEFENDANT'S AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

Page


I. THE CONSIDERATION PAID TO ACQUIRE LEASE INTERESTS CANNOT BE OFFSET AGAINST THE LESSEES' RESTITUTION RECOVERY. ........................2

A. Neither Logic Nor Case Law Supports the Government's Offset Theory...........................2

B. The Lessees Are Entitled to Summary Judgment Dismissing the Government's Seventh and Eighth Affirmative Defense. ..........................................................................7

II. THE LESSEES ARE ENTITLED TO RECOVER SUNK COSTS AS PART OF THEIR RESTITUTION CLAIM. ....................................................................................7

A. The Lessees' Sunk Costs May Be Recovered As Part Of Their Restitution Claim. ...........7

B. The Lessees Are Entitled to Summary Judgment Dismissing Defendant's Eleventh Affirmative Defense.........................................................................................................12

C. The Lessees Are Entitled to Summary Judgment Dismissing Defendant's Twelfth Affirmative Defense. .......................................................................................13

III. THE LESSEES ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING THE GOVERNMENT'S REMAINING AFFIRMATIVE DEFENSES. ....................................................................................................14

a. First Affirmative Defense ......................................................................................14

b. Second Affirmative Defense ..................................................................................15

c. Third Affirmative Defense......................................................................................15

d. Fourth Affirmative Defense ...................................................................................15

e. Fifth Affirmative Defense.......................................................................................16

f. Sixth Affirmative Defense ......................................................................................16

g. Ninth Affirmative Defense. ....................................................................................16

h. Tenth Affirmative Defense. ....................................................................................17

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amber Resources Co. v. United States,* 68 Fed. Cl. 535 (2005) ......................1, 3, 8, 10, 15, 16, 17

*American Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455 (7th Cir. 1996)......................................13

*Capitol Resources Funding v. American Way, Inc.,* 860 F. Supp. 486 (N.D. Ill. 1994)..................4

*California Federal Bank v. United States*, 43 Fed. Cl. 445 (1999) ..............................................13

*DuPont de-Bie v. Vredenburgh*, 490 F.2d 1057 (4th Cir. 1974)......................................................3

*First Nationwide Bank v. United States,* 51 Fed. Cl. 762 (2002), *aff'd,* 431 F.3d 1342 (Fed. Cir. 2005) ..........................................................................................................................8

*Glendale Federal Bank, FSB v. United States,* 43 Fed. Cl. 390 (1999), *aff'd in part, vacated in part on other grounds,* 239 F.3d 1374 (Fed. Cir. 2001), *cert. denied,* 125 S. Ct. 1592 (2005) ...................................................................................................13

*Glendale Federal Bank, FSB v. United States,* 239 F.3d 1374 (Fed. Cir. 2001), *aff'd,* 378 F.3d 1308 (Fed. Cir. 2004), *cert. denied,* 125 S. Ct. 1592 (2005) .....................................8, 13

*Glendale Federal Bank, FSB v. United States,* 378 F.3d 1308 (Fed. Cir. 2004), *cert. denied,* 125 S. Ct. 1592 (2005) ..............................................................................8, 9

*Hansen Bancorp, Inc. v. United States*, 51 Fed. Cl. 679 (2002), *aff'd,* 66 Fed. Appx. 849 (2003) ..........................................................................................................................13

*Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297 (Fed Cir. 2004) ................................7, 8, 9

*Hometown Financial, Inc. v. United States*, 56 Fed. Cl. 477 (2003)............................................13

*Insurance Co. of the West v. United States,* 243 F.3d 1367 (Fed. Cir 2001)..................................3

*Landmark Land, Co. v. United States*, 46 Fed. Cl. 261 (2000)....................................................13

*Landmark Land, Co. v. F.D.I.C.*, 256 F.3d 1365 (Fed. Cir. 2001) ............................................7, 8

*LaSalle Talman Bank, FSB v. United States,* 317 F.3d 1363 (Fed Cir. 2003) ...............................9

*Marathon Oil Co. & Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 236 F.3d 1313 (Fed Cir. 2000) ..........................................................................2

*Sash Control, Inc. v. Talon, L.L.C.*, 185 F.3d 882, 1999 WL 110546 (Fed Cir. Jan. 27, 1999) ..........................................................................................................................13

*Troy v. Kenard Corp.*, No. 95 C 3380, 1997 WL 12789 (N.D. ILL. Jan. 10, 1997) ....................... 4

*Union Pipe & Machinery, Ltd. v. Luria Steel & Trading Corp.,* 225 F.2d 829 (6th Cir. 1955) ....................... 11

*WestFed Holdings, Inc. v. United* States, 52 Fed. Cl. 135 (2002) ....................... 13

