IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al.,<br><br>Plaintiffs,<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(1) of the Court's rules, defendant, the United States, respectfully requests the Court to enter summary judgment in its favor based upon the following proposed uncontroverted facts:

1. In February 1968, the Government awarded Lease OCS-P 0210, one of the Outer Continental Shelf leases at issue in this case. Am. Compl. (No. 02-30C) (May 13, 2003), ¶ 34.

2. Between June 1979 and October 1984, the Government awarded the 39 additional Outer Continental Shelf leases at issue. *Id.* ¶¶ 35-39.

3. With the exception of Lease OCS-P 0210, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.*, was in effect at the time the leases that are the subject of this lawsuit were issued by the Minerals Management Service ("MMS").

4. Each of the leases is located on the Outer Continental Shelf offshore California. *Id.* ¶ 3.

5. Outer Continental Shelf leases are valid only for a finite initial time period. The initial time period, called the "primary term," for each of the leases is five years. *See* Am. Compl. Attachment B, § 3; *id.* ¶ 40.

6. The lease can extend beyond the primary term if oil or gas is being produced from the lease, or approved drilling or well reworking operations are being conducted (the "secondary term"). 30 C.F.R. § 250.113(a) (1999) (re-codified at 30 C.F.R. § 250.180 (2000); Am. Compl. Attachment B, § 3.

7. The term of the lease can also be extended beyond the primary term by "suspensions" (the "extended term"). See 43 U.S.C. § 1334(a)(1); *see also* 30 C.F.R. § 250.110 (1999) (re-codified at 30 C.F.R. § 250.168-177 (2000)).

8. By statute and regulation, the Government may "suspend" a lease, either at its own direction or at the request of a lessee. 43 U.S.C. § 1334(a)(1); *see also* 30 C.F.R. § 250.110 (1999) (re-codified at 30 C.F.R. § 250.168-177 (2000). *Id.*

9. A suspension extends the lease's term by a period equal to the period of the suspension. Am. Compl. ¶¶ 24-25.

10. The lessees (some of whom later sold their interests to certain plaintiffs for fair market value) explored the leases, but have not yet commenced activities that would put the leases into the secondary term. Am. Compl. ¶¶ 44-45.

11. Plaintiffs' leases can exist only by reason of suspensions, the issuance of which is at the discretion of the Government, in accordance with its regulations. *See id.* ¶ 45; *see also* 30 C.F.R. § 250.110 (1998).

12. The leases have been under suspension for much of the past 20 to 30 years, both as a result of suspensions requested by the lessees and as a result of suspensions directed by the Government.

13. On November 12, 1999, the Government granted suspensions requested by unit operators for 36 of the 40 leases. Am. Compl. ¶ 49.

14. The suspensions ranged in length from 19 to 45 months. *Id.*

15. The Government severed the remaining four leases from the units of which they previously had been part based upon geological information submitted by the lessees. *Id.* ¶ 48.

16. Because there was no pending suspension request for the severed leases, the four severed leases expired by their terms. Peter Tweedt Decl. (No. 02-30C) ¶ 6.

17. Plaintiffs have challenged the severing and consequent expiration of these leases "by administrative appeal to the Interior Board of Land Appeals." Am. Compl. ¶ 48.

18. On November 15, 1999, the state of California filed suit against the Secretary of the Interior in the United States District Court for the Northern District of California. Am. Compl. ¶ 51; *California v. Norton*, 150 F. Supp. 2d 1046 (N.D. Cal. 2001).

19. Among other things, California contended that the Government lacked authority to grant the November 12 suspensions because the Government had not complied with 16 U.S.C. § 1456(c)(1), the provision of the Coastal Zone Management Act ("CZMA") requiring a Government consistency certification for its own activities affecting the coastal zone. 150 F. Supp. 2d at 1051-55.

