# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,* v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,* v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ***************************************** | |

**MOTION TO QUASH DEFENDANT'S SUBPOENA ON ARGUELLO, INC.**

Plaintiffs and Arguello, Inc. hereby move to quash the subpoena served by email on May 16, 2006, on the Custodian of Records for Arguello, Inc. (Exhibit 1 to the Declaration of Steven Rosenbaum, submitted herewith). The subpoena directs Arguello, a wholly-owned subsidiary of plaintiff Plains Exploration & Production Company, to produce 22 categories of documents purportedly related to the Government's pending motion for reconsideration with respect to Lease OCS-P 0452. But as explained below, this document request is completely inconsistent with the limitations on discovery painstakingly negotiated by the parties and memorialized in the April 13, 2006, unopposed motion for a scheduling order, which was entered by the Court on April 20, 2006. The subpoena is also unduly burdensome and intrusive.[1]

**BACKGROUND**

The Government's motion for reconsideration asserts that one or more wells drilled on the east half of non-lawsuit Lease OCS-P 0451 may be draining some of the oil underlying adjacent lawsuit Lease OCS-P 0452. During the March 30, 2006 hearing on that motion, this Court expressed considerable doubt that the Government would be able to establish that the quantity of any alleged drainage would be legally significant. *See* March 30, 2006 hearing transcript (Rosenbaum Decl., Exh. 2) at p. 29:13-18 ("I'm inclined to think that if at the end of the day we end up with numbers that look like MMS's estimates, . . .that might not be

---

1 Movants have in good faith conferred to resolve the matters in dispute in this motion but such efforts were not successful. While Movants could simply have filed objections to the subpoena and placed the burden on the Government to file a motion to compel, in order to expedite resolution of this matter Movants have filed both objections and the instant motion to quash, and have done so within 14 days of the email service of the subpoena, *see* RCFC 45(c)(2)(B) (objections to subpoena to be served within 14 days of service).

enough to make any difference."); *id.* at p. 36:4-6 ("ultimately I suspect something like MMS's numbers are not going to be enough, but that's not for me to predict").

Therefore, desiring to avoid having this issue impede the progression of the case in chief, the Court instructed the Parties to negotiate a scheduling order for "some limited discovery[.]" *Id.* at p. 30:8-17; *see also id.* at p. 29:9-10 ("I'm in some ways reluctant to turn you folks loose" to engage in discovery). The Court indicated that discovery is to be focused and should not interfere with the progression of the case, emphasizing, "I don't want it to slow down the rest of the lawsuit[.]" *Id.* at p. 29:9-11.

In response to the Court's instructions, the Parties negotiated with great specificity the scope and timeframe of allowable discovery, as memorialized in the unopposed proposed scheduling order filed on April 13, 2006 and adopted by the Court on April 20, 2006. *See* Rosenbaum Decl., Exh. 3 & 4. The scheduling order was the result of two weeks of careful negotiations, which included the exchange of no less than six drafts and several emails. *See id.*, Exh. 5 to 13.

The scheduling order provides:

> 1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:
>
> a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents reflecting, in whole or in part, any arrangements, understandings, or agreements between or among Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 through drilling upon Lease OCS-P 0451.
>
> b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon

> which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.
>
> c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any MMS reserve estimates for the Jalama Field, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

*See* Rosenbaum Decl., Exh. 3 at p. 2, ¶¶ 1a to c. The scheduling order also allows the Parties to conduct depositions relating to those topics. *See id.* at p. 2, ¶ 1d.

During the course of negotiations, the Government proposed a provision that would have allowed for additional discovery on the drainage issue. The proposed provision, which would have been inserted in parentheses at the end of Paragraph 1, stated: "the United States reserves its right to propound relevant discovery upon plaintiffs and third parties in a time-frame that is consonant with the following schedule)[.]" *See* Attachment to Patricia McCarthy's April 11, 2006 email sent to Jeffrey Antonson and Steve Rosenbaum at 7:07 p.m. (Rosenbaum Decl., Exh. 9) at p. 2, ¶ 1. Plaintiffs objected to the provision, stating:

> We cannot agree to the additional and substantial changes you propose to make. The proposed change to paragraph 1 is inconsistent with the purpose of the schedule, which is to identify the scope and timing of the discovery on the issue of purported drainage from Lease 0452.

*See* Steve Rosenbaum's April 12, 2006 email to Patricia McCarthy and Jeffrey Antonson (Rosenbaum Decl., Exh. 10) at ¶ 2. The Government acceded to Plaintiffs' view, and the proposed provision was removed from the scheduling order.

Pursuant to the paragraph 1(b) of the Scheduling Order, Plaintiffs have produced 7,767 pages of documents to the Government. These documents include the worksheets and calculations of their expert Dr. Mannon, as well as the documents that he relied on in forming the

opinions expressed in his February 17, 2006 declaration regarding the drainage issue. These materials included substantial geological and engineering information concerning Leases OCS-P 0451 and 0452, including well logs, engineering reports, well test data, geologic maps, core analysis reports, fluid analyses, and pressure data. (Rosenbaum Decl., ¶ 15). This information constitutes the foundation of any geological or geophysical analyses of the leases and is precisely the information that any reasonable expert would utilize in formulating an opinion on the potential for future drainage. Indeed, the Government has never contended that Plaintiffs' production pursuant to paragraph 1(b) was insufficient or inadequate.

The Government now attempts to violate the scheduling order by subpoenaing Arguello for additional materials that the Parties expressly agreed to exclude from their agreement.

## ARGUMENT

The Government's subpoena should be quashed for three reasons. *First*, the subpoena improperly attempts to circumvent the scope of discovery allowed by the Parties' joint scheduling order. The scheduling order was the result of careful negotiations between the Parties, who specifically considered and agreed *not* to include a provision that would have allowed for discovery of the materials that the Government now seeks. *Second*, the subpoena is unduly burdensome, intrusive, and contravenes the Court's instruction that discovery on the drainage issue should be focused and "limited."

### I. THE SUBPOENA IMPROPERLY SEEKS MATERIALS THAT ARE BEYOND THE SCOPE OF DISCOVERY ALLOWED BY THE PARTIES' JOINT SCHEDULING ORDER

The Government's subpoena should be quashed because it seeks materials far beyond the scope of discovery that the Parties carefully negotiated and agreed to in their joint scheduling order. The scheduling order reflects the Parties' agreement regarding all discovery

that is to be allowed concerning the drainage issue. Bearing in mind the Court's instruction that discovery should be focused and "limited," and should not impede the progress of the case, the Parties set forth with great specificity the topics and timing of permissible discovery. *See* Rosenbaum Decl., Exh. 3. The Government now improperly seeks to obtain by subpoena materials that are outside the scope of discovery to which the Parties agreed.

Notably, the Parties considered and agreed *not* to include a provision that would have allowed for additional discovery beyond that which is expressly permitted in the scheduling order. As described above, the Government initially sought to include a provision that would have allowed for additional discovery on the drainage issue. *See* Rosenbaum Decl, Exh. 9. However, the Government acceded to the Plaintiffs' view that no such additional discovery was appropriate or necessary given the materials that the Parties had agreed to exchange. *See* Rosenbaum Decl., Exh. 10 to 13. The Parties, therefore, specifically decided not to allow for any discovery beyond what the scheduling order expressly allows. Consequently, there can be no doubt that the scheduling order forecloses any additional discovery, including discovery of the materials that the Government seeks through its subpoena of Arguello.

## II. THE SUBPOENA IS UNDULY BURDENSOME AND INTRUSIVE, AND CONTRAVENES THE COURT'S INSTRUCTION TO CONDUCT "LIMITED DISCOVERY"

The subpoena should also be quashed because it is unnecessarily burdensome and intrusive, and defies the Court's directive that discovery should be focused and "limited." The subpoena seeks 22 different broad categories of documents.

The requests are also unnecessarily intrusive, seeking information that is not remotely relevant to the disposition of the Motion for Reconsideration. For example, the Government seeks all documents relating to the "cost" and "profitability of Wells which have been or might be drilled" on Lease OCS-P 452 and the eastern half of Lease OCS-P 451,

*see* Rosenbaum Decl., Exh. 1 at p. 2, ¶ 1e; all "summary documents reflecting the price received for the oil and gas produced by the Wells[,]" *see id.* at p. 4, ¶ 8; and "Summary data concerning monthly operating costs for the Wells[,]" *see id.* at p. 4, ¶ 9.

Not only does the Government's requests impose a substantial and unwarranted burden on plaintiff Plains, they contravene the Court's instruction to conduct limited, focused discovery that will not interfere with the progress of the case. During the March 20 hearing, the Government attempted to allay the Court's concern that discovery would be complicated and require substantial time by stating, "[W]e don't think it would be terribly complicated." *See* Rosenbaum Decl., Exh. 2 at p. 27:11-15. The Government explained that it would need well logs, well data, and "the support for Dr. Mannon's analysis[,]" "either the data supporting his conclusions or the methodology." *Id.* at pp. 27:16; 28:15-16.

The scheduling order provided for Plaintiffs to produce precisely the information that the Government identified during the hearing, and Plaintiffs have, in fact, produced all such documents. The subpoena should thus be quashed because it is unnecessarily burdensome and intrusive, and contravenes the Court's instruction that the Parties are to engage in limited discovery.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to quash the challenged subpoena.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove
E. Edward Bruce
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
Attorneys for All Plaintiffs in Nos. 02-30C and 04-1822C and for Arguello, Inc.

May 27, 2006

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs*, v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant*. | |
| **************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs*, v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant*. | |
| **************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff*, | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant*. | (Judge Bruggink) |
| **************************************** | |

**DECLARATION OF STEVEN J. ROSENBAUM**

DC: 2157124-1

Steven J. Rosenbaum declares and states as follows:

1. I am a member in good standing of the Bar of the Court of Federal Claims, and am counsel of record for all plaintiffs in the above captioned action except Nycal Offshore Development Corp, and for Arguello, Inc. I provide this declaration in support of Plaintiffs' and Arguello, Inc.'s Motion to Quash Defendant's subpoena of Arguello, Inc., a wholly-owned subsidiary of plaintiff Plains Exploration & Production Company.

2. Attached hereto as Exhibit 1 is a true and correct copy of the subpoena that Defendant served on me by electronic mail on May 16, 2006.

3. Attached hereto as Exhibit 2 is a true and correct copy of the transcript of this Court's March 30, 2006 hearing on Defendant's Motion for Reconsideration.

