**EXHIBIT 1**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Sr. Judge Eric G. Bruggink)

**DECLARATION OF RICHARD F. STRICKLAND**

RICHARD F. STRICKLAND makes the following declaration:

1. My name is Richard F. Strickland. I have been retained by the U.S. Department of Justice to offer expert opinions related to matters of petroleum reservoir engineering in

the above-styled case. The following statements are true and correct to the best of my knowledge and are based upon my personal knowledge.

## I. Professional Background

2. I am the President of The Strickland Group, Inc. TSG provides petroleum consulting services in the area of reservoir and geological engineering to oil and gas producers, pipeline companies, and other parties in the oil and gas industry. I have performed studies on fields throughout the United States, Eastern and Western Europe, the North Sea, the Middle East, North Africa, CIS countries, India, Indonesia, Central America, and South America. Specifically, I have performed a number of studies of the Monterey formation onshore and offshore California in the last 20 years.

3. I graduated from Texas A&M University with a B.S. degree in Petroleum Engineering in 1970. I received my M.Sc. and Ph.D. in Petroleum Engineering from Texas A&M in 1974 and 1976, respectively. After that time, I was an Associate Professor of Petroleum Engineering at Texas A&M for six years, teaching courses in petroleum and reservoir engineering and the numerical simulation of oil and gas reservoirs. I have also taught these same subjects in over 75 company-run or industry sponsored courses attended by reservoir engineers and geoscientists from practically every major oil company in the world. I also held the position of President of the petroleum consulting firm Reservoir Simulation Technologies, Inc., where I developed and marketed numerical models and performed reservoir and simulation studies in fields throughout the United States, the North Sea, and the Middle East. From 1982 to 2001, I consulted to the petroleum industry with Cawley, Gillespie and Associates and served as President of the firm for more than 11 years of that time.

4. I am a registered professional engineer in the state of Texas and a member of the National Society of Professional Engineers. I am a member of the Society of Petroleum Engineers and have held several positions at the national and local level. I have served as an officer and director of the Accrediting Board of Engineering and Technology, which accredits graduate and undergraduate engineering programs in the United States and have served on this board's Engineering Accreditation Commission, which is the only body that accredits such programs in the United States.

5. Over the past 20 years I have performed and supervised reservoir engineering and geological projects including field studies, economic evaluations, audits, and field unitizations. I have testified as a petroleum engineering expert before state regulatory commissions in Texas, Oklahoma, Arkansas, Alaska and Mississippi representing over 20 state and federal court proceedings in the United States and in similar proceedings in the United Kingdom, including international arbitration matters.

6. I have become personally familiar with Leases OCS-P 0451, 0452, and 0453 based upon review of materials by the MMS and Dr. Robert Mannon disclosed in the context of this lawsuit. I have also reviewed the declarations made by Dr. Mannon and Mr. Drew Mayerson in February and January respectively.

7. I make this declaration based on my personal knowledge and expert analysis.

## II. Summary and Conclusions

8. In his declaration of February 17, 2006, Dr. Mannon made four primary conclusions of a technical nature. For three of the conclusions, Dr. Mannon offers neither the raw data nor a description of his methodology. For the fourth conclusion, Dr.

Mannon does not provide the raw data and provides only a vague description of his methodology. Consequently, it is not possible for me evaluate effectively the technical assertions of Dr. Mannon.

9. The four technical conclusions offered by Dr. Mannon pertain to following:

- the presence of a geologic fault trending northwest and southeast located in the northwestern quadrant of OCS-P 0452, and the idea that the fault is sealing,[1]
- the amount of recoverable oil in OCS-P 0452 and 0453,
- the ultimate recovery of oil from the four wells drilled to OCS-P 0451, and
- the drainage from OCS-P 0452 as a result of this production.

10. Dr. Mannon states in paragraph 4 that his current statement is based upon additional work completed since the time I received the limited discovery from his files. More importantly, he explains that "[t]his additional review included well data from wells recently drilled on Lease OCS-P 0451, and resulting geological reinterpretations." These additional data are likely to bear on several of his conclusions. More to the point, they have not been made available to me.

11. It is not possible for me to evaluate effectively the conclusions of Dr. Mannon or to develop fully informed opinions about the quantity of drainage from OCS-P 0452 without access to data possessed by the operator of OCS-P 0451 which is more extensive and recent than that currently available through the discovery process and regulatory reporting. Fully informed response to these questions requires access to all the data collected in the area as well as the plans and interpretations of the operator.

[1] That is, that fluids may not flow through the fault plane from one side to the other.

