**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al*., | |
| *Plaintiffs*,<br><br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al*., | |
| *Plaintiffs*,<br>v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff*, | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |

**PLAINTIFFS' MOTION**
**FOR FINAL JUDGMENT UNDER RCFC 54(b)**

## INTRODUCTION

This lawsuit involves forty California Outer Continental Shelf ("OCS") leases. On October 31, 2006, this Court granted, in part, Plaintiffs' Motion for Partial Summary Judgment when it "reaffirm[ed] its November 15, 2005 opinion that Plaintiffs," including those "who are successors in interest to original lessees are entitled to seek full restitution of the amounts paid [in lease bonuses to the Government] up front because they 'stand in the shoes of their predecessors,'" October 31, 2006 slip op. at 16, quoting *Amber Resources Co. v. United States*, 68 Fed. Cl. 535, 560 (2005). In so doing, this Court rejected all of the defenses advanced by the Government with respect to restitution of these bonus monies. This Court has, accordingly, finally decided that "Plaintiffs are entitled to the return of $1,104,227,348 in damages as restitution for the bonus payments made for the breached leases." 68 Fed. Cl. at 560.[1]

In its October 31, 2006 opinion, this Court also granted in part the Government's cross-motion, holding that the return of the bonus monies is the sole remedy that Plaintiffs can obtain under restitution, and that their claim for "sunk costs" – the operating expenditures made by the Plaintiffs or their predecessors – could only be recovered as "reliance damages." Oct. 31, 2006 Opinion at 35. Further, the Court held "that if [Plaintiffs] elect reliance damages, they will forfeit their entitlement under the [November 15, 2005] ruling, as reaffirmed on October 31,

1 As explained below, this $1,104,227,348 covered thirty six of the forty lawsuit leases, including $91,986,800 for Lawsuit Lease OCS-P 452, which is not suitable for a final judgment at this time, but excluding the $142,623,902 that would be awarded to Plaintiffs as restitution of the bonuses paid for the four lawsuit leases (OCS-P 420, 424, 429, and 462) that the Mineral Management Service ("MMS") purported to terminate in August 1999, if the lessees are successful in their pending appeal of that termination to the Interior Board of Land Appeals ("IBLA").

2006 to recovery of all down payments [bonus monies] on a rescission theory and must establish recoverable damages under a reliance theory." *Id.*

By this motion under RCFC 54(b), all plaintiffs in Nos. 02-30C and 04-1822C[2] inform the Court that in light of these rulings, they elect restitution of the bonus monies that this Court has awarded to them.[3] Accordingly, and without waiving any appellate rights, Plaintiffs ask this Court to enter a final judgment under Rule 54(b) with respect to the restitution of the bonus monies paid for 35 of the forty lawsuit leases,[4] but not lawsuit Lease 452, as to which there is a pending Government motion regarding its owner's entitlement to full restitution, nor the four lawsuit leases that were purportedly terminated by MMS and are the subject of a pending appeal before the IBLA.

## ARGUMENT

Because of Lease 452 and the four "terminated" leases, a final judgment cannot be entered without recourse to Rule 54(b).[5] However, this Court has finally decided all of the

---

[2] The plaintiffs in Nos. 02-30C and 04-1822C are: Aera Energy LLC; Amber Resources Company; Anadarko E&P Company LP; Delta Petroleum Corporation; Devon Energy Production Company, L.P.; Noble Energy, Inc.; Ogle Petroleum Inc.; OLAC Resources, LLC; Plains Exploration & Production Co.; Poseidon Petroleum LLC; and Total E&P USA, Inc. For simplicity, these plaintiffs are referred to collectively as "Plaintiffs," and Nycal Offshore Development Corporation (the sole plaintiff in No. 05-249C) is identified separately as "Nycal."

[3] The election of restitution with respect to Lease OCS-P 452 is conditional, being based on the presumption that the Court will reject the Government's pending motion for reconsideration of the Court's order granting restitution of the bonus paid for that lease. If the Court were to grant that motion, the owner of that lease would then need to pursue other remedies.

