IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMBER RESOURCES COMPANY., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

ANADARKO E&P COMPANY, L.P., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

NYCAL OFFSHORE DEVELOPMENT CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Nos. 02-30C
04-1822C
05-249C (Consolidated)
(Senior Judge Bruggink)

**DEFENDANT'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

Pursuant to Rule 26(b)(1), Rule 37(a)(2), and the Court's September 12, 2007 opinion and order, the United States respectfully requests that the Court deny plaintiffs' motion for protective order and compel the requested discovery related to the issues identified by the Court for trial. As demonstrated below, plaintiffs' motion is an exercise in hyperbole bearing no

relation to the small number of very targeted document requests that will permit completion of trial preparation. Plaintiffs likely expended far more time and effort to prepare their 18-page motion and 61-page appendix of resistance than they would have spent had they complied with our surgical document request. Moreover, we have clarified and narrowed the one request (Request No. 8) that was, we concede, inadvertently broad; this removes the potential for any undue burden upon plaintiffs in responding to the request.

**BACKGROUND**

On August 7, 2007, the Court expressed its intent to issue an order on the Government's motion for reconsideration that would set forth the issues presented for trial. ("I've already granted the motion for reconsideration to the extent that I allowed the government to make these arguments.") The Court further stated that it would conduct a trial to resolve two disputed issues. First, the volume of oil drained from under Lease OCS-P 0452 is relevant to Delta's ability to obtain rescission and restitution. Second, the Court ruled that it would "want to make definitive fact rulings" on the question of what motivated Delta to use its 100 percent ownership interest in Lease OCS-P 0452 to develop adjacent Lease OCS-P 0451. The Court noted, "[I]f it were to turn out that the plaintiff was motivated to any significant extent by a desire to generate production off 452 . . . then I think that it really wouldn't matter what the actual production ended up being." Under this second scenario, the Court agreed with the Government that Delta's conduct in using Lease OCS-P 0452 would constitute an election of remedies – and therefore a bar to rescission and restitution – regardless of the actual amount of oil depleted from the lease. The Court identified these same two issues in its September 12, 2007 opinion and order.

Plaintiffs admit that we alerted the Court and opposing counsel at the close of the August 7 hearing that we would seek a small amount of additional document discovery into the facts

disputed by the parties. Counsel did not object to additional discovery. On September 10, 2007, we served a document request on plaintiffs' counsel, seeking what we expect to be a small number of documents related to (1) the most up to date production data and maps from the operator (and plaintiff) Plains for Leases OCS-P 0451 and 0452; and (2) Delta's motivation in using its ownership of Lease OCS-P 0452 to bring about the development of Lease OCS-P 0451. Plaintiffs' counsel first contacted counsel for the United States on September 24, 2007, stating that he did not know whether plaintiffs would agree to the additional discovery and asking if the United States would consider limiting its request. Our position was that the request was already limited because it targeted almost exclusively a small number of Delta documents. We also advised counsel that if any of the requests were burdensome – which counsel did not assert – we could discuss a limitation on the subject matter. Plaintiffs' counsel ended the brief conversation by stating that he would contact his clients and advise what documents they would voluntarily produce. At no time during this discussion did counsel disclose that plaintiffs were contemplating (or had prepared) a motion for protective order, nor did counsel reveal the bases for the protective order now recited for the first time in the motion.[1] Plaintiffs filed their motion the next day, contending for the first time that compliance with the document request is "unduly burdensome" and will take away any "reasonable prospect of a trial in 2007." Pl. Mot. at 12.

As explained below, plaintiffs' motion greatly exaggerates the limited scope of the document requests, and we have agreed to narrow the one request that could be considered overly broad.

---

[1] For these reasons, the certification in plaintiffs' motion that "movants have in good faith conferred to resolve the matters in dispute in this motion but such efforts were not successful," Pl. Mot. at 1 n.1, is incorrect and not in accordance with the rules of this Court. Had counsel done so, we would have quickly resolved the "undue burden" alleged in the motion with respect to Request No. 8.

## ARGUMENT

### I. The Discovery Request Is Neither Late Nor Otherwise Procedurally Barred

Plaintiffs make a number of procedural objections to avoid producing the requested documents. First, plaintiffs argue that any discovery violates the October 5, 2006 scheduling order limiting discovery in the absence of a further order of the Court. Pl. Mot. at 8-9. Yet this order was superseded by the Court's January 3, 2007 scheduling order incorporating the parties' December 22 agreement that (in view of a large number of late-produced documents from Plains and Delta) "Defendant does not concede that it is foreclosed from seeking further discovery in connection with its motion for partial reconsideration of this Court's November 15, 2005 Order granting partial summary judgment, and Plaintiffs do not concede that any future discovery would be proper." Thus, the agreed-upon restriction on discovery no longer exists.

