# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY,<br>*et al*., | |
| *Plaintiffs*,<br><br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| ANADARKO E & P COMPANY L.P.,<br>*et. al*., | |
| *Plaintiffs*,<br><br>v. | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff*, | |
| v. | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ****************************************** | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

Plaintiffs Delta Petroleum Corporation ("Delta") and Plains Exploration and Production Company ("Plains") respond briefly to the Government's opposition to their Motion

for a Protective Order with Respect to Defendant's Fourth Consolidated Request for the Production of Documents (the "Motion").

1. *The Government's Mistaken Notion of Two-Phase Discovery.* The Government's attempt to take extensive new discovery -- in the form of eleven separate document requests -- is predicated on the startling notion that, once the Court has identified a triable issue of fact, a new round of discovery commences. The Government claims that "[t]he parties' understanding at all times was that prior discovery was limited to determining if there were genuine issues of material fact suitable for a trial on the merits." (Gov't Opp. 4).

To the contrary, there was never any mention, much less any "understanding" between the parties, that discovery in this case would proceed backwards, with discovery going to disputes of fact occurring only if and when the case was slated for trial. Certainly, plaintiffs did not undertake the more than eleven months of discovery with any idea that there would be such a second phase.

The Government's notion of discovery being triggered by the identification of a dispute of fact is fundamentally contrary to the basic structure of litigation in this and every other court. Parties engage in discovery up to the discovery cutoff date, after which they may choose to seek to have the case resolved on summary judgment without a trial, or go directly to trial. The discovery period provides the opportunity for the parties to develop facts that they may use in summary judgment papers, or at trial if summary judgment is not sought or the Court in reviewing summary judgment papers identifies a genuine dispute of material fact, as happened here.

Parties are thus fully expected to plan and execute their discovery plans with the very real possibility in mind that the Court might, after reviewing the arguments advanced in any

motions for summary judgment, decide to hold a trial. Indeed, the Government's summary judgment papers themselves argued for just such a trial. (*See* April 27, 2007 Gov't Supp. Br. 25).

The Government claims that it "deemed it wise to compromise on our requests and still obtain sufficient materials to surmount the hurdle of demonstrating that disputed material facts exist with respect to Lease OCS-P 0452." (Gov't Opp. 5). But that is nothing more than an admission that the Government could have sought broader discovery, but chose not to. Delta and Plains should not have to pay the price for the Government's 11th hour attempt to revise its discovery strategy.

Moreover, the Government's characterization of the discovery process to date is quite misleading. According to the Government, "[t]o date, plaintiffs have refused and objected to nearly every discovery request with respect to the Government's motion for reconsideration. This steadfast strategy of refusal has resulted in the reduction, compromise, and even elimination of [our requests]." (Gov't Opp. 5). The record in fact reveals that virtually every discovery-related issue has been resolved amicably between the parties: only once has the Court been called upon to issue an order with respect to a contested discovery issue, and that occurred at the very beginning of the discovery process, *see* Plaintiffs' Motion at 3 - 7.

2. *The Government's Assertion that there is No Discovery Cutoff Date.* The Government's assertion that the October 5, 2006 Scheduling Order was superseded entirely by the January 3, 2007 Scheduling Order, leaving the case without a discovery cutoff date, is unreasonable. (*See* Gov't Opp. 4). The October 5, 2006 Scheduling Order set forth that "**absent extraordinary cause and a further order of the Court, there shall be no other discovery amongst the parties or of any third party**. . . ." (*See* October 4, 2006 Defendant's Unopposed

Motion for Further Modification of Scheduling Order at para. 1(e) (Ex. 5 to Cosgrove Decl.); October 5, 2006 Order (adopting proposed schedule) (Ex. 6 to Cosgrove Decl.)). Pursuant to the mandate of the October 5, 2006 Order, on December 22, 2006, the parties submitted a joint motion to permit further, limited discovery. (*See* December 22, 2006 Corrected Joint Motion for Entry of Scheduling Order (Ex. 8 to Cosgrove Decl.)) Contained in that joint motion was the following "reservation of rights" language at paragraph 8:

> By entering into this agreement, Defendant does not concede that it is foreclosed from seeking further discovery in connection with its motion for partial reconsideration of this Court's November 15, 2005 Order granting partial summary judgment, and Plaintiffs do not concede that any future discovery would be proper.

This paragraph is the sole basis upon which Government relies in arguing that there is no longer a discovery cutoff date in this case. But the paragraph clearly was intended to preserve the Government's right to "*seek*" permission *from the Court* to pursue additional discovery, as required by *the express requirements of the October 5, 2006 Order*. The Government never met this obligation.

