IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMBER RESOURCES COMPANY., et al.,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |
| ANADARKO E&P COMPANY, L.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 02-30C<br>04-1822C<br>05-249C (Consolidated)<br>(Senior Judge Bruggink) |
| NYCAL OFFSHORE DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | |

**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE**

Pursuant to Rule 26(b)(1) and Rule 37(a)(2), the United States respectfully requests that the Court order plaintiff Plains Exploration & Production Company ("Plains") to produce nine documents withheld from production on the asserted basis of attorney-client privilege. The documents in question relate to the central issues in the upcoming trial in this case, namely

whether plaintiffs Plains and Delta Petroleum Company ("Delta") have depleted oil reserves on Lease OCS-P 0452 by the development of adjacent Lease OCS-P 0451.

We request that the Court review the documents in camera to determine the validity of Plains' assertions of privilege. As described below, Plains has erroneously claimed the attorney-client privilege over documents that do not contain or reveal confidential client information or communications conveyed to a lawyer for the purpose of obtaining legal advice. The Court's consideration of the nine challenged documents would not interfere with the conduct of trial in this case.

**BACKGROUND**

By order dated January 3, 2007, the Court adopted the parties' proposed schedule for additional discovery necessitated by plaintiffs' November 17, 2006 production of documents. In its order, the Court directed the parties to produce all documents responsive to three targeted requests on or before January 19, 2007.

On that date, plaintiffs produced over 500 pages of responsive documents. However, plaintiffs also provided a privilege log listing 23 responsive documents that were withheld from production on the basis of attorney-client privilege. See Ex. 1. Thereafter, we requested that plaintiffs provide a more detailed description of the documents to allow counsel to assess the validity of the privilege. Plaintiffs refused, claiming that their document descriptions were adequate.

In accordance with Rule 37(a)(2)(B), we have conferred with plaintiffs' counsel in an attempt to obtain the discovery without Court intervention. Over the course of negotiating a trial schedule, we notified plaintiffs that we were contemplating a motion challenging the assertion of privilege with respect to nine of the withheld documents. We further requested that plaintiffs

reexamine the nine documents and either produce the documents or confirm their decision to withhold the documents from production. Plaintiffs refused to withdraw any of the privilege assertions, and this motion ensued.

**LEGAL STANDARDS FOR ATTORNEY-CLIENT PRIVILEGE**

The attorney-client privilege protects communications between the client and its attorney made for the purpose of obtaining legal advice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); In re EchoStar Comm. Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006). The party withholding a document from production bears the burden of establishing the elements of its privilege claim. Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484 (2000); In re Sealed Case, 737 F. 2d 94 (D.C. Cir 1984). The privilege applies only to confidential communications between a client and counsel – acting as counsel – made for the primary purpose of obtaining legal assistance. AAB Joint Venture v. United States, 75 Fed. Cl. 432, 446-47 (2007); Energy Capital, 45 Fed. Cl. at 484-85; B.E. Meyers & Co. v. United States, 41 Fed. Cl. 729, 731 (1998) ("The privilege attaches to communications made by a client . . . to an attorney outside the presence of third parties for the purpose of securing legal services.").

Courts strictly construe assertions of privilege "because privileges impede full and free discovery of the truth." Energy Capital, 45 Fed. Cl. at 484. Only a client request for legal advice – as opposed to business advice – triggers the attorney-client privilege. Id. at 485. With respect to corporate communications, the privilege shields only "communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." Id. (citing In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d Cir.1984)) (emphasis added). "Information does not become privileged simply because it came from counsel, and when documents or conversations are created pursuant to business matters, they must be

disclosed." Id. (citing Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993)).

Federal courts routinely conduct in camera review of withheld documents to establish the requirements for the application of privilege. See, e.g., United States v. Zolin, 491 U.S. 554, 568-69 (1989); Dairyland Power Co-op v. United States, 77 Fed. Cl. 330, 339, 342-44 (2007)[1]; Chevron U.S.A. v. United States, 76 Fed. Cl. 442 (2007); Scholl v. United States, 69 Fed. Cl. 395, 396 (2005); First Heights Bank v. United States, 46 Fed. Cl. 312, 315 (2000). In this case, in camera review is necessary given Plains's clipped, conclusory descriptions of the documents in the privilege log; none of plaintiff's descriptions provides counsel or the Court sufficient objective facts to establish the validity of the asserted privilege. However, the limited information included in the log, together with facts discerned from produced documents strongly suggest that none of Plains's assertions of attorney-client privilege is valid.

**ARGUMENT**

The bases for our challenge to Plains' assertions of privilege are provided below document by document. Generally, Plains has claimed privilege over materials that relate to business and technical matters, in this case Plains/Arguello's plan to drill development wells on the eastern half of Lease OCS-P 0451. The materials in all likelihood contain neither a request for legal advice to a company lawyer that communicates confidential information, nor legal advice from a company lawyer. The positions of the authors, recipients, and copyees of each of

[1] The Court in Dairyland Power, 77 Fed. Cl. at 339, noted that Rule 26(b)(5) "anticipates that the required descriptions of the documents over which a privilege has been asserted 'should reduce the need for in camera examination of the documents.'" Here, however, Plains failed to describe the documents in a manner that would permit other parties or the Court to assess the validity of the asserted privilege. RCFC 26(b)(5). Thus, in camera review of the documents is warranted. Moreover, given that our challenge is limited to nine documents, it would not make sense for plaintiffs to provide the Court only a representative sampling.