**STATE CASES**

*Aetna Cas. & Sur. Co. v. McGullough*, 341 N.Y.S.2d 424, 41 A.D.2d 161 (1973) ....................... 4

*Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999) ....................... 3

*Granette Products Co. v. Arthur H. Neumann & Co.*, 205 N.W. *205* (Ind. Ct. App. 1991) ....................... 11

*Houser & Haines Mfg. Co. v. McKay*, 101 P. 894 (Wash. *1909*) ....................... 12

*Homer v. Guzulaitis*, 567 N.E.2d 153 (Ind. Ct. App. *1991*) ....................... 11

*Hunt County Oil Co. v. Scott*, 67 S.W. 451 (Tex. Civ. App. 1902) ....................... 12

*K & M Elec. Supply, Inc. v. Moduplex Corp.*, 686 So.2d 717 (Fla. Dist. Ct. App. 1997) ....................... 4

*Klingensmith v. Thurman*, 339 S.W.2d 300 (Mo. Ct. App. 1960) ....................... 4

*Miller-Piehl Equipment Co. v. Gibson Comm'n Co.*, 244 Iowa 103, 56 N.W.2d 25 (1952) ....................... 10

*N.R.C., Inc. v. Satis America Corp.,* No. 49782, 1986 WL *1064* (Ohio Ct. App. 1986) ....................... 11

*Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655 (Tex. 1979) ....................... 10, 11

*Trans-Resources, Inc. v. Nausch Hogan & Murray*, 746 N.Y.S.2d 701 (2002) ....................... 4

*Waldman Produce, Inc. v. Frigidaire Corp.*, 284 N.Y.S. 167 (*App*. Term, 2d Dep't 1935) ....................... 12

**FEDERAL STATUTES**

43 U.S.C. § 1337 ....................... 9

43 U.S.C. § 1340 ....................... 9

**FEDERAL RULES & REGULATIONS**

30 C.F.R. § 250 Subpart B ....................... 9

RCFC 8(e)(2) ..........13

Fed. R. Civil P. 8(e) ..........13

**MISCELLANEOUS**

Corbin on Contracts § 905 (Interim ed. 2004) ..........3

Restatement (Second) of Contracts § 349 (1981) ..........13

Restatement (Third) of Restitution and Unjust Enrichment § 37 (1) (c) (*Tentative* Draft No. 3 2004) ..........11

The Court's November 17, 2005 decision granted the Lessees' motion for summary judgment as to liability and partial summary judgment as to damages. The Court held that the Government materially breached the Lawsuit Leases, giving rise to a valid claim for rescission of the Leases and the recovery in restitution of the lease bonuses paid to the Government. *Amber Resources Co. v. United States*, 68 Fed. Cl. 535 (2005).[1]

Pursuant to the Court's instruction at the January 20, 2006 Status Conference, the Lessees now move for partial summary judgment as to two additional issues. First, the Lessees seek an order establishing that – contrary to the Government's contention – the amounts paid by the Lessees to their predecessors when the Lessees purchased interests in the Leases do not constitute a "benefit" to be offset against the Lessees' restitution claims, no matter how much a predecessor received for assignment of its leasehold interest.[2]

Second, the Lessees move for an order establishing that their claim for "sunk costs" – *i.e.,* the expenditures incurred by the Lessees or their predecessors in exploratory drilling and other activities – are recoverable in restitution.

The grant of summary judgment as to these two legal issues dictates that summary judgment also be granted dismissing Defendant's Seventh, Eighth, Eleventh and Twelfth Affirmative Defenses. Each of these defenses is inconsistent with, or mooted by, resolution of these two issues in favor of the Lessees.

---

[1] Four of the forty Lawsuit Leases are the subject of ongoing administrative proceedings, and were not made part of the summary judgment motion for the reasons set forth therein. As discussed in the parties' January 18, 2006 Joint Preliminary Status Report, further action in this lawsuit regarding these four leases should be deferred pending the resolution of those proceedings.

[2] As instructed by the Court at the January 20, 2006 Status Conference, for purposes of addressing the Government's legal theory, the parties have entered into Stipulated Facts (filed herewith) setting forth representative sales transactions involving the Lawsuit Leases.

Furthermore, Defendant's remaining Affirmative Defenses are all predicated on arguments rejected in the Court's November 17, 2005 decision. Summary judgment should be granted dismissing them as well.