20. California also contended that the Government had failed to comply with NEPA because it had not provided necessary explanations or support to avoid NEPA's requirement for the preparation of an environmental assessment or environmental impact statement prior to granting suspensions. *Id.* at 1055-57.

21. Plaintiffs, through the unit operators, intervened as defendants in *Norton*, denied California's contention that CZMA section 1456(c)(1) applies to the mere suspension of leases, and opposed California's NEPA contentions as well. *Id.* at 1047-53; Am. Compl. ¶ 51.

22. On June 20, 2001, the district court ruled in California's favor upon both California's CZMA claims and its NEPA claims.

23. The district court ruled that NEPA required the Government to provide a reasoned explanation for not performing an environmental assessment or environmental impact statement before suspending the leases. *Id.* at 1057.

24. The district court ordered the Government to set aside its November 12, 1999 approvals of plaintiffs' most recent suspension requests, and to direct suspension of the leases for

a time sufficient for the Government to provide California with a consistency determination. *Norton*, 150 F. Supp. 2d at 1057-58.

25. The court also held that "before again granting these lease suspensions" the Government should provide the required NEPA explanations. *Norton*, 150 F. Supp. 2d at 1057-58.

26. On July 2, 2001, pursuant to the district court's order, the Government set aside its previous approval of plaintiffs' requested suspensions, and directed suspensions of the leases in accordance with its regulations until further compliance with the district court's order. Am. Compl. ¶ 53.

27. In August 2001, the Government appealed the district court's ruling to the Ninth Circuit.

28. While the appeal was pending, the Government did not provide California with the consistency determination, nor did it issue the NEPA explanations found to be necessary by the district court.

29. In 2002, the United States Court of Appeals for the Ninth Circuit held, among other things, that the Government had failed to comply with NEPA because it had not adequately explained why the extraordinary circumstances exceptions do not apply to the use of the categorical exclusion cited with respect to the lease suspensions granted. *California v. Norton*, 311 F.3d 1162 (9th Cir. 2002).

30. Plaintiffs submitted updated lease suspension applications to the Department of the Interior following issuance of a February 26, 2004 order of the district court in *California v. Norton*. Ex. 93 to Heck Decl. (No. 02-30C) at 2.

31. In the spring of 2004, the Minerals Management Service ("MMS") received from plaintiffs a total of ten applications for suspensions entailing nine units and one stand-alone lease. *Id.*

32. Upon remand, on June 28, 2004, the district court entered an order adopting the Government's proposed timetable for completion of the analyses required by that court's judgment. Ex. 94 to Heck Decl. (Order Adopting Federal Defendants' Proposed Timetable, *California v. Norton*, No. C 99-4694 CW, (N.D. Cal. Jun. 28, 2004)).

33. According to this timetable, the ordered NEPA analyses were to be completed by February 16, 2005, while the ordered CZMA analyses were to be completed by April 7, 2005, and California had until July 7, 2005 to object. Ex. 93 to Heck Decl. (Timeline for NEPA Analyses, CZMA Consistency Determinations, and Environmental Information Document (EID) in the *California v. Norton* Decision).

34. In August 2005, the United States District Court for the District of California ruled that MMS was required under NEPA to “consider the environmental impact of future exploration and development activity in preparing environmental analyses in conjunction with the thirty-seven suspensions in this case.” *League for Coastal Protection v. Norton*, No. C 05-00991 CW, 2005 WL 2176910, at *5 (N.D. Cal. Aug. 31, 2005).

35. In its August 2005 decision, the district court in *League for Coastal Protection* remanded the NEPA analysis MMS to conduct further analysis. *League for Coastal Protection*, 2005 WL 2176910, at *5.

36. The Government's appeal to the Ninth Circuit in *League of Coastal Protection* is currently stayed pending resolution of this litigation. Ex. B (Order dated Feb. 9, 2006, *League for Coastal Protection v. Norton*, No. 05-17098 (9th Cir.)).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April 13, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 13th day of April, 2006, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Allison Kidd-Miller