4. Attached hereto as Exhibit 3 is a true and correct copy of the unopposed motion for entry of a scheduling order, filed April 13, 2006.

5. Attached hereto as Exhibit 4 is a true and correct copy of the Court's April 20, 2006 Order adopting this unopposed scheduling order.

6. Attached hereto as Exhibit 5 is a true and correct copy of a March 31, 2006 email that Defendant's counsel Patricia McCarthy sent to me, Nycal counsel Jeffrey Antonson, and Defendant's counsel Allison Kidd-Miller, Gregg Schwind, and Stephen Tosini regarding the proposed scheduling order, as well as the draft scheduling order that she attached thereto.

7. Attached hereto as Exhibit 6 is a true and correct copy of an April 4, 2006 email I sent to Ms. McCarthy, Mr. Antonson, Ms. Kidd-Miller, Mr. Schwind, and Mr. Tosini regarding the proposed scheduling order.

8. Attached hereto as Exhibit 7 is a true and correct copy of an April 6, 2006 email I sent to Ms. McCarthy, Mr. Antonson, Ms. Kidd-Miller, Mr. Schwind, and Mr. Tosini regarding the proposed scheduling order, as well as the revised draft scheduling order that I attached thereto.

9. Attached hereto as Exhibit 8 is a true and correct copy of an April 11, 2006 email that Ms. McCarthy sent to me, Mr. Antonson, Ms. Kidd-Miller, Mr. Schwind, and Mr. Tosini at or about 1:57 p.m., regarding the proposed scheduling order, as well as the revised draft scheduling order that she attached thereto.

10. Attached hereto as Exhibit 9 is a true and correct copy of an April 11, 2006 email that Ms. McCarthy sent to me, Mr. Antonson, Ms. Kidd-Miller, Mr. Schwind, and Mr. Tosini at or about 7:07 p.m., regarding the proposed scheduling order, as well as the further revised draft scheduling order that she attached thereto.

11. Attached hereto as Exhibit 10 is a true and correct copy of an April 12, 2006 email I sent to Ms. McCarthy, Mr. Antonson, Ms. Kidd-Miller, Mr. Schwind, and Mr. Tosini regarding the proposed scheduling order, as well as the revised draft scheduling order that I attached thereto.

12. Attached hereto as Exhibit 11 is a true and correct copy of an April 13, 2006 email I sent to Mr. Schwind at or about 8:27 a.m., responding to his April 12, 2006 comments regarding the proposed scheduling order.

13. Attached hereto as Exhibit 12 is a true and correct copy of an April 13, 2006 email I sent to Mr. Schwind and Mr. Antonson at or about 4:06 p.m., responding to Mr. Schwind's April 12, 2006 comments regarding the proposed scheduling order, as well as the revised scheduling order and redline comparison that I attached thereto.

14. Attached hereto as Exhibit 13 is a true and correct copy of an April 13, 2006 email that Mr. Schwind sent to me responding to my email to him of that same date.

15. Pursuant to the paragraph 1(b) of the Scheduling Order, Plaintiffs have produced 7,767 pages of documents to the Government. These documents include the worksheets and calculations of their expert Dr. Mannon, as well as the documents that he relied on in forming the opinions expressed in his February 17, 2006 declaration regarding the drainage issue. These materials included substantial geological and engineering information concerning Leases OCS-P 0451 and 0452, including well logs, engineering reports, well test data, geologic maps, core analysis reports, fluid analyses, and pressure data.

16. Attached hereto as Exhibit 14 is a true and correct copy of objections to the subpoena that are being served simultaneously with the motion to quash.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 27, 2006

Steven J. Rosenbaum

# Exhibit 1

# *UNITED STATES COURT OF FEDERAL CLAIMS*

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**SUBPOENA**

Nos. 02-30C
04-1822C &
05-249C (Consolidated)
(Senior Judge Bruggink)

To:

Custodian of the Records
Arguello, Inc.
c/o Steven J. Rosenbaum
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | DATE AND TIME |
| --- | --- |
| | |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| United States Bankruptcy Court<br>1415 State Street<br>Santa Barbara, CA 93101<br>(805) 884-4800 | May 30, 2006<br>9:00 a.m. |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attachment.

| PLACE | DATE AND TIME |
| --- | --- |
| United States Bankruptcy Court<br>1415 State Street<br>Santa Barbara, CA 93101<br>(805) 884-4800 | May 30, 2006<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the dated and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. U.S. Court of Federal Claims rule (RUSCFC) 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if Attorney for Plaintiff or Defendant) | DATE |
| --- | --- |
| Allison Kidd-Miller<br>Attorney for Defendant | 5/16/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Allison Kidd-Miller, U.S. Department of Justice, Civil Division, 1100 L. Street, N.W., Suite 12004, Washington, DC 20530 (202) 305-3020

NOTE: If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the Court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.

## PROOF OF SERVICE

SERVED Date 5/16/06 Place Washington, DC

SERVED ON (Print Name) Steven J. Rosenbaum

MANNER OF SERVICE E-mail and Federal Express

SERVED BY (Print Name) Allison Kidd-Miller TITLE Trial Attorney

☐ Fees tendered for one day's attendance and mileage allowed by law.

(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 5/16/06
Date

Allison Kidd-Miller
Signature of Server

1100 L St., NW
Address of Server
Washington, DC 20530

RUSCFC 45, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph of (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, service upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iii) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS AND INSTRUCTIONS

As used in the description of documents to be produced by Arguello, Inc. (Arguello) attached to this subpoena, the following terms have the following meanings:

1. The terms "you," "yourself," and "your" refer to Arguello and its predecessor, parent, and subsidiary companies, and includes present or former officers, employees, agents, attorneys or representatives and every person connected with Arguello in connection with the matter at issue in this action.

2. "Documents" refers to all writings, tapes, recordings, graphic representations, drawings or printed materials of any kind whatsoever, specifically including electronic media of any kind, however produced, or reproduced that are now or have ever been in your possession or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes, reports, presentations, studies, memoranda, electronic messages or mail, invoices, bills, written estimates, contracts, agreements of any kind, shipping or receiving documents, diagrams, drawings, designs, books, articles, or extracts from any of the foregoing, any drafts of the above, or any other tangible things containing information. If a document responsive to this subpoena was, but no longer is, in your possession and control, describe in detail the contents of the documents, its date of creation and disposition, and its present location and custodian.

3. "Relating to," "related to," and "relate to" mean containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, or in any way pertaining to the subject specified.

4. "Wells" refers to all wells drilled on OCS-P 452 or the eastern half of OCS-P 451.

5. "Tracts" refers to OCS-P 452 and the eastern half of OCS-P 451.

6. Paragraphs 1 through 9 of this request apply to documents created or modified between January 1, 1998 and the present. Paragraphs 10 through 15 of this request apply to documents created since the origination of leases OCS-P 452 and OCS-P 451.

7. Should you claim privilege for any documents requested, describe in detail those documents and indicate your claim of privilege and give the grounds upon which your claim of privilege rests.

**<u>DOCUMENTS TO BE PRODUCED BY ARGUELLO</u>**

1. All documents relating to:

   a. the nature, extent, and geological location of oil or gas on the Tracts, including oil/water contacts;

   b. the properties or characteristics of the producing formation or its fluids;

   c. the recoverable volumes underlying the Tracts;

   d. the anticipated recovery of oil or gas from any of the existing or proposed Wells on the Tracts;

   e. the cost, productivity and profitability of Wells which have been or might be drilled on the Tracts;

f. proposals, applications and approvals for all the Wells already drilled on the Tracts, and all end of operations reports;

g. proposals, applications, and plans for the possible future development plans or recovery from the Tracts; and

h. any aspect of other fields or reservoirs which are relied upon as analogies for the purpose of making the studies listed above.

2. All documents related to the choice of location and choice of completion design of existing and future potential Wells on the Tracts.

3. Any documents that refer or relate to drainage areas of individual Wells, or multiple Wells including but not limited to volumetric calculations, estimated ultimate recoveries, studies in analog fields, and decline curve analyses.

4. Any documents that relate to natural fractures or fracture systems within the Tracts or within analog fields.

5. A complete set of all current geologic maps for the Tracts, including but not limited to maps of well locations, structure, gross interval thickness, oil/water contacts, net pay thickness, and fault planes. .

6. All seismic data and interpretations on the Tracts or within a half-mile around the tracts including, among other things, the seismic volume, interpretations, final displays, seismic attribute volumes, synthetic

seismograms and seismic models, well trajectories, and well logs. To the extent that they exist, also provide any seismic project files.

7. All geologic models or simulation models related to the Wells or Tracts, including any documents about the same.

8. All summary documents reflecting the price received for the oil and gas produced by the Wells.

9. Summary data concerning monthly operating costs for the Wells.

10. All completion data and records for the Wells, including, but not limited to, the displacement and orientation of each existing or proposed wellbore, drill stem tests, wellbore diagrams, well daily drilling and completion reports, mud log, cuttings information, directional surveys, geo-steering reports, stimulation or fracture treatment reports, or other well information.

11. All openhole and cased well logs for the Wells with headings from surface through well total depth and all repeat formation tests for the Wells, including all documents related to the interpretation of well logs.

12. All core data and routine or special core analyses studies or reports, including, but not limited to, porosity, relative permeability, capillary pressure, and pore volume compressibility measurements for samples taken from the Tracts or from analog fields.

13. All fluid and gas analyses, studies, or reports for samples taken from the Tracts.

14. All documents relating to the production of oil, gas, and water by the Wells from date of first production, including, but not limited to, daily production reports.

15. All pressure data collected on the Wells, including, but not limited to, all pressure build-up and drawdown data, all static bottomhole pressure measurements, all flowing bottomhole pressure measurements (including gradient surveys), and all shut-in and flowing tubing pressure measurements and gradient surveys and all interpretations of the same.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**NOTICE TO TAKE DEPOSITION BY SUBPOENA**

Please take notice that pursuant to Rule 45 of the Rules of the United States Court of Federal Claims, the United States will take the deposition of the Custodian of Records for Arguello, Inc. upon oral examination before an officer authorized by law to administer oaths. The deposition will take place on Tuesday, May 30, 2006 at the United States Bankruptcy Court for the Central District of California at 1415 State Street, Santa Barbara, California, or such other location as may be agreed by the parties. The deposition will begin at 9:00 a.m., unless other arrangements are made.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

Allison Kidd-Miller
ALLISON KIDD-MILLER
STEPHEN C. TOSINI
GREGG SCHWIND
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 305-3020
Fax (202) 307-0972

May 16, 2006

Attorneys for Defendant

# Exhibit 2

Amber Resources Co et al v U.S. Nos. 02-30C, 04-1822C, 05-249C March 30, 2006

Heritage Reporting Corporation

Page 1 to Page 40

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*
*FAX: 202-371-0935*

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY, )
et al., )
Plaintiffs. )
)
v. ) Docket No. 02-30C
) 04-1822C
UNITED STATES. ) 05-249C
Defendant. )

Courtroom 8
National Courts Building
717 Madison Place N.W.
Washington, D.C.
Thursday
March 30, 2006

The parties met, pursuant to notice of the Court, at 10:00 a.m.