**EXHIBIT 2**

**Kidd-Miller, Allison (CIV)**

**From:** Kidd-Miller, Allison (CIV)
**Sent:** Friday, May 26, 2006 6:14 PM
**To:** 'srosenbaum@cov.com'
**Cc:** 'jantonson@jw.com'; McCarthy, Patricia (CIV); Schwind, Gregg (CIV); 'tcosgrove@cov.com'
**Subject:** RE: Arguello, Inc. keeper of the records deposition

Dear Mr. Rosenbaum:

We are disappointed to have received your e-mail sent at 4:58 p.m. today, the Friday before the Memorial Day weekend, indicating your client's intention to file a motion to quash the subpoena compelling its appearance on Tuesday morning. Unless your client can convince the court to quash the subpoena over the long holiday weekend, or we can otherwise come to an agreement, your client is still compelled to appear at the deposition pursuant to the subpoena.

In response to your passively-worded inquiry, posed to us for the first time in your e-mail, we have no intention of withdrawing the subpoena, which is, as you know from the Strickland declaration, highly critical to the expeditious resolution of our motion for partial reconsideration as to Lease 452. As Dr. Strickland explained, "It is not possible for [him] to evaluate effectively the conclusions of Dr. Mannon or to develop fully informed opinions about the quantity of drainage from OCS-P 0452 without access to data possessed by the operator of OCS-P 0451 which is more extensive and recent than that currently available through the discovery process and regulatory reporting."

We are also disappointed that you failed to warn us of your client's intention to fail to appear at the duly-noticed deposition until close of business on the last business day before the deposition is scheduled to commence, and your belated warning was apparently only in response to my e-mail of this afternoon. You have left us with no choice but to hold your client fully accountable in court for our costs, as well as the unwarranted delay and disruption it has caused to the orderly resolution of our motion.

Allison Kidd-Miller, Trial Attorney
U.S. Department of Justice
Civil Division, National Courts Section
(202) 305-3020
Allison.Kidd-Miller@usdoj.gov

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Friday, May 26, 2006 4:58 PM
To: Kidd-Miller, Allison (CIV)
Cc: McCarthy, Patricia (CIV); Schwind, Gregg (CIV); tcosgrove@cov.com
Subject: Re: Bob Huguenard

Unless you agree to withdraw it, we will be filing a motion to quash the subpoena. You therefore should not travel to California.

Steven J. Rosenbaum
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-5568
(202) 778-5568 fax
srosenbaum@cov.com
www.cov.com

-----Original Message-----
From: Allison.Kidd-Miller@usdoj.gov <Allison.Kidd-Miller@usdoj.gov>

To: Rosenbaum, Steven
CC: Patricia.McCarthy@usdoj.gov <Patricia.McCarthy@usdoj.gov>; Gregg.Schwind@usdoj.gov <Gregg.Schwind@usdoj.gov>
Sent: Fri May 26 15:22:09 2006
Subject: RE: Bob Huguenard

Dear Mr. Rosenbaum:

Thank you again for agreeing to accept service of the subpoena duces tecum of the keeper of the records for Arguello, Inc. The deposition will go forward on Tuesday, May 30, 2006 at 9:00am at the United States Bankruptcy Court for the Central District of California, 1415 State Street, Santa Barbara, California. When we served the subpoena 10 days ago on May 16, you indicated that your client was not waiving objections. Having heard no objection, and given that it is now Friday afternoon before a long holiday weekend (as well as the last business day before the deposition), we look forward to deposing the custodian of the records of Arguello on Tuesday.

I will arrive in California on Monday evening. If either you or one of your colleagues needs to reach me, please try my cell phone at (540) 529-8764.

Allison Kidd-Miller, Trial Attorney
U.S. Department of Justice
Civil Division, National Courts Section
(202) 305-3020
Allison.Kidd-Miller@usdoj.gov

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Tuesday, May 16, 2006 3:42 PM
To: Kidd-Miller, Allison (CIV)
Cc: McCarthy, Patricia (CIV)
Subject: RE: Bob Huguenard

I received your voice mail message stating that, your email message below notwithstanding, June 6 is no longer acceptable to you for the Huguenard deposition. I will check whether the dates later that week that you suggested in your voice mail will work for us; and if not, will be back to you with alternative dates. I will also inquire as to dates for Bob Mannon's deposition, which you informed me today you wish to take.

As for the other matter you raised, Arguello, Inc., is a wholly owned subsidiary of plaintiff Plains Exploration and Production. I will accept service of the subpoena on Arguello's behalf. However, this should not be interpreted as an indication that we agree that such a subpoena complies with either the court rules or the judge's order, or a waiver of any objections.