[4] The thirty-five leases that are the subject of this Rule 54(b) motion are: OCS-P 210, 319, 320, 322, 323, 396, 397, 402, 403, 408, 409, 414, 415, 416, 421, 422, 425, 426, 427, 430, 431, 432, 433, 434, 435, 443, 445, 446, 449, 453, 460, 464, 499, 500, and 527.

[5] In the parties' November 28, 2006 Joint Response, plaintiff Nycal indicated that it is considering whether to join in the other plaintiffs' Rule 54(b) motion for final judgment. If it decides not to do so, then Nycal's status as a separate plaintiff may also necessitate a Rule 54(b) certification. *See Spraytex, Inc. v. DJS&T*, 96 F.3d 1377, 1382 (Fed. Cir. 1996) (treating (continued…)

issues associated with the Plaintiffs' claim for restitution for the remaining 35 lawsuit leases. The Court should grant the Plaintiffs' motion and make the "express determination that there is no just reason for delay and . . . an express direction for the entry of judgment" with respect to these thirty-five leases, *see* Rule 54(b).

This Court has "substantial discretion" to enter a Rule 54(b) certification, which will not be disturbed unless "clearly unreasonable." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001) (internal quotation marks omitted). "[W]hether to allow an interim appeal is best decided by the trial court," given that Rule 54(b) is designed to "allow[] the district court to control its docket." *Id.* (internal quotation marks and citation omitted).

There is a compelling case for entry of the Rule 54(b) judgment that Plaintiffs seek here. First, in cases, like this one, involving discrete parcels of property, each lease or contract for such parcels generates a distinct "claim" for purposes of Rule 54(b). *See Walker v. Maccabees Mut. Life Ins. Co.*, 753 F.2d 599, 601 (7th Cir. 1985) ("claims under separate contracts are separate claims for purposes of Rule 54(b)"); *Olin Corp. v. Ins. Co. of N. Am.*, 771 F. Supp. 76, 80 (S.D.N.Y. 1991) ("In a case such as this, which includes claims relating to various different [property] sites, it is appropriate to consider claims arising from each separate site to be separate 'claims' for purposes of Rule 54(b)"), *aff'd mem.*, 972 F.2d 1328 (2d Cir. 1992); *United States v. Kocher*, 468 F.2d 503, 509 (2d Cir. 1972) (agreeing with the position of the United States that each property against which the Government sought to foreclose tax liens

---

consolidated actions as one action for purposes of Rule 54(b)). There are no precedential Federal Circuit decisions addressing whether deconsolidation obviates the need for a Rule 54(b) certification.

constituted a separate claim for purposes of Rule 54(b), notwithstanding physical contiguity and a single lawsuit).

Thus, there are 35 claims for the 35 leases that have been fully resolved by this Court, and it can "direct the entry of a final judgment as to one or more, but fewer than all of the claims" in accordance with Rule 54(b).

It is similarly easy – indeed Plaintiffs suggest it is compelling – for this Court to make the finding under Rule 54(b) that "there is no just reason for delay." Here, a Rule 54(b) judgment is necessitated by the unresolved status of the four terminated leases and Lease 452. While the status of Lease 452 may be determined by this Court in the foreseeable future when it decides the Government's motion for reconsideration regarding the alleged drainage of that tract, the situation with respect to the four terminated leases is quite different.

The operators of those leases filed an appeal with the IBLA challenging that termination in October 1999, more than seven years ago. After procedural wrangling between the owners of those leases and the Department of the Interior, there was finally a trial before an administrative law judge ("ALJ") that was completed in June 2005. However, under IBLA procedures, the lessees do not know whether – and if so, when – the ALJ has made his proposed findings and forwarded them to the IBLA for its review, *see* 43 C.F.R. 4.436 (2005). Moreover, even if that were known, there is no way of predicting when the IBLA will finally decide the appeal.

If that appeal is decided in favor of the lessees, they would be immediately eligible for an award of restitution for the full amount of the bonus monies paid for the four leases. If not, Plaintiffs would have the opportunity to seek judicial review in a federal district court of the IBLA's decision, adding many months – if not years – to the process.