The October 5 scheduling order was also mooted by the Court's September 12, 2007 opinion and order opening the matter for reconsideration. The parties' understanding at all times was that prior discovery was limited to determining if there were genuine issues of material fact suitable for a trial on the merits. Now that the Court has answered this question in the affirmative, additional discovery is appropriate, particularly the limited document discovery we now seek.

Plaintiffs also contend in their motion that the United States had an opportunity to request, and therefore should have requested, the documents sooner than September 10, 2007. Of course, this response does not dispute the relevance and importance of the documents, or suggest that the production per se would be unduly burdensome. In any event, plaintiffs' contention is not accurate.

To date, plaintiffs have refused and objected to nearly every element of every discovery request with respect to the Government's motion for reconsideration.[2] This steadfast strategy of refusal has resulted in the reduction, compromise, and even elimination of those requests down to documents that in no way represent all materials relevant to the dispute. Again, all discovery that has taken place has been in the context of whether there were genuine issues of material fact related to drainage from and remaining reserves on Lease OCS-P 0452. Moreover, the Court was somewhat skeptical of the Government's assertions in its original motion for reconsideration, and did not seem willing to grant the parties wide-open discovery. For these reasons, we deemed it wise to compromise our requests and still obtain sufficient materials to surmount the hurdle of demonstrating that disputed material facts exist with respect to Lease OCS-P 0452. Now that the Court has determined that there are issues of material fact and that a trial is necessary with respect to the volume of drainage and Delta's knowledge, there is no reason to arbitrarily limit our narrow discovery request, as plaintiffs argue, to documents that expressly mention the word "drainage."

Plaintiffs' assertion that their prior production of "drainage" documents is sufficient misses the scope of the fact questions to be tried and the evidence relevant to those questions. To be sure, the volume of drainage is critical to the first issue identified by the Court. However, to determine the significance of drainage, the Court must also evaluate the remaining reserves on Lease OCS-P 0452. And the question of Delta's motivation in bringing about the development of Lease OCS-P 0451 cannot be answered fully until we are provided access to the information

[2] See, e.g., 5/27/06 Mot. to Quash Def's Subpoena on Arguello, Inc.; 10/30/06 Mot. to Compel Prod. of Documents; and 11/29/06 Mot. to Compel Add'l Discovery Based Upon Newly-Produced Documents. In addition, every negotiated modification to the Court's original Lease OCS-P 0452 scheduling order was preceded by a refusal to comply with some or every aspect of the discovery requested by the Government in the first place.

Delta possessed when it made that development possible. For example, a request limited to the express mention of the word "drainage" would not have disclosed the Authorizations for Expenditure sent from Plains to Delta showing the well bores going right up to the lease boundary. See, e.g., U.S. Supp. Br., Ex. 33 at ARGUELLO-00268 and Ex. 34 at ARGUELLO-00362. These documents illustrate imminent drainage to any reasonably prudent oil and gas company asked to authorize the drilling.

For these reasons, plaintiffs' argument that we could have and should have requested these documents sooner disregards the limited discovery in this case to date, the fact issues identified by the Court, and the potential for Delta to hide its true motivation in agreeing to – and profiting from – the drainage of Lease OCS-P 0452 via the development of Lease OCS-P 0451.

## II. Requests From Plains As Operator Of Leases OCS-P 0451 And 0452

The document request seeks a very small amount of current data from the operator Plains. Specifically, Request Nos. 9 and 10 ask for production data and the most current set of geologic maps for Leases OCS-P 0451 and 0452. Partial production data has now been provided – simultaneously with the motion for protective order – but only through July 2007. We assume that plaintiffs will supplement this production.

The geologic maps that plaintiffs refuse to produce are three blueprint-sized color diagrams showing the structures within the three primary layers (zones) in the reservoirs where oil is expected to reside. To comply with this request, a Plains geologist or technician need only open up the three maps on a computer and click on the "print" button. The most recent maps produced by Plains to the Government date back over 16 months to June 2006. Structural maps for Leases OCS-P 0451 and 0452 are critical to showing the extent of and potential barriers within the reservoirs whose drainage and reserves are in dispute in this case, namely the Rocky

Point Field (the main structure that spans the boundary between Leases OCS-P 0451 and 0452) and the Jalama Field (the other viable field on Lease OCS-P 0452). We know from our experts that an operator often updates its maps in light of the most current production data, seismic interpretations, and well data. We expect – and plaintiffs do not deny – that Plains has updated its maps over the past 16 months. For these reasons, and given that plaintiffs have not asserted that the maps are irrelevant or that the production of current maps would be unduly burdensome, plaintiffs should be directed to provide this minimal production.