3. *The Breadth of the New Discovery*. The Government grossly understates the breath of the new discovery it now seeks, which includes, *inter alia*: "*all documents*" in the custody of Delta related to Leases 0451 or 0452, *regardless of subject matter* (Request no. 1); "*all correspondence*" between Delta, Plains, and Whiting related to Leases 0451 or 0452, *regardless of subject matter* (nos. 2, 5, and 6); and "*all documents*" transmitted to or received from local government authorities with respect to Leases 0451 or 0452, *regardless of subject matter* (no. 3). These requests seek from Delta every single document pertaining to Lease 0451 and 0452, and a significant number of completely irrelevant documents from Plains.

Thus, even with the Government limiting one specific request (no. 8) to Delta (*see* Gov't Opp. 9 - 10), and even if the requests had been served during the discovery period, they are burdensome and overbroad. These are not a "small number of very targeted document requests" (Gov't Opp. 2), and the Government's suggestion that Delta and Plains "likely expended far more time and effort to prepare [our] 18-page motion and 61-page appendix . . . than [we] would have had [we] complied with our surgical document request" (*id.)* is without basis.

4. *The Inflated Importance of the Government's New Discovery*. The Government vastly overstates the importance of its new discovery, and fails entirely to explain why it was not sought during 2006. For instance, the Government notes the importance of "calculating the remaining reserves on Lease OCS-P 0452." (Gov't Br. 5). But this is *not a new issue.* In Delta's February 21, 2006 Opposition to Defendant's Motion for Reconsideration, Delta expressly noted that --

> while the Government's filing purports to estimate the amount of drainage that will occur from [Lease 0452], the Government never introduces any evidence regarding the total oil reserves on Lease OCS-O 0452 . . . . Without such information, it is impossible to evaluate whether the Lease will remain in "substantially" its original condition. Thus, the Government's motion fails for want of essential proof.

(February 21, 2006 Opposition to Gov't Mot. for Part. Reconsideration, at 3). It is inexplicable for the Government to claim now, almost two years later, that it should be allowed to take new discovery on the issue of reserves. In any event, as explained in the Motion, thousands of pages of documents have been exchanged between the parties with respect to the issue of reserves in connection with expert discovery. (*See* Pls.' Mot. 10 n.4). Moreover, as explained in Plaintiffs' Motion, the Government has always understood the importance of "intent" and has been taking

intent-related discovery all along. (*See* Pls.' Mot. 11 - 12). This same point applies to the other subjects raised in the Government's Request no. 8.

In arguing for expanding the scope of discovery on the cusp of trial, the best that the Government can do is trot out the reddest of herrings. In its effort to disparage the adequacy of discovery to date, the Government argues that it would never have known about the placement of the proposed wells on the eastern half of Lease 0451 had they not been disclosed in Authorizations for Expenditure that had been authored by Plains and produced by Delta. (*See* Gov't Opp. 5 - 6). With all due respect, this is factually baseless. The development plans that Plains submitted in order to obtain approval to drill the wells explicitly listed their distance from the lease line (*see* Revisions to the Point Arguello Field DPPs Eastern Half of Lease OCS-P 0451, Supporting Information Volume, Reservoir Evaluation, p. 9 (submitted by Plains to MMS on February 12, 2003)), as did other pre-drilling correspondence with MMS, *see* Reply Ex. 2 (October 4, 2002 fax from Plains to MMS).

5. *The Government's Attempt to Renege on its Agreement*. The Government concedes that the relevant portions of certain large presentations were produced by plaintiffs in accordance with an agreement that had been reached amongst the parties, which was incorporated into the December 22, 2006 Corrected Joint Motion for Entry of Scheduling Order. (Gov't Opp. 8 - 9). As explained in Plaintiffs' Motion, this agreement sensibly limited the production of voluminous Power Point presentation documents to those portions relevant to the drainage issue. (*See* Pls.' Mot. 14 - 15).

The Government provides no explanation for its attempt to renege on its agreement, except to say that production of the entirety of the Power Point presentations now would be "reasonable." But the rationale for the parties' agreement to limit the production was,

on its face, reasonable. And, the discovery process depends the ability of parties to resolve disputes voluntarily without court intervention. The Court should not facilitate post-hoc departures from that practice.

6. *The Meet-and-Confer Process.* There is no basis for the Government to contest that plaintiffs' counsel conferred in good faith with respect to this discovery depute. On September 24, 2007, plaintiffs' counsel contacted Government counsel and asked if the new round of documents requests could be limited or scaled back in any way. Government counsel responded "no." Plaintiffs were entitled to file the instant motion.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568

October 2, 2007

Attorneys for Delta Petroleum Corporation and Plains Exploration and Production Company