the documents are set forth in the following table. Of all the senders and recipients, only Gregg Maynard works as an attorney for Plains/Arguello.[2]

| Person | Position Within Plains/Arguello |
|---|---|
| Bob Huguenard | Project Manager, Point Arguello |
| Tom Gladney | Project Manager, Point Arguello |
| David Rose | Supervisor, Environmental Safety & Regulatory Compliance |
| Jim Rumsey | Vice President, Land Development |
| Gregg Maynard | In-House Counsel |
| John Peirson | Environmental Consultant, Marine Research Specialists, Inc. |
| Tom Goeres | Unknown (non-lawyer) |
| Gary Hertfelder | Drilling Engineer / Petroleum Engineer |

The documents in dispute were identified in response to our request for "all documents making reference to potential or actual drainage of hydrocarbons from Lease OCS-P 0452 from drilling activity on and/or production from Lease OCS-P 0451." Plains, as operator of Leases

[2] Plains contends in its privilege log that David Rose is also an attorney. See Ex. 1. This is misleading. Mr. Rose apparently has a law degree, but his position is listed on various documents as "Supervisor, Environmental, Safety & Regulatory Compliance" and "Manager." See Ex. 2.

OCS-P 0451 and 0452, was acting as agent for Delta and the other working interest owners at the time the documents were written. Accordingly, the materials are potentially critical to the primary issues identified by the Court for trial.

1. October 5, 2002 e-mail from Bob Huguenard to Gregg Maynard and David Rose, with copies to Tom Gladney and Jim Rumsey. Based upon plaintiffs' description, this e-mail does not appear to contain a request for legal advice at all, as it was sent to non-lawyers Rose, Gladney, and Rumsey. At best, the document appears to be part of a business discussion among employees of Plains/Arguello about its plan to contract the eastern half of Lease OCS-P 0451 from the Rocky Point Unit in order to develop the lease. The inclusion of in-house counsel (Mr. Maynard) as one of the participants in a purely or chiefly business matter does not automatically render the e-mail privileged. Energy Capital, 45 Fed. Cl. at 484-85.

2. October 7, 2002 e-mail from Mr. Huguenard to Messrs. Gladney, Maynard, and Rose, with copy to Mr. Rumsey. Again, based upon plaintiffs' description, this e-mail does not appear to contain a request for legal advice, as it was sent to non-lawyers Rose, Gladney, and Rumsey. The document appears to be part of the continuing discussion of the business plan to contract the eastern half of Lease OCS-P 0451 from the Rocky Point Unit in order to develop the lease.

3. October 5, 2002 e-mail from Mr. Gladney to Messrs. Huguenard, Maynard, and Rose, with copy to Mr. Rumsey. Given the author and the recipients, it is again unlikely that this e-mail contains any request for legal advice that transmits confidential information. Instead, the

message from Gladney appears to be part of the continuing business discussion among Plains executives related to the development of the eastern half of Lease OCS-P 0451.

4. October 31, 2002 e-mail (and attachment) from Mr. Rose to Messrs. Rumsey, Gladney, and Huguenard, with copy to Mr. Maynard. This e-mail was written by a non-company lawyer to Plains/Arguello executives with only a courtesy copy provided to in-house counsel. The limited description of the document suggests the subjects of the e-mail are business and technical matters related to the planned development of Lease OCS-P 0451.

5. October 31, 2002 e-mail from Mr. Rumsey to Messrs. Gladney, Huguenard, and Rose, with copy to Mr. Maynard. This e-mail appears to respond to the above e-mail of the same date, and only includes a company attorney as a copyee. This suggests that the e-mail provides another comment from an executive on the planned development of Lease OCS-P 0451, a purely business matter, and does not contain any request for legal advice.

6. February 12, 2003 e-mail (with attachment) from Mr. Rose to Messrs. Maynard, Rumsey, and Huguenard. This e-mail is authored by a non-company lawyer and only includes a lawyer among a number of recipients. Thus, the e-mail likely does not contain protected legal advice. In addition, the e-mail coincides with the submission of Plains/Arguello's Revised DPP to develop the eastern half of Lease OCS-P 0451, a purely business matter unprotected by any privilege. See U.S. Supp. Br., Ex. 24.

7. Undated memorandum from Mr. Huguenard to Messrs. Gladney, Rumsey, Maynard, Rose, and Peirson. This document was authored by project manager Huguenard, and only included in-house counsel among the five recipients. This suggests that the document does not contain a request for legal advice, but instead relates only to Plains/Arguello's business plan to develop the eastern half of Lease OCS-P 0451. Also, the document was sent to John Peirson, an outside environmental consultant who is not a company employee. For this reason, the document cannot be privileged.

8. December 19, 2002 e-mail from Mr. Rose to Mr. Goeres. This e-mail was neither authored nor received by a company lawyer. In any event, the subject matter appears to relate only to business and technical matters, namely the company's plan to develop the eastern half of Lease OCS-P 0451. Under these circumstances, the document is not protected by attorney-client privilege.

9. December 5, 2002 e-mail from Mr. Peirson to Messrs. Rose, Hertfelder, Goeres, and Huguenard, with copy to Messrs. Maynard and Gladney. This e-mail is authored by outside environmental consultant John Pierson; by definition it cannot contain a request for legal advice from the client to a lawyer. Also, the document was sent to non-lawyers with only a courtesy copy provided to in-house counsel Maynard. Once again, the timing, subject matter, and recipients of the document (including a petroleum engineer) suggest it relates only to purely business and technical matters, in this case the plan to develop Lease OCS-P 0451. Accordingly, the document is not protected by attorney-client privilege.

## CONCLUSION

For these reasons, we respectfully request that the Court (1) order the production of the challenged documents to the Court for in camera inspection; (2) find that the documents are, in fact, not privileged; and (3) order their production to the United States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Gregg M. Schwind
GREGG M. SCHWIND
ALLISON KIDD-MILLER
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-2345
Fax: (202) 514-8624

October 10, 2007

Attorneys for Defendant