Upon the grant of the summary judgments sought in this motion, discovery and trial will be limited to the quantification of the Lessees' sunk costs and related matters.[3]

## I. THE CONSIDERATION PAID TO ACQUIRE LEASE INTERESTS CANNOT BE OFFSET AGAINST THE LESSEES' RESTITUTION RECOVERY.

### A. Neither Logic Nor Case Law Supports the Government's Offset Theory.

After the Supreme Court held in *Mobil Oil* that the lessees were entitled to the return of the lease bonuses, the Government resisted paying, contending that it was entitled to an offset measured "by the asserted reduction in the market value of the leases due to the reduced price of oil and gas at the time of the government's breach." *Marathon Oil Co. and Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 236 F.3d 1313, 1315 (Fed. Cir. 2000). The Federal Circuit understandably rejected this fanciful theory out of hand. *Id.* Undaunted, the Government sought rehearing en banc, *id.*, which was of course denied but not until the Government had delayed the lessees' receipt of their non-interest bearing judgment for nearly a year.

At the January 20, 2006 status conference in the instant litigation, the Government raised another fanciful theory of offset that had not been raised before in this or, so far as the

[3] As discussed in the parties' January 18, 2006 Joint Preliminary Status Report, all plaintiffs except Nycal Offshore Development Corporation will waive their claim for expectation damages if they are granted their claim for sunk costs, in addition to the restitution of the lease bonuses that they have already been granted. The Court at the January 20, 2006 Status Conference indicated that discovery and trial of the expectation damages claim would be deferred until after the trial of the sunk costs claim.

Lessees are aware, any other case: that the Government should receive an offset against the Lessees' restitutionary damages award based on the consideration they paid for the assignment of their leasehold interests. The Government's position defies common sense and runs counter to both the fundamental principles of the law of assignment and this Court's November 17, 2005 decision.

As this Court has already held, "[t]he successor lessees before us . . . stand in the shoes of their predecessors in interest" and are therefore "entitled to recover in restitution the expenditures of their predecessors." 68 Fed. Cl. at 560. Nowhere in the Court's decision or in any known case is there any suggestion that an assignee's recovery is affected by the amount the assignee paid the assignor to acquire its assigned interests.

This is because an assignee holds "the same right held by the assignor, with its advantages and disadvantages." *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1374 (Fed. Cir. 2001); *see also DuPont de-Bie v. Vredenburgh*, 490 F.2d 1057, 1061 (4th Cir. 1974) ("The principle is well settled that a valid assignment operates to pass the whole right of the assignor, and that thereafter the assignee stands in the place of the assignor, possessing all rights or remedies available to the assignor."); *Corbin on Contracts* § 905 (Interim ed. 2004) ("The right of the assignee is the same as was that of his assignor . . . [H]e can enforce it by the same remedies.") Therefore, it is well settled that an assignee "stands in the shoes" of its assignor regardless of the consideration paid. "[A]n assignee may recover the full value of an assigned claim *regardless of the consideration paid for the assignment."* *Eli's, Inc. v. Lemen,* 256 Neb. 515, 536, 591 N.W.2d 543, 557 (1999) (emphasis added).

Accordingly, the courts have uniformly rejected defendants' attempts to limit or reduce their restitution damages based on the fact that the plaintiff assignee acquired its interests

for an amount less than the original purchase price. *See, e.g., Troy v. Kenard Corp.*, No. 95 C 3380, 1997 WL 12789, at *4 (N.D. Ill. Jan. 10, 1997) ("An assignee which purchases a debt at a discount is not limited to recovering the amount it paid; the assignee may recover the entire debt."); *Capitol Res. Funding v. Am. Way, Inc.*, 860 F. Supp. 486 (N.D. Ill. 1994) (assignee's recovery for breach should not be limited to the amount paid to assignor); *Klingensmith v. Thurman*, 339 S.W.2d 300 (Mo. Ct. App. 1960) (assignee could recover full amount owed by defendant even though it had purchased claim for fifty percent of the face value); *Aetna Cas. and Sur. Co. v. McGullough*, 341 N.Y.S.2d 424, 425, 41 A.D.2d. 161, 162 (1973) ("Nor does it matter that the consideration paid was less than the total of the indebtedness."); *K & M Elec. Supply, Inc. v. Moduplex Corp.*, 686 So.2d 717 (Fla. Dist. Ct. App. 1997) (recovery for breach of contract may not be limited to the amount the assignee had paid the assignor for an assignment of accounts receivable); *Trans-Resources, Inc. v. Nausch Hogan and Murray*, 746 N.Y.S.2d 701, 706, 298 A.D.2d 27, 34 (2002) ("[Defendant's] argument again confuses consideration for the assignment with recovery of the claim under the policy . . . there is no basis for reducing [plaintiffs'] recovery by the amount of the consideration it paid for the assignment.").