BEFORE: HONORABLE ERIC G. BRUGGINK
Judge

APPEARANCES:

For the Plaintiffs:
STEVEN J. ROSENBAUM, Esquire
E. EDWARD BRUCE, Esquire
THOMAS J. COSGROVE, Esquire
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

Also for the Plaintiffs: (Via Telephone)
JEFFREY D. ANTONSON, Esquire
Jackson Walker, LLP
Bank of America Plaza
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000

Page 2

APPEARANCES: (Cont'd.)

For the Defendant:
PATRICIA M. MCCARTHY, Esquire
ALLISON KIDD-MILLER, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0164

Also for the Defendant:
BARRY E. CROWELL, Attorney Advisor
U.S. Department of the Interior
Office of the Solicitor
1849 C Street, N.W., Room 6342
Washington, D.C. 20240
(202) 208-4327

Also for the Defendant:
GREGG M. SCHWIND, Esquire
U.S. Department of Justice
Civil Division
Torts Branch
1331 Pennsylvania Avenue, N.W., Suite 1150
Washington, D.C. 20004
(202) 353-2345

Page 3

P R O C E E D I N G S

(10:00 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Eric G. Bruggink presiding. God save the United States and this Honorable Court.

THE COURT: Good morning. Have a seat. Please state your appearances for the record.

MR. ROSENBAUM: Steve Rosenbaum for the Plaintiff. And with me are Ed Bruce and Tom Cosgrove.

THE COURT: Mr. Antonson is joining us by phone. Can you hear us, Mr. Antonson?

MR. ANTONSON: Yes, Your Honor.

MS. MCCARTHY: Good morning. Patricia McCarthy for the Defendant, and with me is Barry Crowell, Gregg Schwind, and Allison Kidd-Miller.

THE COURT: All right. Ms. McCarthy, it's your motion.

MS. MCCARTHY: Yes. Thank you, Your Honor.

We have received a declaration from Mr. Mannon, as to which we've had no discovery. We have submitted in response to that an expert declaration by Dr. Strickland indicating what would be needed in order to confirm or deny the material facts surrounding this issue of potential drainage.

Page 4

In terms of the legal arguments that the Plaintiffs have made in response to our motion for partial reconsideration or a motion for reconsideration as to the recision of lease 452, our position is, as we indicated in our reply brief, that the unitization is really critical in the application of the rule of capture and that a very material and substantial benefit that Delta received by virtue of its exclusive ownership of lease 452 was the right to acquiesce to the drilling, specifically the drilling within 500 feet of the line.

And this was nothing untoward about Delta exercising that right. That was a right that it had as a sole and exclusive owner of lease 452. But it's a really critical decision that Delta made, and it's really irrevocable.

The drilling has occurred, the well is there, and as Mr. Mannon, Dr. Mannon, establishes in his declaration, this drainage is going to occur. And this was a very substantial right that Delta acquiesced. It was a benefit that it received by virtue of its ownership of lease 452, and we think that it's going to lead to the material alteration of the character of the lease, of the value of the lease.

THE COURT: Going to lead or has led?

Page 5

MS. MCCARTHY: Well, we don't know. Dr. Mannon has stated unequivocally that no drainage has occurred prior to November 15. Really, whether the drainage has occurred prior to November 15, that's really not a relevant date from our position. From our position, Delta exercised the right to acquiesce in 2005 and that the contraction of the Rocky Point lease occurred in 2003 and that those material events had an effect. The potential for directional drilling has been existing for two years. We don't know, we can't state with certainty as to when the actual drainage has occurred, but it will occur.

THE COURT: Hang on. I'm trying to figure out to what extent it matters that we have the serendipity that Delta is on both sides of this line. Does that matter?

MS. MCCARTHY: It provides more of an incentive and more of a rational basis for Delta to exercise its right to acquiesce, but as a matter of law, no, it doesn't, Your Honor.

THE COURT: All right. So you would be arguing the same result even if Delta didn't own an interest in 452? Is that the one? Yes, 451.

MS. MCCARTHY: 451.

Page 6

THE COURT: 451. The one next door is 451. Even if it didn't own an interest in it, you would be saying that its ability to say we agree or disagree somehow added value to 451? Is that the right one? The lease at issue, that's 451?

MS. MCCARTHY: The lease at issue that is being drained is 452.

THE COURT: Okay. So that's the one that's within the lawsuit, right?

MS. MCCARTHY: Right. And regardless of whether Delta has an interest – in fact it does have an interest in 451, which certainly makes its exercise of its right to acquiesce certainly rational and reasonable.

THE COURT: But I'm trying to figure out in terms of the legal test is that simply something that adds weight to your argument or does it somehow control the outcome. All right. So it has an 11 percent interest in 451, is that right?

MS. MCCARTHY: Yes, Your Honor.

THE COURT: Okay. Let's assume that it didn't. It simply has by law the right to say because of its ownership of 452 to anybody who owns 451 we agree or disagree, right?

MS. MCCARTHY: Right.

Page 7

THE COURT: Okay. Now let's assume that's all that we had. Would you be arguing the same thing?

MS. MCCARTHY: Yes, Your Honor, we would, because what's critical here is that there was an exercise of a right of acquiescence that – say if this weren't Delta, say if this was a hypothetical stranger owner.

THE COURT: Next door you mean?

MS. MCCARTHY: That owned 452, and it was a plaintiff in this lawsuit, but – I'm sorry.

THE COURT: 451?

MS. MCCARTHY: That owned 452, which 452 is the lease that's in the lawsuit that's being drained.

THE COURT: Yes.

MS. MCCARTHY: And say if another plaintiff other than Delta owned that 452. Just the mere exercise of that right to acquiesce to the drainage of this lease is changing the value, is diminishing the value of the lease such that –

THE COURT: Which one are we looking at in terms of whether or not there's residual value? Isn't it 452?

MS. MCCARTHY: 452.

THE COURT: So don't we have to assume that whoever owns 452 is one of the litigants?

Page 8

MS. MCCARTHY: Yes. I was trying to come up with a way of saying one of the litigants. It just so happens I think what Your Honor was asking me was what's the materiality of the fact that Delta happens to own an 11 percent interest in the adjacent lease.

THE COURT: Right.

MS. MCCARTHY: It adds weight to it, but it's not the material – it's not the crux of our argument. Even if hypothetically it were owned by plaintiff X rather than Delta, even if plaintiff X owned 452, the exercise of the right of acquiescence has had an irrevocable effect upon the value of 452, thereby precluding the plaintiff X from returning lease 452 into the –

THE COURT: Okay. I see what you're saying I think. Then I need to ask how do I quantify that impact. So you're not looking initially at least in that scenario at the impact on Delta. You're looking at the impact on whoever succeeds to the interest of Delta in 452, i.e., the government, whether it's getting the same interest back.

MS. MCCARTHY: Exactly, Your Honor.

THE COURT: Okay. Let's see. Now where was I headed with that? Oh. Well, let's assume that Delta has no interest in 451. Then how do I

Page 9

quantify – well, I guess then it really doesn't matter – but how do I quantify the impact to the government of the fact that the prior owner has not objected to the neighbor draining from wells on 451 that might impact 452? What's the impact on the government?

MS. MCCARTHY: Well, there's two ways it could have impact on it. And obviously, Your Honor, I think we need discovery as to what the true impact is, because we're very forthcoming. Mr. Mayerson's declaration mentioned the fact of the ceiling fault. We're not trying to overstate the facts here. You know, the fact of the matter is that the existence of the ceiling fault is unconfirmed. What we do know –

THE COURT: Why would the fault make any difference to the government?

MS. MCCARTHY: Well, the fault could make a difference because if there were no fault there, then theoretically, again, theoretically – Mr. Rosenbaum I'm sure is going to object to this – but theoretically these leases were once unitized, and they were unitized in principal because they share a reservoir, because there's some sort of geological consistency. And the reason why leases are unitized is to

Page 10

provide some sort of equitable and fair apportionment of the resources that are being drilled. And so they were sharing a reservoir, and so theoretically, if there were no ceiling fault, then unfettered drilling on 451 could theoretically just completely deplete 452. Now we're not saying that that's the case here, but that would clearly –

THE COURT: No, I understand that that might be a fact question. I understand where you're headed on that. But what I'm trying to figure out is what are the variables that potentially could impact value before I perhaps unnecessarily turn you all loose to do discovery. To what extent does it matter that what I pick up in that argument is that you're assuming that the government wants to get the value of that oil itself?

MS. MCCARTHY: The value of the oil to the government is that the government is forced – and if the Plaintiffs ultimately do return the leases back to the government, the government is entitled under restitution to get the leases back in the substantially same condition as they had issued them. And if the oil is being depleted – and we need to know to what extent it's substantial. The Plaintiffs used Mr. Mannon, Dr. Mannon's, declaration

Page 11

to say, oh, this is just an infinitesimal depletion and it's not precluding Delta from returning the lease in substantially the same condition. We don't know whether that – I'm not going to say Dr. Mannon's wrong because I don't know that for a fact. However, Dr. Strickland has pointed out that the fact of the matter is that they're putting a well within 500 feet that's estimated to drill millions of barrels of oil from 451, and it doesn't make sense to say that there's going to be, you know, a negligible drainage from the adjacent lease within 500 feet. We don't know that. We just need more discovery for that.

THE COURT: All right. But I need to know what the relevant factors are. Let's assume just for fun that you go through discovery and you get a panel of experts and the most they come up with is – let's assume that they say gee whiz, there is this fault and it's going to be a natural barrier, and so outside we're looking at a 1 percent impact. Is that a relevant factor in my answering the question of whether or not I ought to take that lease out of the recision?

MS. MCCARTHY: Yes, that would be a relevant factor.