-----Original Message-----
From: Allison.Kidd-Miller@usdoj.gov
[mailto:Allison.Kidd-Miller@usdoj.gov]
Sent: Monday, May 15, 2006 5:20 PM
To: Rosenbaum, Steven
Cc: Patricia.McCarthy@usdoj.gov
Subject: RE: Bob Huguenard

Dear Mr. Rosenbaum:

Thank you for your e-mail earlier today. I am writing to confirm Tuesday, June 6, 2006 for the deposition of Mr. Robert Huguenard. A conference room is available for our use at the United States Bankruptcy Court in Santa Barbara, which is approximately 70 miles from Orcutt. I will forward you a copy of the deposition notice tomorrow.

In addition, we will be serving Arguello, Inc. with a subpoena duces tecum and noticing a deposition of the custodian of records. Please advise as to whether you are counsel for Arguello, and whether you will accept service on its behalf.

Thank you,
Allison Kidd-Miller

Allison Kidd-Miller, Trial Attorney
U.S. Department of Justice
Civil Division, National Courts Section
(202) 305-3020
Allison.Kidd-Miller@usdoj.gov

-----Original Message-----
From: srosenbaum@cov.com [mailto:srosenbaum@cov.com]
Sent: Monday, May 15, 2006 1:34 PM
To: Kidd-Miller, Allison (CIV)
Cc: tcosgrove@cov.com
Subject: Bob Huguenard

I am responding to your voice mail message regarding the Government's desire to depose Mr. Huguenard, an employee of plaintiff Plains Exploration and Production Co., during the first week of June. I have made inquiries and determined that he would be available for deposition on Tuesday, June 6, at a location in the vicinity of Orcutt, California, the place of his employment.

Please confirm that date at your earliest convenience.

Steven J. Rosenbaum
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-5568
(202) 778-5568 fax
srosenbaum@cov.com
www.cov.com
This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**EXHIBIT 3**

# *UNITED STATES COURT OF FEDERAL CLAIMS*

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**SUBPOENA**

Nos. 02-30C
04-1822C &
05-249C (Consolidated)
(Senior Judge Bruggink)

To:

Custodian of the Records
Arguello, Inc.
c/o Steven J. Rosenbaum
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| United States Bankruptcy Court<br>1415 State Street<br>Santa Barbara, CA 93101<br>(805) 884-4800 | May 30, 2006<br>9:00 a.m. |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attachment.

| PLACE | DATE AND TIME |
|---|---|
| United States Bankruptcy Court<br>1415 State Street<br>Santa Barbara, CA 93101<br>(805) 884-4800 | May 30, 2006<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the dated and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. U.S. Court of Federal Claims rule (RUSCFC) 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if Attorney for Plaintiff or Defendant) | DATE |
|---|---|
| Allison Kidd-Miller<br>Attorney for Defendant | 5/16/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Allison Kidd-Miller, U.S. Department of Justice, Civil Division, 1100 L. Street, N.W., Suite 12004, Washington, DC 20530 (202) 305-3020

**NOTE: If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the Court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.**

## PROOF OF SERVICE

SERVED Date 5/16/06 Place Washington, DC

SERVED ON (Print Name) Steven J. Rosenbaum

MANNER OF SERVICE E-mail and Federal Express

SERVED BY (Print Name) Allison Kidd-Miller TITLE Trial Attorney

☐ Fees tendered for one day's attendance and mileage allowed by law.

(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 5/16/06
Date

Allison Kidd-Miller
Signature of Server

1100 L St., NW
Address of Server
Washington, DC 20530

RUSCFC 45, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph of (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, service upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iii) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**DEFINITIONS AND INSTRUCTIONS**

As used in the description of documents to be produced by Arguello, Inc. (Arguello) attached to this subpoena, the following terms have the following meanings:

1. The terms "you," "yourself," and "your" refer to Arguello and its predecessor, parent, and subsidiary companies, and includes present or former officers, employees, agents, attorneys or representatives and every person connected with Arguello in connection with the matter at issue in this action.

2. "Documents" refers to all writings, tapes, recordings, graphic representations, drawings or printed materials of any kind whatsoever, specifically including electronic media of any kind, however produced, or reproduced that are now or have ever been in your possession or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes, reports, presentations, studies, memoranda, electronic messages or mail, invoices, bills, written estimates, contracts, agreements of any kind, shipping or receiving documents, diagrams, drawings, designs, books, articles, or extracts from any of the foregoing, any drafts of the above, or any other tangible things containing information. If a document responsive to this subpoena was, but no longer is, in your possession and control, describe in detail the contents of the documents, its date of creation and disposition, and its present location and custodian.