Each of the owners of the four terminated leases also holds interests in one or more of the 35 leases that would be the subject of any appeal of the Rule 54(b) judgment. The same is true of Lease 452. Accordingly, both the owners of the five leases that are not the subject of the Rule 54(b) final judgment sought in this motion and the United States will be precluded from re-litigating any issues that the Federal Circuit may decide before there is a final judgment as to these five leases. *See* Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."); *see, e.g., Banner v. United States*, 238 F.3d 1348 (Fed. Cir. 2001).[6]

---

[6] If Nycal decides not to join in this Rule 54(b) motion and pursues an expectation damages claim (*but see* note 3 *supra*), the situation may be different with respect to that company, which has a small (4.25313%) interest in two of the thirty five leases (as well as in one of the four "terminated" leases). However, the Government will be bound by collateral estoppel as to any issue resolved adversely to it in the Plaintiffs' appeal, and Nycal would be confronted by a strong argument of *stare decisis* if it sought to re-litigate the restitution issues decided by the Federal Circuit. Notably, Nycal has not advanced any arguments of its own with respect to any of the restitution issues presented in the motions for summary judgment in this case, choosing instead to join in the positions articulated by Plaintiffs. In the first round of summary judgment motions, Nycal neither filed a brief nor presented any oral argument. *See* March 8, 2005 Summary Judgment Oral Argument Hearing Transcript at p. 147 (counsel for Nycal choosing to stand on the record presented by counsel for Plaintiffs). In the second round of summary judgment motions, Nycal submitted a two-page brief joining in the arguments presented by Plaintiffs (*see* Nycal's May 15, 2006 Memorandum), and declined to present any argument at the July 10, 2006 oral argument, stating, "I think [counsel for Plaintiffs] has covered everything." July 10, 2006 Hearing Transcript at p. 78. Nycal's $880,610 restitution claim for the two leases in which it has an interest represents only 0.08% of the Court's November 15, 2005 restitution award, *see* December 20, 2005 Joint Status Report.

These facts, coupled with the impact of a delay in entering a more than $1 billion judgment for the eleven plaintiffs joining in this motion, until Nycal and the United States litigate Nycal's expectation damages case, assuming that it elects to proceed with that case, provide sound justification for this Court to issue the Rule 54(b) certification that Plaintiffs seek here, especially given that the Rule explicitly contemplates a final judgment as to fewer than all parties. *See Curtis-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 & n. 2 (1980); *W.L.Gore &*
(continued…)

In these circumstances, not only is there "no just reason for delay" in entering the final judgment that Plaintiffs seek now, but delaying the entry of that judgment until the final resolution of the IBLA appeal would be unjust by any measure.

As this Court pointed out in its October 31, 2006 opinion, "the Government's actual benefit [from the leases] is not even fully reflected in the return of the down payments, as it does not account for the Government's interest-free use of the funds for over 20 years." Opinion at p. 16. Unless this Court grants the Plaintiffs' Rule 54(b) motion, and thereby does not make recovery of the more than $1 billion in bonus monies contingent upon a final resolution of the status of the four terminated leases, the Government would continue to enjoy, for perhaps years, interest-free use of these monies. In these circumstances, it is hard to imagine a stronger case under Rule 54(b) for a finding that there is "no just reason for delay" in the entry of a judgment on some, but not all, claims.

## CONCLUSION

For the reasons stated above, this Court should grant Plaintiffs' motion for entry of a final judgment under Rule 54(b). A proposed Order is attached.[7]

---

*Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 864 (Fed. Cir. 1992); *Walker*, 753 F.2d at 601.

[7] In the parties' December 20, 2005 Joint Status Report, they set forth the exact dollar amounts owed each lessee in restitution of the bonuses paid for thirty six lawsuit leases (*i.e.*, for all lawsuit leases exclusive of the four "terminated" leases). Final judgment should accordingly be entered in the amounts set forth with respect to each Plaintiff in that Report, except that the amount set forth with respect to plaintiff Delta Petroleum Corporation should be reduced by the $91,986,800 bonus paid for Lawsuit Lease OCS-P 452, which is owned 100% by Delta, and which is not suitable for a final judgment at this time for the reasons discussed *infra*.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove

E. Edward Bruce
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
Gina L. Paik
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568
Attorneys for All Plaintiffs in Nos. 02-30C and 04-1822C

November 29, 2006