## III. <u>The Document Requests Are Not Unduly Burdensome Or Otherwise Objectionable</u>

With one exception, the remaining requests seek documents that are or ever were in Delta's possession at the times relevant to the Government's motion for reconsideration. Obviously, Delta's knowledge and intent would be formed by the information it had available to it when, for example, entering into the agreements with Plains to permit the development, representing its position to the State of California and Santa Barbara County, and agreeing to the well placements. The relevance and limited scope of each request is self-evident.

First, we seek any documents from Delta not produced to date that relate to the development of Leases OCS-P 0451 and 0452. Because this request targets Delta only, and Delta was merely a participant in the funding of the development (as opposed to the operator Plains who was charged with obtaining necessary permits, drilling the wells, and carrying out day to day platform/pipeline/refinery operations), this request will likely only result in a small number of documents. To avoid redundancy with earlier requests limited to "drainage," this request applies only to documents that have not yet been produced in this litigation.

Second, we have requested all correspondence, to the extent not produced to date, between (1) Delta and Plains/Arguello; (2) Delta and former operator Whiting; and (3) Plains

and Whiting related to the development of the leases. Again, Delta would have relied upon this type of information when deciding whether to agree to and support the development that has drained Lease OCS-P 0452.

Third, we have asked Plains and Delta to produce all documents, to the extent not produced to date, provided to state and county officials related to the development of the leases. This information is important because, as noted in documents by the California Coastal Commission and Santa Barbara County, resolution of the drainage issue was critical to their approval of the project. We also know that Plains, primarily through project manager Bob Huguenard and outside consultant John Peirson, were able to quell state and county drainage concerns by supplying the letter from Delta agreeing – as sole owner of Lease OCS-P 0452 – to waive any rights it had to develop Lease OCS-P 0452 as a result of cross-lease drainage. See U.S. Supp. Br., Ex. 18.

Fourth, we have now asked plaintiffs to produce complete documents previously produced only in partial form. This request applies mainly to development presentations provided by Plains to Delta showing the operator's expectations with respect to the project. While these excerpted materials were in fact produced in accordance with an agreement between the parties, it is reasonable now to insist upon complete copies of the documents in preparation for trial and in accordance with the rules of this Court. See Rule 34(b) (documents shall be produced "as they are kept in the usual course of business"). Because plaintiffs have already produced parts of these larger documents, compliance with this additional production will certainly not entail any significant time or effort.

Plaintiffs current complaint that the complete presentations should remain hidden from production because they contain "confidential forward-looking business plans" makes no sense

in litigation, such as here, where the parties can designate materials to be kept confidential under a protective order. In fact, the vast majority of the materials produced by plaintiffs have borne the "protected" legend; there is no reason why plaintiffs are unable to do the same with respect to the disputed presentations.

Fifth, we seek any unproduced documentary support for the central claim by the operator Plains that "A conservative 1 to 2 MMBO of tract 452 reserves could be recovered by 451 wells." This statement is obviously critical to the actual volume of drainage because Plains, as operator, was in the best position to estimate recovery of reserves from both leases. The statement is also indicative of Delta's knowledge and intent in using its ownership of Lease OCS-P 0452 to bring about the development of Lease OCS-P 0451.

Finally, we request all documents not produced to date showing reserve estimates, fracture orientation, fracture density, bulk rock volume, and recovery factor, to the extent the documents relate to the reservoirs on Leases OCS-P 0451 and 0452. Generally speaking, oil drains from rock under Lease OCS-P 0452 into the wells on Lease OCS-P 0451 via a network of intersecting fractures; the volume of oil recovered per unit of rock volume (also known as recovery factor) depends on a number of variables including fracture intensity and how the fractures are oriented within the rock. Experts for both parties have relied upon this type of information in estimating drainage and remaining reserves on the lease.

Plaintiffs argue that this request more than any other endangers the trial date because "Plains alone has estimated that it may take hundreds of hours to review its files" in order to respond. Pl. Mot. at 12-14. Without agreeing with this estimate, we agree to modify this request to apply only to Delta.[3] Plaintiffs are correct that Plains, the operator, may have a significant

---

[3] Had plaintiffs conferred and raised the undue burden argument prior to filing their

volume of technical and other documents responsive to the request. Delta, in contrast, will have relatively few documents because it is only a working interest owner in the leases. Plaintiffs have not claimed that the request would work an undue burden as applied only to Delta.

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiffs' motion and permit the limited discovery identified in our September 10, 2007 request.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Gregg M. Schwind
GREGG M. SCHWIND
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-2345

September 28, 2007

Attorneys for Respondent

---

motion, we would have quickly recognized that the request was incorrectly worded. Thus, this objection was resolvable without motions practice. Given the Court's focus on Delta's knowledge and intent, we always intended that this element of the document request apply only to Delta, but inadvertently omitted this qualifying phrase from the document request.