There accordingly can be no offset in circumstances in which one of the Lessees obtained its interest for less than the original lease bonus.[4] The same rule necessarily also applies in the situation in which the assignee paid more for the assignment than the original lease

---

[4] An example of such a transaction is presented in paragraphs 4 and 5 of the Stipulated Facts. This representative transaction involved the acquisition by Norcen Explorer, Inc. from Shell Western E&P Inc. of an undivided 3.5 percent interest in Leases OCS-P 0396, 0402, the west half of 0403, 0408, and the east half of 0414; and an undivided 1.75% percent interest in Leases OCS-P 0397 and the east half of 0403. Norcen paid $5 million to acquire these interests, for which the lease bonuses to the United States totaled $13.7 million. Norcen was subsequently acquired by Union Pacific Resources Company, which through merger and several name changes became Anadarko E&P Company LP, one of the Lessees in this lawsuit.

bonus.[5] Indeed, so clear is that result that the Lessees can find no case in which a defendant has ever suggested otherwise.

The Government apparently contends that under these circumstances the entire amount paid for the assignment should be offset. This would lead to a patently absurd result. The offset (the amount paid for the assignment) would by definition be greater than the restitution award (the original lease bonus). The lease bonus minus the offset would be a negative number. The assignee would thus be entitled to nothing, and the United States would retain the entire lease bonus, notwithstanding its material breach.

The whole purpose of restitution is to require the breaching party to return monies after it has materially breached the contract. The Government's unsupported theory defies that purpose, and if adopted by the Court would give the Government a license to breach any lease that was subsequently assigned for an amount at or above the bonus amount, without fear of restitution.

Insofar as the Government may be contending that the offset is measured not by the entire consideration paid but by the profit earned by the assignor on the sale, that approach is equally meritless. The suggestion that the assignor received a "benefit" when it sold its

---

[5] An example of such a transaction is presented in paragraphs 1 through 3 of the Stipulated Facts. This representative transaction involved the acquisition by Pennzoil Oil & Gas, Inc. from the original lessees of an undivided 30 percent interest in Leases OCS-P 0427 and 0432. The price paid was 50 percent more than the original lease bonuses. Pennzoil's undivided 30 percent interest in Leases OCS-P 0427 and 0432 were subsequently conveyed successively to Pennzoil Producing Company; Pennzoil Company; Pennzoil Exploration and Producing Company; and PennzEnergy Exploration and Production, L.L.C., the latter of which was renamed Devon Energy Production Company, L.P., one of the Lessees in this lawsuit.

At the Government's insistence, the parties also included in paragraphs 6 through 18 of the Stipulated Facts several transactions involving Lease OCS-P 0322. Those transactions add nothing to the analysis.

leasehold interests for more than it paid simply ignores the other side of the transaction. Even if an assignor "profited" from the transaction, it was at the assignee's expense. The price paid to the assignor, and the price paid by the assignee, are always the same and will always cancel each other out. There will never be a net benefit or a net loss. Given that there has been no net benefit as between the assignor and the assignee regardless of the consideration paid for the assignment, there is nothing to offset.

The fundamental flaw in an approach that measures the offset by the assignor's profit is underscored by the bizarre results it would promote. The *more* a Lessee paid its assignor to acquire its interests in the Leases, the greater the offsetting "benefit," and the *less* the recovery to which the Lessee would be entitled. The more the Lessee valued the lease, the less it would receive upon breach. If the Lessee paid $120 to acquire a lease whose original bonus was $100, there would be a $20 offset, and the restitution award would only be $80. If the Lessee acquired the lease for $200, twice the consideration originally paid by the assignor, the Lessee would be entitled to *zero* damages, because the "benefit" ($200 purchase price minus $100 lease bonus) would entirely offset the award of the original $100 lease bonus. Neither logic nor case law supports such an outcome.

The Government's position also fails for an additional, freestanding reason. Even if a payment from assignee to assignor could somehow be considered a "benefit," such a benefit could not be subject to an offset because it was not conferred *by the Government*. The Federal Circuit has made "clear that offset is only proper where the benefits at issue were received *directly* from the *breaching party*." *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1315-16 (Fed. Cir. 2004) (*citing Landmark Land Co. v. F.D.I.C.*, 256 F.3d 1365, 1374 (Fed. Cir. 2001) (emphasis added)). Here, consideration for the assignment was paid by the assignee, not

the Government. Whether the assignor made a profit or took a loss, the consideration for the assignment should not detract from a recovery because it "was not received from the government, nor pursuant to any requirement of the contract." *Id.*

For the foregoing reasons, the Government is not entitled to an offset based on the consideration paid for the assignment of lease interests.

**B. The Lessees Are Entitled to Summary Judgment Dismissing the Government's Seventh and Eighth Affirmative Defense.**

Because the Government's Seventh[6] and Eighth[7] Affirmative Defenses are predicated on the mistaken premise that an offset can be based on the consideration paid for the assignment of lease interests, the Lessees are entitled to summary judgment dismissing those defenses.