Page 12

THE COURT: But why? Under what legal standard?

MS. MCCARTHY: The legal standard would be, you know, if Your Honor reads the restatement of restitution or Hanson, which has spoken to the restatement Section 384 in particular. We agree with the Plaintiffs that 384 contemplates a substantial – has to be substantial – that it's substantially the same condition. If it turns out that this ceiling fault does exist and that the drainage from lease 452 is relatively de minimis, then we would argue under Hanson that what we would be entitled to establish through this Court at trial would be the value of the diminishment, because Delta would only be entitled to the net loss that it suffered as a result of 452, as a material breach of 452.

THE COURT: Wait a minute. Now we're going in two different directions. It seems to me there's a difference between saying that the government inherits less and that the Plaintiffs have got to cough up whatever it got by being the next door neighbor, and it seems to me those are two different things.

MS. MCCARTHY: Because, Your Honor, in Hanson, the Court made very clear that if restatement

Page 13

Section 384 does not act as a bar to restitution, which is what the Court held in Hanson, that the government in that case was entitled to hold the plaintiff accountable for the effects of mismanagement, the alleged mismanagement in that case. We would argue that if 384 does not apply, if we did discovery and Dr. Strickland agreed with Dr. Mannon that this is not really significant -- does not preclude Delta from returning the lease in substantially the same condition, then under Hanson, we're at least entitled to hold Delta accountable for the depletion of the resource for whatever that is.

THE COURT: From whose perspective? I mean, now the government is getting its royalty. For every barrel that goes out the other side, the government is already getting its royalty.

MS. MCCARTHY: That's true, Your Honor, but the fact of the matter is that the Plaintiffs don't have a right to decide oh, the royalty that they're getting from 451 is enough to make the government whole.

The issue is that the government is supposed to get the lease back, and the government has a very valuable interest in being able to reissue the lease at some other point intact. They want the resource

Page 14

intact. And to say oh, you're made whole by getting a royalty payment off of 451 is really not the issue. The government wants to be able to -- really, to have a full and fair recision take place, the government is entitled to get the resource back in the condition -- and it could reissue that and get bonus payments for that.

THE COURT: Right. But presumably if somebody knows that some of the oil has been drained out, and I guess this is your point, the bonus payment is going to be lower, right?

MS. MCCARTHY: Exactly, Your Honor.

THE COURT: But isn't that a reflection of what's already been taken out?

MS. MCCARTHY: Well, the process, this is continuing, Your Honor. The thing is the drainage is continuing, and they're still drilling and this could go on for some period of time, and so it's very difficult for the government to issue another lease 452 to a new owner and say by the way, it's continuing to drain and take that into consideration when you're doing your bonus payment.

THE COURT: Okay. To what extent can I take into account in sort of piecing together impact here that the odds of the government ever trying to re-

Page 15

lease this on the assumption that California is going to change its mind and that there's actually going to be production out here is, do I take that into account, the likelihood or unlikelihood of that?

MS. MCCARTHY: I'd strongly urge Your Honor not to do that, because the government -- you know, whatever tea leaves one wants to read into the current situation in California, the government 20 years from now may want to reissue this lease. And I don't think anyone in this room could possibly speculate what political, environmental situation might be 20 years from now.

And the fact of the matter is that the oil is taken from the ground. Then that lease, that resource, has been changed, and the government is entitled to get the resource back intact.

THE COURT: Okay. Now, on that point, let's assume that your second argument as I understand it is okay, let's assume that the overall impact is not significant enough to preclude recision. We still are entitled to some sort of a reimbursement for -- and I'm not sure how you're characterizing it -- either the benefit to the Plaintiff or the loss to the government. At that point, does it matter that the oil is going to an entity in which Delta has an 11

Page 16

percent interest? See what I mean?

MS. MCCARTHY: I'm sorry, Your Honor?

THE COURT: No. Well, I'm just thinking out loud. That sort of focuses the question on whether or not you're talking about loss to the government or benefit to the Plaintiff, right?

I mean, it's just sort of by accident that the Plaintiff is next door. You're saying that you would be making the same argument even if it wasn't. So if it wasn't, would you be making the same argument that we're entitled to sort of a discount here?

MS. MCCARTHY: The fact that Delta is an 11 percent owner is not really the material aspect of it here. We just think it adds more frankly to the equity of the situation where it's going to be if there is no accounting made for this, it will be getting its bonus payments back; meanwhile it will be getting a very real benefit, a tangible benefit, from its exercise of right of acquiescence.

Now, for a hypothetical plaintiff X who didn't have a ownership interest in the adjacent lease, it would be a little bit unclear as to why that owner would have acquiesced without getting any tangible benefit. But really the interest is lost to the government.

Page 17

And also the one way it would be relevant is under Landmark and Hanson where if Delta is seeking restitution for 452, it is supposed to get its net loss. I mean, it is only entitled to its net loss.

And I think that if it turns out that they were getting substantial benefits from the drainage of 452 by virtue of their 11 percent interest of 451 – and I caution Your Honor, that's the minimum interest that they have. We don't know if there's some other side arrangement that they have to compensate for the drainage. And that would be something that could be factored into doing a restitution award as to what's truly their net loss for 452.

THE COURT: The Plaintiff makes much of the fact that as of the date of my order that the oil hadn't actually been pumped or at least whichever the closest well is, they hadn't started pumping yet. Does that make any difference?

MS. MCCARTHY: No, Your Honor, it doesn't make any difference at all. The operative activity occurred when Delta acquiesced in 2003 and later in 2005 to the drilling, to the placement of a well. Those are the operative acts, and those became irrevocable.

Your Honor's November 15 recision, you know,

Page 18

the Plaintiffs are saying well, we're using that as the date of recision. We're using that as the date of recision only to the extent that for future – I think in the January status conference, for instance, for future proceedings, for the Court to resolve the remaining claims, we're simply urging the Court to use the framework of a recision or restitution in order to decide the remaining claims.

Certainly the government has not tendered back the bonus payment, did not tender back the bonus payment. The Plaintiffs did not tender back the leases. And that's an interlocutory ruling. The Court has not even issued final judgment yet. And then obviously the Solicitor General will be considering whether we should appeal, and there's a long process that would go on in that.

THE COURT: Right. Okay. Let's see. Anything else I need to ask you? Let me switch gears to Mr. Rosenbaum for a minute.

I'm inclined to agree with the government that there's nothing magic about November 15, because it is interlocutory, and I would assume on the books and records of MMS that the Plaintiff still shows up as a nominal owner and that it's not until the end of the day that the remedy, assuming this goes forward,

Page 19

is implemented is the more relevant period of time.

MR. ROSENBAUM: Well, Your honor, as I think we said in our brief, we actually share the view that the recision has not yet taken place and had said so in previous pleadings. We think it's the government, though, that had, we think in words a lot clearer than Ms. McCarthy has now stated, suggested that the recision has already occurred.

And if that has been their position, they can't simultaneously argue that and argue that the date is irrelevant for purposes of determining whether or not the leases, the condition of the leases, is as they will return.

But be that as it may, Your Honor, although that's certainly one of the issues we raised, I don't view that as necessarily the leading or key issue. I mean, I think we have to first step back and recognize we're here on a motion for reconsideration, and accordingly we're subject to Rule 59A requirements.

The government in their own pleadings has suggested they had full knowledge as early as 2003 as to the potential for there being drainage from lease 452 with respect to the wells that were potentially to be drilled on 451.

The government submitted as part of their

Page 20

affidavit material an e-mail, internal e-mail within MMS, that uses the term "drainage" in the specific context of this issue. And so the question becomes therefore, under the rubric of 59A, the significance of that fact.

And, of course, as Your Honor will recall, the government argued in the summary judgment proceedings that we already had that we should not get recision because we were not able to return the leases in the condition in which we obtained them.

THE COURT: Right. But in fairness –

MR. ROSENBAUM: For a different reason.

THE COURT: Right. A different reason.

MR. ROSENBAUM: But, nonetheless, the general issue was clearly raised by the government.

THE COURT: Yes. But I'm a big believer in open government as it were or whatever the equivalent here would be. As I recall, there were affidavits from the Plaintiff saying there had been no production, right?

MR. ROSENBAUM: That's correct,

THE COURT: Okay.

MR. ROSENBAUM: Which was accurate.

THE COURT: No, I understand it was accurate, but let me ask you, if you could step

Page 21

outside your role as Plaintiff's lawyer just briefly.
Assuming that this is properly opened under 59, is
there any set of facts under which the volume of
production would matter?
MR. ROSENBAUM: Our view is that the
benefits that are being obtained here are the benefits
of the ownership of lease 451, not of lease 452.
THE COURT: Benefits to Delta come from
ownership of?
MR. ROSENBAUM: The benefits of the
production --
THE COURT: Yes.
MR. ROSENBAUM: -- is the focal point of the
government's motion, is a benefit of ownership of 451.
The owner of 451 is entitled to drill wells on lease
451 and to produce whatever oil comes up that pipe,
and it's entitled to that oil regardless of where the
oil originated. That is the law of capture that has
been in place in this country for over 100 years and
is recognized, as we cited in our pleadings, as a
prerogative of the ownership of 451.
And accordingly, our view is that the oil
that's being pumped out is attributable to the
ownership of 451, and accordingly, our view is it's
irrelevant for that reason.

Page 22

I would also note that the government I
believe is vastly overstating the so-called
acquiescence issue with respect to Delta, Delta's
statement with regard to whether it objected to the
placement, the location at which the wells were
placed.
The regulation which we cited in our papers,
which is 30 C.F.R. 250.1101(b), explicitly states that
it's the MMS, not the adjacent lessee, that has to
approve the location of the well and that all that's
requested or required of the adjacent landowner is a
letter expressing acceptance or objection, is the
phraseology used in that section.
But there's no hint whatsoever that the
objection or acquiescence of the adjacent landowner is
determinative one way or the other, whether it's
acceptance or an objection.
THE COURT: No, but there's some reason for
asking.
MR. ROSENBAUM: Well, sure. That is to say
the regional supervisor would be interested in knowing
the views of the adjacent landowner, but it's not
their decision. It's not Delta's decision. It's the
regional supervisor's decision.
THE COURT: You're saying that even if

Page 23

somehow the wells were located in such a way and the
fault lines ran in such a way that poking a well at
the border on 451 would drain 100 percent of 452, that
still would be irrelevant?
MR. ROSENBAUM: It would be irrelevant
because the question for restitution purposes is has
Delta in this case received a benefit under the
contract that is the subject of its breach of contract
claim. And in this context, the contract, that
contract, is the contract for lease 452, and it has
not received a benefit under that contract.
THE COURT: So you're comfortable with the
notion of whether or not Delta got a benefit as
opposed to whether or not the property is returned to
the government in substantially the same condition.
MR. ROSENBAUM: Well, I mean, obviously it
is our position as a factual matter that the lease
will be, has been or will be, returned to the
government in very much substantially the same
condition in which the lease was first obtained. As
Your Honor knows, our view is that the drainage here
is de minimis, and indeed our view is the government's
own figures would support that.
THE COURT: Right. But those are two
different questions.