3. "Relating to," "related to," and "relate to" mean containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, or in any way pertaining to the subject specified.

4. "Wells" refers to all wells drilled on OCS-P 452 or the eastern half of OCS-P 451.

5. "Tracts" refers to OCS-P 452 and the eastern half of OCS-P 451.

6. Paragraphs 1 through 9 of this request apply to documents created or modified between January 1, 1998 and the present. Paragraphs 10 through 15 of this request apply to documents created since the origination of leases OCS-P 452 and OCS-P 451.

7. Should you claim privilege for any documents requested, describe in detail those documents and indicate your claim of privilege and give the grounds upon which your claim of privilege rests.

**DOCUMENTS TO BE PRODUCED BY ARGUELLO**

1. All documents relating to:

   a. the nature, extent, and geological location of oil or gas on the Tracts, including oil/water contacts;

   b. the properties or characteristics of the producing formation or its fluids;

   c. the recoverable volumes underlying the Tracts;

   d. the anticipated recovery of oil or gas from any of the existing or proposed Wells on the Tracts;

   e. the cost, productivity and profitability of Wells which have been or might be drilled on the Tracts;

f. proposals, applications and approvals for all the Wells already drilled on the Tracts, and all end of operations reports;

g. proposals, applications, and plans for the possible future development plans or recovery from the Tracts; and

h. any aspect of other fields or reservoirs which are relied upon as analogies for the purpose of making the studies listed above.

2. All documents related to the choice of location and choice of completion design of existing and future potential Wells on the Tracts.

3. Any documents that refer or relate to drainage areas of individual Wells, or multiple Wells including but not limited to volumetric calculations, estimated ultimate recoveries, studies in analog fields, and decline curve analyses.

4. Any documents that relate to natural fractures or fracture systems within the Tracts or within analog fields.

5. A complete set of all current geologic maps for the Tracts, including but not limited to maps of well locations, structure, gross interval thickness, oil/water contacts, net pay thickness, and fault planes. .

6. All seismic data and interpretations on the Tracts or within a half-mile around the tracts including, among other things, the seismic volume, interpretations, final displays, seismic attribute volumes, synthetic

seismograms and seismic models, well trajectories, and well logs. To the extent that they exist, also provide any seismic project files.

7. All geologic models or simulation models related to the Wells or Tracts, including any documents about the same.

8. All summary documents reflecting the price received for the oil and gas produced by the Wells.

9. Summary data concerning monthly operating costs for the Wells.

10. All completion data and records for the Wells, including, but not limited to, the displacement and orientation of each existing or proposed wellbore, drill stem tests, wellbore diagrams, well daily drilling and completion reports, mud log, cuttings information, directional surveys, geo-steering reports, stimulation or fracture treatment reports, or other well information.

11. All openhole and cased well logs for the Wells with headings from surface through well total depth and all repeat formation tests for the Wells, including all documents related to the interpretation of well logs.

12. All core data and routine or special core analyses studies or reports, including, but not limited to, porosity, relative permeability, capillary pressure, and pore volume compressibility measurements for samples taken from the Tracts or from analog fields.

13. All fluid and gas analyses, studies, or reports for samples taken from the Tracts.

14. All documents relating to the production of oil, gas, and water by the Wells from date of first production, including, but not limited to, daily production reports.

15. All pressure data collected on the Wells, including, but not limited to, all pressure build-up and drawdown data, all static bottomhole pressure measurements, all flowing bottomhole pressure measurements (including gradient surveys), and all shut-in and flowing tubing pressure measurements and gradient surveys and all interpretations of the same.

**EXHIBIT 4**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Eric G. Bruggink)

**NOTICE TO TAKE DEPOSITION BY SUBPOENA**

Please take notice that pursuant to Rule 45 of the Rules of the United States Court of Federal Claims, the United States will take the deposition of the Custodian of Records for Arguello, Inc. upon oral examination before an officer authorized by law to administer oaths. The deposition will take place on Tuesday, May 30, 2006 at the United States Bankruptcy Court for the Central District of California at 1415 State Street, Santa Barbara, California, or such other location as may be agreed by the parties. The deposition will begin at 9:00 a.m., unless other arrangements are made.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

Allison Kidd-Miller
ALLISON KIDD-MILLER
STEPHEN C. TOSINI
GREGG SCHWIND
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 305-3020
Fax (202) 307-0972

May 16, 2006

Attorneys for Defendant