**II. THE LESSEES ARE ENTITLED TO RECOVER SUNK COSTS AS PART OF THEIR RESTITUTION CLAIM.**

**A. The Lessees' Sunk Costs May Be Recovered As Part Of Their Restitution Claim.**

In addition to the lease bonuses they have already been awarded, the Lessees seek to recover the expenditures made by them and their predecessors in exploratory and other

---

[6] The Government's Seventh Affirmative Defense states: "Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to rescission of the leases at issue, then the United States would be entitled to recoupment, in an amount to be determined following discovery and trial, of the full value of any and all benefits plaintiffs received during the course of contract performance."

[7] The Government's Eighth Affirmative Defense states: "Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to rescission of the leases at issue, and restitution of amounts paid to the United States by their predecessors-in-interest, then the United States would be entitled to recoupment, in an amount to be determined following discovery and trial, of the full value of any and all benefits that plaintiffs' predecessors-in-interest received during the course of contract performance."

activities on the Leases, in order to return them to the position they would have occupied had there never been a contract to breach.[8]

Such a recovery comports with the fundamental function of restitution. As the Federal Circuit has held: "The idea behind restitution is to restore – that is, to restore the non-breaching party to the position he would have been in had there never been a contract to breach." *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001), *aff'd,* 378 F.3d 1308 (Fed. Cir. 2004), *cert denied,* 125 S.Ct. 1592 (2005); *accord First Nationwide Bank v. United States*, 51 Fed. Cl. 762, 765 (2002) ("The real purpose of restitution is to put the parties back into their respective pre-contract circumstances."), *aff'd,* 431 F.3d 1342 (Fed. Cir. 2005).

The Federal Circuit has itself observed that "restitution may be measured by . . . '*the cost of the plaintiff's performance*, which includes both the value of the benefits provided to the defendant *and the plaintiff's other costs incurred as a result of its performance under the contract*.'" *Hansen Bancorp Inc. v. United States*, 367 F.3d 1297, 1314 (Fed. Cir. 2004) (first emphasis in original, second emphasis added), *quoting Landmark Land Co. v. F.D.I.C.*, 256 F.3d 1365, 1372 (Fed. Cir. 2001). "The principle of restitution damages is to return the costs incurred in performing the contract . . . ." *LaSalle Talman Bank, FSB v. United States*, 317 F.3d 1363, 1376 (Fed. Cir. 2003).

The Federal Circuit has also observed that such costs may be viewed as either restitution damages or reliance damages. *Hansen Bancorp*, 367 F.3d at 1315 n. 13; *LaSalle Talman Bank,* 317 F.3d at 1376 ("recovery of the expenditures of the non-breaching party in

---

[8] As this Court held in its November 17, 2005 decision, the Lessees stand in the shoes of their predecessors and may recover any amounts to which their predecessors would have been entitled. 68 Fed. Cl. at 560 ("So long as an assignor's recovery would not have constituted an impermissible windfall, its assignee will be entitled to the same recovery.")

performance of the contract . . . can be viewed as a form of reliance damages . . . [or] restitution or as a form of *quantum meruit*.").

In the *Winstar* cases, the Federal Circuit ultimately rejected the plaintiffs' restitution claims because they measured neither the out of pocket cost to the plaintiff nor the actual benefit to the Government. *See, e.g., LaSalle Talman Bank*, 317 F.3d at 1376-77; *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308, 1313 (Fed. Cir. 2004), *cert. denied*, 125 S.Ct. 1592 (2005). The instant case is far different, in that the Government unquestionably received the benefit of the up front cash lease bonus payments, and the sunk costs for which the Lessees now seek recovery constituted hard cash expenditures incidental to the acquisition of the leases themselves.

Indeed, the statutory, regulatory and contractual scheme not only explicitly contemplated that activities such as exploratory drilling will accompany the grant of the leases, *see* 43 U.S.C. § 1340; 30 C.F.R. § 250 Subpart B; Lease, §§ 2, 9,[9] but in fact required such activities to be pursued with "due diligence." 43 U.S.C. §§ 1337(b)(4), 1337(d). This required due diligence was for the Government's benefit: The majority of revenues that the United States receives from OCS leases is not in the bonuses paid for the leases, but instead is in the royalties that the United States receives on production.[10] Every dollar that the Lessees spent in this case,

---

[9] Representative Lawsuit Leases are Exhibits 3 and 4 to the Declaration of Ronald G. Heck, filed in support of Plaintiff's Motion for Summary Judgment as to Liability and Partial Summary Judgment as to Damages (August 31, 2004).