Page 24

MR. ROSENBAUM: I understand, Your Honor. I
understand. I just wanted to make clear that that was
our position.
THE COURT: Yes.
MR. ROSENBAUM: But yes, our position is
that in a circumstance in which the drainage is the
prerogative of the ownership of 451, the government is
still getting the royalties, the government acquiesced
in the positioning of the wells, there is a moratorium
enacted by Congress against any new leasing in that
area, that there is no set of circumstances under
which the status quo in terms of Your Honor's orders
should be changed.
THE COURT: If we were talking about
standing timber, for example, and the right to cut, I
don't know if this confuses things, but suppose a
forest fire came along, burned all the timber. Could
you even have recision under those circumstances?
In other words, what I'm positing is that
the loss of the value of the property, not because the
lessor -- excuse me, the lessee got the benefit of it
simply just by accident and assuming there was no
insurance payment to go after, in effect, you're
saying it's just the accident of having a producing
well next door that diminishes the value here because

Page 25

of the rule of capture. Of course that assumes that the rule of capture trumps that whole regulatory process, right?

MR. ROSENBAUM: Well, I don't think there's any question but that the rule of capture applies on the OCS. We quoted materials to that effect by MMS. The east half of 451 is not unitized, and I don't see any scenario under which, any suggestion, that the owners of the east half of 451 are not – they're entitled to the rule of capture.

THE COURT: What if MMS hadn't approved the location of the well on the grounds that it would drain oil from next door?

MR. ROSENBAUM: Well, then the well wouldn't have been drilled.

THE COURT: But I thought you said the rule of capture would –

MR. ROSENBAUM: Well, MMS has to approve the location of wells, which it did. I mean, if MMS hadn't approved the location of the well, then the well wouldn't be there presumably.

THE COURT: This may be far afield, but, I mean, I can imagine those two phenomenon being in conflict, in other words, that the very reason they wouldn't want the well there is because of the impact

Page 26

on somebody else's property.

MR. ROSENBAUM: Well, the fact situation here is one where that permission was granted by MMS.

THE COURT: Yes. And of course the government suggests that one of the complicating factors is that because you have Delta on both sides of the line, that may have counted for MMS's willingness to approve.

MR. ROSENBAUM: Well, I obviously can't speculate as to what their thought process was, Your Honor. All I can say is that MMS presumably is well aware of the prerogatives that a lessee has, and MMS does have the prerogative to control the question of a well location.

But, you know, Your Honor, to our view, Hanson, which we of course cited in our paper, you know, is a case in which the Federal Circuit appeared to – well, clearly not just appeared, did hold that in a circumstance in which they concluded that because of various changes that had been made to the bank, there really wasn't an ability to return the property in the same circumstance in which it was granted. They nonetheless would allow recision and restitution subject to setoff for any benefits that had been received under the contract.

Page 27

Of course here, as we've articulated already, our view is that the benefits that have been received here are the benefits under the contract for 451, not any benefits under 452.

And accordingly, under that analytical framework, we believe that there's no circumstance under which there should be – certainly no circumstance obviously for reconsideration of the recision order nor any circumstance under which a setoff would be appropriate.

THE COURT: How complicated, Ms. McCarthy, would discovery be on the impact on the reserves within 452?

MS. MCCARTHY: Your Honor, we don't think it would be terribly complicated. We would have to do discovery requests and obtain well logs, and then our expert, Dr. Strickland, would need some time to review that data and make a determination. We think it would take approximately five to six months of discovery.

THE COURT: Sounds like a lot to me.

MS. MCCARTHY: Well, that's, you know, building in some time. I mean, you know, it could be fewer than that if we actually got all the data within 30 days, et cetera.

THE COURT: Are you talking about

Page 28

information that you're likely to be generating yourselves within the government and with its experts or primarily from the Plaintiffs' experts?

MS. MCCARTHY: Well, we would need to obtain the support for Dr. Mannon's analysis. I think what Dr. Strickland would need to review, Dr. Mannon's analysis that we hope is set forth in Dr. Strickland's analysis, declaration. We intended to do that. And we would need the well data in order to confirm or refute. Dr. Strickland may well confirm Dr. Mannon's analysis.

THE COURT: Yes.

MS. MCCARTHY: But as Dr. Strickland explained in his declaration, Dr. Mannon needs to provide either the data supporting his conclusions or the methodology. So it could be done in fewer than five to six months, but in order to do it, we would have to get the data within 30 days of our documents.

THE COURT: Okay. Hang on.

Would you agree with me that your answer to my earlier question about whether or not it matters – it would matter if 452 was 100 percent drained and your answer was no. That's a different argument than the one that underlies most of your briefing, which is in fact there is a de minimis impact because the

Page 29

drainage is not much.

MR. ROSENBAUM: Those are separate, Your Honor. I mean, this was a motion for reconsideration seeking a reversal of Your Honor's decision, so we obviously felt compelled to bring to bear all of the arguments and facts that were relevant to that, which included of course our view that the drainage is de minimis.

THE COURT: I'm in some ways reluctant to turn you folks loose, for two reasons: one, I don't want it to slow down the rest of the lawsuit, and the other is not a terribly legal reason.

I'm inclined to think that if at the end of the day we end up with numbers that look like MMS's estimates, the, what is it, 400,000 barrels or whatever it is, that -- well, I don't want to prejudge things, but that might not be enough to make any difference.

Nevertheless, I would feel a whole lot more comfortable if, given the state of the briefing where the Plaintiff has put in play Mr. -- what's his name -- Mannon, Mannons', whatever, assertions -- and I'm satisfied that the government's motion is not untimely, that it doesn't raise things that should have been raised earlier given the state of the

Page 30

briefing and the affidavits and the record on summary judgment.

So to the extent that it's relevant, how much is going out through 451 now or predictably so that within the lifespan of this lawsuit, we can project the impact or the result of having put a well there.

I would prefer to see sort of a fair playing field on arguing that factual point, so I'm inclined to open it up to some limited discovery both as to whatever issue the government was raising in terms of whether or not the legal arrangements sort of generate more leverage in terms of impact for Delta than might meet the eye -- I'm not even sure what that's about -- but that issue and having the government satisfy itself within reason as to the quantum of physical impact.

Unless somebody gives me a really good reason not to do that, I'm inclined to open it up for parallel discovery on that issue. That's a question.

MR. ROSENBAUM: Well, Your Honor, you know, as I say, obviously our view is that in a circumstance where the government itself benefits from the royalties as they are and has every reason to have acquiesced to the wells being drilled for that reason,

Page 31

if not others, including presumably a shared desire to see domestic oil and gas production in this country, it seems to me, it seems to us, that they are getting all the benefits to which they are reasonably entitled under the circumstances.

And so we do have also a concern as to the ultimate impact of this issue on the prompt resolution of this case where we have, as Your Honor well knows, a very substantial award already that we of course can't collect as long as the case is going forward.

THE COURT: Right. Remind me of what's gone on on the other pieces of this. The costs, whatever it is, and the -- what are the other elements of damage you're seeking? Whatever you invested in the grounds so far?

MR. ROSENBAUM: Yes, Your Honor. We call it the "sunk costs". It's sort of the phrase we use.

THE COURT: Right.

MR. ROSENBAUM: Well, Your Honor set an August 31 discovery cutoff in your most recent order, and we and the government have served written discovery on each other. The government served two sets and we served one.

We've responded to the government's first set and they responded to ours. We'll be producing

Page 32

documents to them very soon, and then we'll respond to their second one very shortly. So that's moving forward, Your Honor.

Now we have filed a motion for summary judgment with respect to several issues that were identified in the status conference that we had with Your Honor at the end of January regarding whether the "sunk costs" are cognizable as restitutionary damages.

THE COURT: That's not stayed, is it? I mean, that's an active motion?

MR. ROSENBAUM: It's an active motion.

THE COURT: Right.

MR. ROSENBAUM: The government's response is due sometime soon.

MS. MCCARTHY: April 13.

MR. ROSENBAUM: April 13.

THE COURT: Right. Let's just once again assume that I come to the conclusion that that's not damages proper under a restitution kind of theory. Are there other elements of damages that are not subject to the motion?

MR. ROSENBAUM: Well, Your Honor, we asserted in our complaint an alternative claim to expectation damages. We have taken the position that if we recover our claims for the bonuses, which we've

Page 33

already recovered, and for "sunk costs" --
THE COURT: And, not or.
MR. ROSENBAUM: And.
THE COURT: Okay.
MR. ROSENBAUM: Then we would not pursue a claim for expectation damages. Mr. Antonson has taken a different position for his client, and Your Honor at the January hearing stayed discovery as to any expectation damages claim until after the "sunk costs" issues are resolved.
THE COURT: All right. So let's assume that I obviously have allowed whatever I've allowed and then denied request for "sunk costs". Then presumably that would trigger a government motion for summary judgment that expectation costs are not recoverable.
MR. ROSENBAUM: It might. I don't know a basis on which the government could argue that as a matter of summary judgment we're not entitled to expectation damages. I mean, it's clearly an alternative ground for relief.
THE COURT: Right. But if it's alternative, wouldn't the government's position be at that point you've gotten whatever you're entitled to under a nonexpectation theory and therefore you can't collect both?