[10] "For the period 1954 through 2004, the Federal Government received almost $64 billion in bonuses, about $3 billion in rentals, and about $89 billion in royalties from oil and natural gas activities on the OCS. Additionally, since 2000, some of the royalty on OCS oil, valued at about $3.2 billion, has been taken in-kind for delivery to the Strategic Petroleum Reserve (SPR)." Minerals Management Service, Leasing Oil And Natural Gas Resources, Outer Continental Shelf, 37-38, *available at* http://www.mms.gov/ld/PDFs/GreenBook-LeasingDocument.pdf.

in satisfaction of the due diligence requirement of the leases, was for the purpose of finding and producing oil or gas from which both they and the United States would profit. As the Court has observed, "exploratory . . . activities were part of the inherent nature of [the Lessees'] transactions with the government." 68 Fed. Cl. at 558 n. 43 (quotation omitted).

Legal guidance confirms the propriety of awarding costs of performance as part of a restitutionary remedy under these circumstances. "A purchaser who has rightfully rescinded . . . a contract may demand the complete restoration of the status quo *which includes the return of any expenditure made by him which was contemplated by the contract*." *Miller-Piehl Equipment Co. v. Gibson Comm'n Co.*, 244 Iowa 103, 110, 56 N.W.2d 25, 29 (1952) (emphasis added). In that case, the court ruled that a counterclaimant entitled to rescind a contract for the purchase of a grain storage bin could recover both the amount it had paid the counterclaim defendant for the bin and the costs it had incurred in leveling the ground and constructing a concrete slab necessary for the bin's installation. *Id.*

Similarly, in *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 659-60 (Tex. 1979), the court found that "[plaintiffs] established their right to judgment rescinding their contract [and] the measure of damage is the return of the consideration paid, *together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract*." (emphasis added). The damages awarded included both the purchase price paid by the plaintiff to the defendant to purchase the lake front property and the plaintiff's expenditures for property taxes. *Id.*

Likewise, in *Homer v. Guzulaitis*, 567 N.E. 2d 153, 158 (Ind. Ct. App. 1991), the court held that the counterclaim defendant had breached its representations regarding a resort property purchased by the counterclaimants and operated by them for some months. Having

"chose[n] . . . to seek rescission of the contract . . . the victim is to be placed in the status quo ante and receive a return of out of pocket damages: i.e., restitution." *Id.* The court held that the counterclaimants were entitled to recover not only the down payment and monthly payments they had made to the counterclaim defendant, but also their "expenses for operating the resort." *Id.* *See also, e.g., Union Pipe & Machinery, Ltd. v. Luria Steel & Trading Corp.*, 225 F.2d 829, 835 (6th Cir. 1955) ("If [plaintiff] had chosen to rescind the contract of sale it would have been entitled to recover not only the price paid for the goods, but also its expenditures for freight, duty and demurrage, in order to be restored to the status quo"); *N.R.C., Inc. v. Satis America Corp.*, No. 49782, 1986 WL 1064, at *8 (Ohio Ct. App. 1986) (plaintiff was entitled "to recover out-of-pocket expenses as restitution" including expenses "fixed prior to [defendant's] breach of contract" such as plaintiff's purchase of special tooling to carry out the contract); *see generally* Restatement (Third) of Restitution and Unjust Enrichment § 37(1)(c) (Tentative Draft No. 3 2004) ("a decree of rescission may require the defendant . . . to repay amounts received on account of the contract price [and] to pay incidental damages").

These principles of rescission and restitution are well established in case law stretching back over the last hundred years. *E.g., Granette Products Co. v. Arthur H. Neumann & Co.*, 205 N.W. 205 (Iowa 1925) ("[W]here the contract contemplates the furnishing of material for a particular purpose, as the erection of a structure, and the purchaser expends money in attempting to so use it, and later rescinds the contract because of the failure of the material to comply with the contract, he is entitled to be put in status quo, and this includes the recovery of, not only the money he has paid under the contract, but the reasonable expense he was put to in attempting to use the material for the contemplated purpose."); *Waldman Produce, Inc. v. Frigidaire Corp.*, 284 N.Y.S. 167 (App. Term, 2d Dep't 1935) (plaintiff seeking rescission and

restitution awarded both the amount paid the defendant for a defective refrigerator and the costs of the produce destroyed as a result of those defects); *Houser & Haines Mfg. Co. v. McKay*, 101 P. 894, 895-896 (Wash. 1909) (expenses such as freight charges are to be returned to the rescinding buyer); *Hunt County Oil Co. v. Scott*, 67 S.W. 451, 452 (Tex. Civ. App. 1902) ("Where the right of rescission is sought and established, the authorities seem to assume that the measure of damages, as a general rule, is the return of the whole consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract.").