Page 34

MR. ROSENBAUM: Well, we agree that ultimately you cannot collect both expectation damages and restitutionary/reliance damages, but the choice is one that we're not required to make until we've pursued all claims.
THE COURT: Right. Right. But, I mean, at that point, you would have pursued all claims, right? One you'd be successful on, one potentially you might not be successful on. Then how would I know that the show is over and the thing is ready for final judgment?
MR. ROSENBAUM: Well, if Your Honor, which we don't anticipate, but if Your Honor were to deny the claim for "sunk costs", then we would at that point have the prerogative to pursue a claim for expectation damages.
Ultimately Your Honor would not award both expectation damages and restitutionary damages, but we would be able if you will to pursue them both, and we would obviously choose whichever one was the larger number as Plaintiffs. But that is the prerogative we have as Plaintiffs.
And, you know, in the Winstar cases, for example, with which I'm sure Your Honor is very familiar, it's typically been the case that the

Page 35

parties have pursued all three theories of damages often and then collected on whichever one they could establish provided the largest number.
THE COURT: Okay. Okay. So I didn't hear a loud no.
MR. ROSENBAUM: Well, perhaps it was a reserved statement, but I did mean to say no. Well, for the reasons we've stated, we just don't think this discovery would end up changing the legal framework, which from our perspective simply denies the government any right to claim any change in Your Honor's previous rulings given, as I say, the nature of the rights inherent in the ownership of 451, which is the lease from which the oil is being produced.
THE COURT: Well, I may have gone off on a rabbit trail with the quantification end of it, but I guess I will lay some of the blame on that on the Plaintiff in terms of the way the briefing was done. If the position had been none of that matters because as a matter of law, all rights flow out of 452 irrespective of whoever owns it, and as a matter of law, the right of acquiescence is nonsubstantial, but I'm not 100 percent sure I'm there -- you may well be correct, I'm not sure. But having had the prospect of

Page 36

nonmateriality dangled in front of me on a factual basis, I would rather pursue that as long as it doesn't take forever. Despite my sort of suspicion that ultimately I suspect something like MMS's numbers are not going to be enough, but that's not for me to predict, so can I ask you all to sort of negotiate a schedule offstage and then just present it to me for doing this kind of discovery.?
MS. MCCARTHY: Certainly, Your Honor.
THE COURT: Okay. I haven't done an order I guess formally reopening that particular lease, although by asking for briefing, I guess I did reopen it, but certainly I think it's legitimately reopened, and I'll just keep it pending until I know that discovery is concluded. I would ask that you all try to do it in say four or five months if you can. And then what would I do then? Ask you all if you're ready to supplement your briefing? Is that the idea?
MS. MCCARTHY: That would be appreciated, Your Honor.
THE COURT: Okay. Okay. Then if I could ask Ms. McCarthy if you all can talk about and try to agree on a schedule and then just let me know what it is and I'll adopt it.
MS. MCCARTHY: Thank you, Your Honor. I'd

Page 37

also like to just make a general comment as to discovery. We're mindful of the Court's desire to move this case along to final judgment. And I think the parties, you know, often the government seeks enlargements in responses to discovery requests. We timely served our responses to the Plaintiffs' discovery requests, and we're actively, very actively, engaged in trying to resolve the remaining claim.

The one point I will note, though, Your Honor, is that under Your Honor's order in January following the January status conference, discovery is now limited solely to the "sunk costs" in terms of their actual occurrence and the right of the Plaintiffs to seek them, recovery of them.

Other issues as to defenses that we would have if those costs were characterized as reliance damages, which we think that they should be, would include losing contract defenses, which would get into expectancy. And right now we're not doing discovery as to that, but if the Court were to deny the Plaintiffs' pending motion for partial summary judgment on those issues, then discovery would be needed in those areas as well.

THE COURT: Are you going to cross-move?

MS. MCCARTHY: We were going to respond. I

Page 38

hadn't contemplated a cross-motion.

THE COURT: I'm not saying you need to. I was just curious. Okay. No, I hear what you're saying, and in light of what Mr. Rosenbaum says, it sounds like that is potentially a whole separate round of discovery that we might have to do.

MS. MCCARTHY: Precisely, Your Honor. I just wanted to make that clear.

THE COURT: Right.

MR. ROSENBAUM: Let me just interject, Your Honor. You know, our motion, if granted, would we think obviate the need to have that discovery.

THE COURT: Right. Yes. That's why I said "might". And that's a sufficient "might" that I'm willing to stick with the idea of not doing discovery on expectancy damages in the meantime. Okay.

MS. MCCARTHY: I don't mean to get the last word in except Mr. Rosenbaum did reserve the right to seek expectancy should his clients be dissatisfied with the final judgment on restitution, so he's not ruling out the possibility of expectancy damages himself.

THE COURT: Oh, even if.

MS. MCCARTHY: Right. You know, if you have a trial on the "sunk costs" and he's dissatisfied with

Page 39

the recovery, Mr. Rosenbaum has just told Your Honor he's going to go back. And Mr. Antonson I know has told Your Honor that they want to do expectancy, an expectancy presentation.

THE COURT: Right. Well, I think I may have suggested earlier that Mr. Antonson's lease may have to be split off for a separate trial. I don't want one lease to hold up resolution of the others if we have resolution.

Okay. Well, I think I understand what's potentially down the road, but that's for another day.

All right. So if you could just contact my office, Ms. McCarthy, and indicate whether or not there's agreement on a schedule, and if not, what your positions are.

All right. Thank you very much.

MS. MCCARTHY: Thank you very much, Your Honor.

THE CLERK: Court is adjourned.

(Whereupon, at 10:50 a.m., the hearing in the above-entitled matter was concluded.)

//
//
//
//

Page 40

REPORTER'S CERTIFICATE

DOCKET NO.: 02-30C, 04-1822C, 05-249C
CASE TITLE: Amber Resources v. United States
HEARING DATE: March 30, 2006
LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: March 30, 2006

Mona McClellan
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018

# Exhibit 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al., Plaintiffs, THE UNITED STATES, Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al., Plaintiffs, v. THE UNITED STATES, Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | |

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006, defendant, the United States, respectfully submits the following proposed schedule regarding its January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We

have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents reflecting, in whole or in part, any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any MMS reserve estimates for the Jalama Field, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July 31, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before August 15, 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before September 8, 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September 22, 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by October 6, 2006. The United States may file a reply brief by October 17, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April 13, 2006

Attorneys for Defendant

# Exhibit 4

# In the United States Court of Federal Claims

Nos. 02-30C, 04-1822C, & 05-249C (consolidated)
(Filed: April 20, 2006)

* * * * * * * * * * * * * * * * * * * * * * *
AMBER RESOURCES CO.,
et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.
* * * * * * * * * * * * * * * * * * * * * * *
ANADARKO E&P CO. LP,
et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.
* * * * * * * * * * * * * * * * * * * * * * *

NYCAL OFFSHORE DEVELOPMENT CORP.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.
* * * * * * * * * * * * * * * * * * * * * * *

## ORDER

Pending is defendant's April 13, 2006 motion for entry of a scheduling order pertaining to defendant's January 19, 2006 motion for reconsideration regarding

Lease OCS-P 0452. The court adopts the schedule set out in defendant's motion. In addition, the following is ORDERED:

On or before September 22, 2006, the United States shall file a supplemental brief regarding the pending motion for reconsideration. On or before October 6, 2006, plaintiff Delta Petroleum Corporation shall file a response brief. The United States may file a reply brief by October 17, 2006.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

# Exhibit 5

## Cosgrove, Thomas

**From:** Patricia.McCarthy@usdoj.gov
**Sent:** Friday, March 31, 2006 11:49 AM
**To:** jantonson@jw.com; Rosenbaum, Steven
**Cc:** Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
**Subject:** Amber Resources

**Attachments:** 060331.skedmot.wpd

060331.skedmot.wpd (24 KB)

Counsel:

Further to the court's direction issued following yesterday's oral argument, I attach a proposed motion for entry of a scheduling order to be filed with the court. Please advise me any proposed revisions to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060331.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al., Plaintiffs, THE UNITED STATES, Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al., Plaintiffs, v. THE UNITED STATES, Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | |

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction issued following oral argument held on on March 30,

2006, defendant, the United States, respectfully submits the following proposed schedule regarding its January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, the parties may conduct discovery regarding the extent and effect of the potential drainage of Lease OCS P-0452 due to the activities of the adjacent owners and/or operators of Lease OCS P-0451. They may also conduct discovery regarding any possible arrangements between or among plaintiff, Delta Petroleum Corporation, and any other lease owner and/or operator of Lease OCS P-0451 pertaining to the potential drainage of Lease OCS-P 0452, as well as any other issues raised by Dr. Robert W. Mannon in his February 17, 2006 declaration submitted by plaintiffs in support of their opposition to the pending motion for reconsideration.

2. Discovery pertaining to the pending motion for reconsideration shall be completed on or before August 31, 2006.

3. The Government shall file a supplemental brief regarding the pending motion for reconsideration by September 15, 2006. Plaintiffs shall file a brief in response to the Government's supplemental brief by September 29, 2006. The Government may file a reply brief by October 10, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER

Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

March 31, 2006

Attorneys for Defendant

# Exhibit 6

**Cosgrove, Thomas**

**From:** Rosenbaum, Steven
**Sent:** Tuesday, April 04, 2006 8:33 AM
**To:** 'Patricia.McCarthy@usdoj.gov'; 'jantonson@jw.com'
**Cc:** 'Allison.Kidd-Miller@usdoj.gov'; 'Gregg.Schwind@usdoj.gov'; 'Stephen.Tosini@usdoj.gov'
**Subject:** RE: Amber Resources

We are still working on this, and will be back to you soon.

-----Original Message-----
From: Rosenbaum, Steven
Sent: Friday, March 31, 2006 2:05 PM
To: 'Patricia.McCarthy@usdoj.gov'; jantonson@jw.com
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: RE: Amber Resources

We will be proposing some revisions to this draft, and in light of my need to confer with my clients, I will get back to you on Monday.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Friday, March 31, 2006 11:49 AM
To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Further to the court's direction issued following yesterday's oral argument, I attach a proposed motion for entry of a scheduling order to be filed with the court. Please advise me any proposed revisions to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060331.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

# Exhibit 7

## Cosgrove, Thomas

**From:** Rosenbaum, Steven
**Sent:** Thursday, April 06, 2006 3:02 PM
**To:** 'Patricia.McCarthy@usdoj.gov'; 'jantonson@jw.com'
**Cc:** 'Allison.Kidd-Miller@usdoj.gov'; 'Gregg.Schwind@usdoj.gov'; 'Stephen.Tosini@usdoj.gov'
**Subject:** RE: Amber Resources

**Attachments:** 2006-04-06 Proposed Discovery Schedule--Plaintiffs_ Revisions - - SCRUBBED on 04-06-06 11_30.DOC

2006-04-06
roposed Discovery .