All these cases apply here *a fortiori,* where the lessees' expenditures were required by the due diligence requirement in the leases, which the Government imposed to facilitate the royalties that it would receive from production.

For all these reasons, the Lessees may recover the sunk costs as part of their restitution claim.

**B. The Lessees Are Entitled to Summary Judgment Dismissing Defendant's Eleventh Affirmative Defense.**

A ruling that the Lessees' sunk cost claim sounds in restitution also dictates dismissal of the Eleventh Affirmative Defense. Defendant asserts in that defense: "Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to rescission of the leases at issue, then the election of remedies doctrine would preclude plaintiffs from recovering alleged amounts expended in exploration and development of the leases in addition to restitution."

Defendant's Eleventh Defense is, under any circumstance, wrong as a matter of law. A plaintiff is entitled to plead and prove alternative theories of recovery,[11] and recover under more than one damage theory as long as they are not overlapping. For example, a plaintiff can recover both restitution and non-overlapping reliance damages.[12] If the Lessees' sunk costs claim did not sound in restitution, it would sound in reliance damages.[13]

But more fundamentally, the Lessees have demonstrated in Section II(A) *supra* that their sunk costs claim sounds in restitution, as did their claim for the lease bonuses. The Lessees thus are entitled to recover their damages as a single restitution "remedy." The Eleventh Defense is accordingly moot.

### C. The Lessees Are Entitled to Summary Judgment Dismissing Defendant's Twelfth Affirmative Defense.

The Government's Twelfth Affirmative Defense states:

---

[11] RCFC 8(e)(2) provides that "[a] party may . . . state as many claims or defenses as the party has regardless of consistency." *See Sash Controls, Inc. v. Talon, L.L.C.*, 1999 WL 110546, at *3 (Fed. Cir. Jan. 27, 1999) ("We have long recognized that an advocate may take or plead inconsistent positions in a suit. See Fed. R. Civil P. 8(e) ('A party may also state as many separate claims or defenses as the party has regardless of consistency . . .')."); *American Int'l. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1460 (7th Cir. 1996) ("Fed.R.Civ.P. 8(e)(2) abolished the doctrine of election of remedies in federal court").

[12] *E.g., Hansen Bancorp, Inc. v. United States*, 51 Fed. Cl. 679, 681 n.2 (2002) ("[P]laintiffs may recover both restitution and any 'non-overlapping' reliance damages."), *aff'd,* 66 Fed. Appx. 849 (2003); *Glendale Fed. Bank, FSB v. United States*, 43 Fed. Cl. 390, 408 (1999) ("[p]laintiff . . . is entitled to recover . . . non-overlapping reliance damages, in addition to any restitution recovery"), *aff'd in part, vacated in part on other grounds*, 239 F.3d 1374 (Fed. Cir. 2001), *cert denied*, 125 S.Ct. 1592; *California Fed. Bank v. United States*, 43 Fed. Cl. 445, 450 (1999) (same); *Hometown Financial, Inc. v. United States*, 56 Fed. Cl. 477 (2003) (allowing both restitution and reliance claims to proceed); *WestFed Holdings, Inc. v. United States*, 52 Fed. Cl. 135 (2002) (same); *Landmark Land Co. v. United States*, 46 Fed. Cl. 261 (2000) (granting restitution while considering claim for non-overlapping reliance damages); George E. Palmer, *Law Of Restitution* § 4.8 (1978) (a plaintiff can recover both restitution and reliance damages so long as there is no duplication).

[13] Reliance damages entitle a plaintiff to recover "expenditures made in preparation for performance or in performance" under the breached contract. Restatement (Second) of Contracts § 349 (1981).

> Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to alleged amounts expended in exploration and development of the leases as reliance damages, any recovery of reliance damages may not exceed the amount of plaintiffs' contractual expectancy.

Proof of "plaintiffs' contractual expectancy" – *i.e.*, the profits that would have been earned had production been allowed to go forward – would require extensive expert and fact testimony regarding the geological and geophysical evidence establishing the size of the resources; the percentages of those resources that could be recovered; development scenarios and timetables; the likely costs of production; price projections for the oil and gas produced; discount rates; and the like.

However, as demonstrated in Section II (A) *supra*, the Lessees are entitled to recover their sunk costs as part of their claim for restitutionary damages. The Twelfth Defense is therefore moot, regardless of whether it accurately describes the rule of law applicable to a claim for reliance damages.

## III. THE LESSEES ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING THE GOVERNMENT'S REMAINING AFFIRMATIVE DEFENSES.