Here is our revised draft of the discovery schedule for the Lease 452 issue.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Friday, March 31, 2006 11:49 AM
To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Further to the court's direction issued following yesterday's oral argument, I attach a proposed motion for entry of a scheduling order to be filed with the court. Please advise me any proposed revisions to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060331.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S**
**MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction issued following oral argument held on March 30, 2006, defendant, the United States, respectfully submits the following proposed schedule regarding its

January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the following discovery shall take place:

a. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to Defendant documents reflecting any arrangements between or among plaintiff Delta Petroleum Corporation and any other lease owner and/or operator of Lease OCS P-0451 pertaining to the potential drainage of hydrocarbons underlying Lease OCS-P 0452.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to Defendant all documents relied upon by Robert W. Mannon in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, Defendant shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any reserve estimates for the Jalama Field, and the documents relied upon in determining any of those estimates.

d. On or before May 30, 2006, plaintiff Delta Petroleum Corporation and Defendant may conduct depositions regarding the materials set forth in subparagraphs 1 (a) through (c).

e. On or before June 30, 2006, Defendant shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July 15, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1 (e).

g. On or before July 31, 2006, Delta Petroleum Corporation shall produce to Defendant any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1(e), and the documents relied upon in performing such analysis.

h. On or before August 15, 2006, Defendant may conduct depositions regarding the materials set forth in subparagraph 1 (g).

2. The Government shall file a supplemental brief regarding the pending motion for reconsideration by September 15, 2006. Plaintiffs shall file a brief in response to the Government's supplemental brief by September 29, 2006. The Government may file a reply brief by October 10, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch

Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006

Attorneys for Defendant

# Exhibit 8

**Cosgrove, Thomas**

**From:** Patricia.McCarthy@usdoj.gov
**Sent:** Tuesday, April 11, 2006 1:57 PM
**To:** jantonson@jw.com; Rosenbaum, Steven
**Cc:** Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
**Subject:** Amber Resources

**Attachments:** 060407.skedmot.wpd

060407.skedmot.wpd (15 KB)

Counsel:

Thank you for your comments regarding our draft motion for entry of a scheduling order regarding the Lease 452 issue. Attached is a further revised schedule. Please advise me whether your clients consent to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060407.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,)

Plaintiffs, )

THE UNITED STATES, )

Defendant. )

ANADARKO E&P COMPANY, L.P., et al., )

Plaintiffs, )

v. )

THE UNITED STATES, )

Defendant. )

NYCAL OFFSHORE DEVELOPMENT )
CORPORATION, )

Plaintiff, )

v. )

THE UNITED STATES, )

Defendant. )

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006,

defendant, the United States, respectfully submits the following proposed schedule regarding its January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents related to any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2

below, and the documents relied upon in determining those estimates.

f. On or before July 15, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before July 31, 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before August 15, 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September 15, 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by September 29, 2006. The United States may file a reply brief by October 10, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys

Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006 Attorneys for Defendant

# Exhibit 9

## Cosgrove, Thomas

**From:** Patricia.McCarthy@usdoj.gov
**Sent:** Tuesday, April 11, 2006 7:07 PM
**To:** jantonson@jw.com; Rosenbaum, Steven
**Cc:** Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
**Subject:** Amber Resources

**Attachments:** 060411.skedmot.wpd

060411.skedmot.wpd (15 KB)

Counsel:

Attached is a further slightly revised motion regarding the lease 452 schedule. Please advise us as to your clients' positions. Thank you.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,)
Plaintiffs, )
)
)
THE UNITED STATES, )
)
Defendant. )

ANADARKO E&P COMPANY, L.P., et al., )
Plaintiffs, )
v. )
THE UNITED STATES, )
Defendant. )

NYCAL OFFSHORE DEVELOPMENT )
CORPORATION, )
Plaintiff, )
v. )
THE UNITED STATES, )
Defendant. )

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S**
**MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006,

defendant, the United States, respectfully submits the following proposed schedule regarding its January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule (although the United States reserves its right to propound relevant discovery upon plaintiffs and third parties in a time-frame that is consonant with the following schedule):

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents related to any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta

Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July 15, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before July 31, 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before August 31, 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September 15, 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by September 29, 2006. The United States may file a reply brief by October 10, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER

GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006 Attorneys for Defendant

# Exhibit 10

## Cosgrove, Thomas

**From:** Rosenbaum, Steven
**Sent:** Wednesday, April 12, 2006 1:46 PM
**To:** 'Patricia.McCarthy@usdoj.gov'; jantonson@jw.com
**Cc:** Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
**Subject:** RE: Amber Resources

**Attachments:** 2006-04-12 Plaintiffs_ Revised Schedule - SCRUBBED on 04-12-06 13_39.DOC

2006-04-12
Plaintiffs_ Revised...

I received and consulted with my clients regarding the proposed schedule you emailed me yesterday, April 11, at 1:59 p.m. With two exceptions, we are amenable to that proposed schedule. One exception relates to our request for the MMS Jalama Field reserve estimate, which is integral to the question of the total reserves on Lease 452. The other relates to the description in paragraph 1(a) of the documents to be produced regarding agreements among the lessees, which we have revised slightly.

This morning, I received your further revised proposed schedule, which you had emailed me after normal business hours last night. We cannot agree to the additional and substantial changes you propose to make. The proposed change to paragraph 1 is inconsistent with the purpose of the schedule, which is to identify the scope and timing of the discovery on the issue of the purported drainage from Lease 0452. The second proposed change, to paragraph 1(h), would provide the government twice as much time for depositions as plaintiffs are being provided for their own depositions pursuant to paragraph 1(f).

I have attached a revised version of your April 11, 1:59 p.m. proposed schedule, which is unchanged except for the two issues identified in the first paragraph of this email. The attached schedule is acceptable to the parties I represent.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Tuesday, April 11, 2006 1:57 PM
To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Thank you for your comments regarding our draft motion for entry of a scheduling order regarding the Lease 452 issue. Attached is a further revised schedule. Please advise me whether your clients consent to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060407.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al.,<br><br>Plaintiffs,<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Eric G. Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006, defendant, the United States, respectfully submits the following proposed schedule regarding its

January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents reflecting in whole or in part any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any MMS reserve estimates for the Jalama Field, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July 31~~15~~, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before August 15~~July 31~~, 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before September 8~~August 15~~, 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September 15, 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by September 29, 2006. The United States may file a reply brief by October 10, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006

Attorneys for Defendant

# Exhibit 11

**Cosgrove, Thomas**

**From:** Rosenbaum, Steven
**Sent:** Thursday, April 13, 2006 8:27 AM
**To:** 'Gregg.Schwind@usdoj.gov'
**Subject:** RE: Amber Resources

I will need to double check with my clients; I will get back to you later today.

-----Original Message-----
From: Gregg.Schwind@usdoj.gov [mailto:Gregg.Schwind@usdoj.gov]
Sent: Wednesday, April 12, 2006 5:22 PM
To: Rosenbaum, Steven
Subject: RE: Amber Resources

Steve:

Also realized the briefing dates in para 2 should be pushed back one week as well, to accommodate our changes to f, g, and h:

Sep 22 US supplemental brief

Oct 6 Plaintiffs' response

Oct 17 US reply

Please let me know if these changes present any problems. Otherwise, I intend to file tomorrow.

Gregg

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Wednesday, April 12, 2006 1:46 PM
To: McCarthy, Patricia (CIV); jantonson@jw.com
Cc: Tosini, Stephen (CIV); Schwind, Gregg (CIV); Kidd-Miller, Allison (CIV)
Subject: RE: Amber Resources

I received and consulted with my clients regarding the proposed schedule you emailed me yesterday, April 11, at 1:59 p.m. With two exceptions, we are amenable to that proposed schedule. One exception relates to our request for the MMS Jalama Field reserve estimate, which is integral to the question of the total reserves on Lease 452. The other relates to the description in paragraph 1(a) of the documents to be produced regarding agreements among the lessees, which we have revised slightly.

This morning, I received your further revised proposed schedule, which you had emailed me after normal business hours last night. We cannot agree to the additional and substantial changes you propose to make.
The proposed change to paragraph 1 is inconsistent with the purpose of the schedule, which is to identify the scope and timing of the discovery on the issue of the purported drainage from Lease 0452. The second proposed change, to paragraph 1(h), would provide the government twice as much time for depositions as plaintiffs are being provided for their
own depositions pursuant to paragraph 1(f).

I have attached a revised version of your April 11, 1:59 p.m. proposed schedule, which is unchanged except for the two issues identified in the first paragraph of this email. The attached schedule is acceptable to the parties I represent.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Tuesday, April 11, 2006 1:57 PM

To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Thank you for your comments regarding our draft motion for entry of a scheduling order regarding the Lease 452 issue. Attached is a further revised schedule. Please advise me whether your clients consent to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060407.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

# Exhibit 12

## Cosgrove, Thomas

**From:** Rosenbaum, Steven
**Sent:** Thursday, April 13, 2006 4:06 PM
**To:** 'Gregg.Schwind@usdoj.gov'
**Cc:** Jeffrey Antonson (jantonson@jw.com)
**Subject:** RE: Amber Resources

**Attachments:** 2006-04-13 Proposed Schedule - SCRUBBED on 04-13-06 15_07.DOC; DVComparison_DC_2107087_1-DC_2107825_1.DOC

2006-04-13 roposed Schedule -. DVComparison_DC_2107087_1-DC_2...

The changes you indicated are acceptable. I have attached a revised version that incorporates them, as well as a Comparewrite that show the changes between the version I emailed yesterday at 1:46 p.m. and the attached version.

-----Original Message-----
From: Rosenbaum, Steven
Sent: Thursday, April 13, 2006 8:27 AM
To: 'Gregg.Schwind@usdoj.gov'
Subject: RE: Amber Resources

I will need to double check with my clients; I will get back to you later today.

-----Original Message-----
From: Gregg.Schwind@usdoj.gov [mailto:Gregg.Schwind@usdoj.gov]
Sent: Wednesday, April 12, 2006 5:22 PM
To: Rosenbaum, Steven
Subject: RE: Amber Resources

Steve:

Also realized the briefing dates in para 2 should be pushed back one week as well, to accommodate our changes to f, g, and h:

Sep 22 US supplemental brief

Oct 6 Plaintiffs' response

Oct 17 US reply

Please let me know if these changes present any problems. Otherwise, I intend to file tomorrow.