The Government's remaining Affirmative Defenses assert defenses that the Court has already rejected in its November 17, 2005 decision, and the Lessees are entitled to summary judgment dismissing all of them.

**a. First Affirmative Defense.** Defendant's First Affirmative Defense states: "The First Amended Complaint fails to state a claim upon which relief may be granted." However, in its November 17, 2005 decision, this Court granted the Lessees summary judgment as to liability and partial summary judgment of their claim for restitution of the lease bonuses. 68 Fed. Cl. at 560. Because the Court has thus held that the Lessees have stated a claim upon

which relief may be granted, summary judgment should be granted dismissing the First Affirmative Defense.

**b. Second Affirmative Defense.** Defendant's Second Affirmative Defense states: "The claims asserted in the First Amended Complaint are barred by reason of waiver." However, the Court rejected the Government's waiver arguments in its November 17, 2005 decision, holding that the Lessees had not waived their claims. 68 Fed. Cl. at 558-59. Because the Government's Second Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**c. Third Affirmative Defense**. Defendant's Third Affirmative Defense states: "The claims asserted in the First Amended Complaint are barred by the sovereign acts doctrine." However, the Court rejected the Government's sovereign acts doctrine defense in its November 17, 2005 decision. 68 Fed. Cl. at 554-58. Because the Government's Third Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**d. Fourth Affirmative Defense.** Defendant's Fourth Affirmative Defense states: "Plaintiffs are not entitled to judgment because they assumed the risk of any alleged losses." However, the Court has already ruled that the Government committed a total breach giving rise to a valid claim for rescission and restitution, and in so ruling held that it was the Government that had assumed the risk. *See* 68 Fed. Cl. at 556 (Section 1 "embodies the government's promise to the lessees that it would bear the risk of changes made to the governing law after the leases were formed."); *id.* at 557 ("Section 1 of the leases . . . shifts the risk of future statutory change to the government"). Because the Government's Fourth Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**e. Fifth Affirmative Defense.** The Government's Fifth Affirmative Defense states: "Even assuming, for argument's sake, the existence of a breach, the alleged breach would not be a material breach entitling plaintiffs to restitution because plaintiffs still would be in the same position but for the alleged breach." However, the Court has already ruled that the breach was material, and that this material breach entitles the Lessees to restitution. 68 Fed. Cl. at 560. Because the Government's Fifth Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**f. Sixth Affirmative Defense.** The Government's Sixth Affirmative Defense states: "Even assuming, for argument's sake, the existence of a partial breach of contract, plaintiffs are entitled to no damages because plaintiffs still would be in the same position but for the alleged breach." However, the Court has already ruled that the breach was material, not partial, and that this material breach entitles the Lessees to restitution damages. 68 Fed. Cl. at 560. Because the Government's Sixth Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**g. Ninth Affirmative Defense.** The Government's Ninth Affirmative Defense states: "Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to rescission of the leases at issue, then the United States would be entitled to recoupment, in an amount to be determined following discovery and trial, of the full value of any and all diminution in the value of the leases caused by plaintiffs' actions during the course of contract performance." However, as the Court stated at the January 20, 2006 Status Conference, the Ninth Affirmative Defense has already been rejected by the Court's rulings that any purported depreciation in market value, or purported diminution in value resulting from the exploration of the Leases, is irrelevant as a matter of law. 68 Fed. Cl. at 558 n. 43. Because the

Government's Ninth Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

**h. Tenth Affirmative Defense.** The Government's Tenth Affirmative Defense states: "Even assuming, for argument's sake, the existence of a material breach entitling plaintiffs to rescission of the leases at issue, and restitution of amounts paid to the United States by their predecessors-in-interest, then the United States would be entitled to recoupment, in an amount to be determined following discovery and trial, of the full value of any and all diminution in the value of the leases caused by the actions of plaintiffs' predecessors-in-interest during the course of contract performance." The Tenth Affirmative Defense is thus identical to the Ninth Affirmative Defense, except that it addresses activities by the Lessees' predecessors. As the Court stated at the January 20, 2006 Status Conference, just like the Ninth Affirmative Defense, the Tenth Affirmative Defense has already been rejected, by the Court's ruling quoted *supra*. Because the Government's Tenth Affirmative Defense has already been resolved against it, summary judgment should be granted dismissing this defense.

## CONCLUSION

For the foregoing reasons, the Court should grant the Lessees' motion for partial summary judgment, and rule that: (1) there are no legally cognizable "benefits" to be offset against the Lessees' restitution award; (2) the Lessees are entitled to recover their sunk costs as restitutionary damages; and (3) all of Defendant's affirmative defenses are dismissed with prejudice.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove
E. Edward Bruce
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
Attorneys for All Plaintiffs in Nos. 02-30C and 04-1822C

March 13, 2006