Gregg

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Wednesday, April 12, 2006 1:46 PM
To: McCarthy, Patricia (CIV); jantonson@jw.com
Cc: Tosini, Stephen (CIV); Schwind, Gregg (CIV); Kidd-Miller, Allison (CIV)
Subject: RE: Amber Resources

I received and consulted with my clients regarding the proposed schedule you emailed me yesterday, April 11, at 1:59 p.m. With two exceptions, we are amenable to that proposed schedule. One exception relates to our request for the MMS Jalama Field reserve estimate, which is integral to the question of the total reserves on Lease 452. The other relates to the description in paragraph 1(a) of the documents to be produced regarding agreements

among the lessees, which we have revised slightly.

This morning, I received your further revised proposed schedule, which you had emailed me after normal business hours last night. We cannot agree to the additional and substantial changes you propose to make.
The proposed change to paragraph 1 is inconsistent with the purpose of the schedule, which is to identify the scope and timing of the discovery on the issue of the purported drainage from Lease 0452. The second proposed change, to paragraph 1(h), would provide the government twice as much time for depositions as plaintiffs are being provided for their
own depositions pursuant to paragraph 1(f).

I have attached a revised version of your April 11, 1:59 p.m. proposed schedule, which is unchanged except for the two issues identified in the first paragraph of this email. The attached schedule is acceptable to the parties I represent.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Tuesday, April 11, 2006 1:57 PM
To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Thank you for your comments regarding our draft motion for entry of a scheduling order regarding the Lease 452 issue. Attached is a further revised schedule. Please advise me whether your clients consent to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060407.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006, defendant, the United States, respectfully submits the following proposed schedule regarding its

January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents reflecting **in whole of in part** any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any MMS reserve estimates for the Jalama Field, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July ~~15,~~**31,** 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before ~~July 31,~~**August 15,** 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before ~~August 15,~~**September 8,** 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September ~~15,~~**22,** 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by ~~September 29,~~**October 6,** 2006. The United States may file a reply brief by October ~~10,~~**17,** 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006

Attorneys for Defendant

Document comparison done by DeltaView on Thursday, April 13, 2006 3:08:24 PM

| **Input:** | |
|---|---|
| Document 1 | iManageDeskSite://CBDC/DC/2107087/1 |
| Document 2 | iManageDeskSite://CBDC/DC/2107825/1 |
| Rendering set | C&B |

| **Legend:** | |
|---|---|
| **<u>Insertion</u>** | |
| ~~**Deletion**~~ | |
| ~~Moved from~~ | |
| <u>Moved to</u> | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 7 |
| Deletions | 6 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 13 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER PERTAINING TO DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING LEASE OCS-P 0452**

Pursuant to the Court's direction following oral argument held on March 30, 2006, defendant, the United States, respectfully submits the following proposed schedule regarding its

January 19, 2006 motion for reconsideration of the Court's rescission of Lease OCS-P 0452. We have conferred with counsel for all plaintiffs in these consolidated actions, and counsel have advised us that all plaintiffs consent to the following proposed schedule:

1. In addition to the discovery contemplated by the Court's order of January 23, 2006, and subject to any claims of privilege, the parties may conduct discovery regarding the extent and effect of potential drainage of Lease OCS-P 0452 due to the activities of owners and/or operators of Lease OCS-P 0451, according to the following schedule:

a. On or before April 30, 2006, plaintiffs shall produce to the United States all documents reflecting in whole of in part any arrangements, understandings, or agreements between or among plaintiff Delta Petroleum Corporation, any other lease owner, and/or any unit operator related to the actual or potential drainage of oil underlying Lease OCS-P 0452 via drilling upon Lease OCS-P 0451.

b. On or before April 30, 2006, plaintiff Delta Petroleum Corporation shall produce to the United States all documents upon which Robert W. Mannon relied in forming the opinions expressed in his February 17, 2006 declaration.

c. On or before April 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation all reserve estimates and drainage estimates described in paragraph 8 of the January 19, 2006 Declaration of Drew Mayerson and any MMS reserve estimates for the Jalama Field, and the documents upon which the Minerals Management Service relied in determining any of those estimates.

d. On or before July 31, 2006, plaintiff Delta Petroleum Corporation and the United States may conduct depositions regarding the subjects described in subparagraphs 1(a) through (c).

e. On or before June 30, 2006, the United States shall produce to plaintiff Delta Petroleum Corporation any reserve estimates or drainage estimates not previously produced upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below, and the documents relied upon in determining those estimates.

f. On or before July 31, 2006, Plaintiff Delta Petroleum Corporation may conduct depositions regarding the materials set forth in subparagraphs 1(e).

g. On or before August 15, 2006, Delta Petroleum Corporation shall produce to the United States any analysis upon which it intends to rely in connection with the supplemental briefing described in paragraph 2 below that is responsive to the materials set forth in subparagraph 1 (e), and the documents relied upon in performing such analysis.

h. On or before September 8, 2006, the United States may conduct depositions regarding the materials set forth in subparagraph 1(g).

2. The United States shall file a supplemental brief regarding the pending motion for reconsideration by September 22, 2006. Plaintiff Delta Petroleum Corporation shall file a brief in response to the Government's supplemental brief by October 6, 2006. The United States may file a reply brief by October 17, 2006.

For these reasons, we respectfully request that the Court enter a scheduling order consistent with the proposed schedule set forth above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

ALLISON KIDD-MILLER
GREGG M. SCHWIND
STEPHEN C. TOSINI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 307-0164
Fax (202) 514-7969

April _, 2006

Attorneys for Defendant

# Exhibit 13

**Cosgrove, Thomas**

**From:** Gregg.Schwind@usdoj.gov
**Sent:** Thursday, April 13, 2006 5:34 PM
**To:** Rosenbaum, Steven
**Subject:** RE: Amber Resources

Thanks.

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Thursday, April 13, 2006 4:06 PM
To: Schwind, Gregg (CIV)
Cc: jantonson@jw.com
Subject: RE: Amber Resources

The changes you indicated are acceptable. I have attached a revised version that incorporates them, as well as a Comparewrite that show the changes between the version I emailed yesterday at 1:46 p.m. and the attached version.

-----Original Message-----
From: Rosenbaum, Steven
Sent: Thursday, April 13, 2006 8:27 AM
To: 'Gregg.Schwind@usdoj.gov'
Subject: RE: Amber Resources

I will need to double check with my clients; I will get back to you later today.

-----Original Message-----
From: Gregg.Schwind@usdoj.gov [mailto:Gregg.Schwind@usdoj.gov]
Sent: Wednesday, April 12, 2006 5:22 PM
To: Rosenbaum, Steven
Subject: RE: Amber Resources

Steve:

Also realized the briefing dates in para 2 should be pushed back one week as well, to accommodate our changes to f, g, and h:

Sep 22 US supplemental brief

Oct 6 Plaintiffs' response

Oct 17 US reply

Please let me know if these changes present any problems. Otherwise, I intend to file tomorrow.

Gregg

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Wednesday, April 12, 2006 1:46 PM
To: McCarthy, Patricia (CIV); jantonson@jw.com
Cc: Tosini, Stephen (CIV); Schwind, Gregg (CIV); Kidd-Miller, Allison (CIV)
Subject: RE: Amber Resources

I received and consulted with my clients regarding the proposed schedule you emailed me yesterday, April 11, at 1:59 p.m. With two exceptions, we are amenable to that proposed schedule. One exception relates to our

request for the MMS Jalama Field reserve estimate, which is integral to the question of the total reserves on Lease 452. The other relates to the description in paragraph 1(a) of the documents to be produced regarding agreements among the lessees, which we have revised slightly.

This morning, I received your further revised proposed schedule, which you had emailed me after normal business hours last night. We cannot agree to the additional and substantial changes you propose to make. The proposed change to paragraph 1 is inconsistent with the purpose of the schedule, which is to identify the scope and timing of the discovery on the issue of the purported drainage from Lease 0452. The second proposed change, to paragraph 1(h), would provide the government twice as much time for depositions as plaintiffs are being provided for their own depositions pursuant to paragraph 1(f).

I have attached a revised version of your April 11, 1:59 p.m. proposed schedule, which is unchanged except for the two issues identified in the first paragraph of this email. The attached schedule is acceptable to the parties I represent.

-----Original Message-----
From: Patricia.McCarthy@usdoj.gov [mailto:Patricia.McCarthy@usdoj.gov]
Sent: Tuesday, April 11, 2006 1:57 PM
To: jantonson@jw.com; Rosenbaum, Steven
Cc: Allison.Kidd-Miller@usdoj.gov; Gregg.Schwind@usdoj.gov; Stephen.Tosini@usdoj.gov
Subject: Amber Resources

Counsel:

Thank you for your comments regarding our draft motion for entry of a scheduling order regarding the Lease 452 issue. Attached is a further revised schedule. Please advise me whether your clients consent to this motion. Thank you.

The message is ready to be sent with the following file or link attachments:

060407.skedmot

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

# Exhibit 14

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,* <br> v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,* <br> v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ***************************************** | |

**OBJECTIONS TO DEFENDANT'S SUBPOENA ON ARGUELLO, INC.**

All Plaintiffs other than Nycal Offshore Development Corporation, and Arguello, Inc. (collectively, the "Objectors") hereby submit the following objections to the subpoena served by Defendant by email on May 16, 2006.

**OBJECTIONS**

1. The Objectors object to the subpoena in its entirety on the ground that it improperly seeks materials that are beyond the scope of discovery allowed by the parties' unopposed scheduling order filed on April 13, 2006 and adopted by the Court on April 20, 2006.

2. The Objectors object to the subpoena in its entirety on the ground that it is unduly burdensome and intrusive, and contravenes the Court's instruction to conduct "limited discovery."

3. The Objectors object to the subpoena on the ground that it seeks information which is immaterial, irrelevant, and which is not reasonably calculated to lead to the discovery of admissible evidence in the above-captioned litigation.

Respectfully submitted,

E. Edward Bruce
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
Attorneys for All Plaintiffs in Nos. 02-30C and 04-1822C and for Arguello, Inc.

May 27, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that on this 27th day of May, 2006, I caused to be delivered by electronic service, and by United States Mail, First-Class on the following business day, a copy of the foregoing

**OBJECTIONS TO DEFENDANT'S SUBPOENA ON ARGUELLO, INC.**

as follows:

Patricia M. McCarthy
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

Jeffrey D. Antonson
Jackson Walker, LLP
901 Main Street, Suite 6000
Dallas, Texas 75202

Thomas J. Cosgrove