# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY,<br>*et al.*, | |
| *Plaintiffs,*<br><br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| ANADARKO E & P COMPANY L.P.,<br>*et. al.*, | |
| *Plaintiffs,*<br>v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ***************************************** | |

**OPPOSITION TO THE GOVERNMENT'S MOTION TO COMPEL THE PRODUCTION OF NINE DOCUMENTS WITHHELD ON GROUNDS OF ATTORNEY-CLIENT PRIVILEGE**

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND AND LEGAL STANDARD ........ 2

ARGUMENT ........ 5

I. The Government's Motion is Untimely. ........ 5

II. The Privilege Logs Adequately Describe the Privileged Documents. ........ 8

III. David Rose is an Attorney for Plains/Arguello. ........ 9

IV. The Involvement of a Consultant to Plains/Arguello Does Not Vitiate the Privilege. ........ 12

V. There Is No Basis for an *In Camera* Review. ........ 15

VI. A Brief Discussion of Individual Documents. ........ 17

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9 (D.D.C. 1998) .......... 11, 12

*Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993) .......... 8, 9

*Buttler v. Benson*, 193 F.R.D. 664 (D. Colo. 2000) .......... 5, 6

*Celgene Corp. v. Centocor, Inc.*, No. CIV. A. 03-5978, 2006 WL 305431 (E.D. Pa. Feb. 8, 2006) .......... 5, 6

*Coleman v. Am. Broad. Co.*, 106 F.R.D. 201 (D.D.C. 1985) .......... 11

*Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395 (N.D. Tex 2006) .......... 6

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) .......... 9, 12, 13

*First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (Ct. Fed. Cl. 2000) .......... 2, 8

*Flynn v. Health Advocate, Inc., No. Civ.A.03-3764*, 2005 WL. 288989 (E.D. Pa. Feb. 8, 2005), *aff'd*, 169 Fed. Appx. 99 (3d Cir. 2006) .......... 6

*Francois v. Washmonbo, Inc.*, No. 05-23368-CIV, 2007 WL. 1322311 (S.D. Fla. 2007) .......... 7

*Genentech, Inc. v. United States International Trade Commission*, 122 F.3d 1409 (Fed. Cir. 1997) .......... 13

*In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994) .......... 13, 15

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) .......... 16

*In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996) .......... 2

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) .......... 2, 12

*In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) .......... 2

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) .......... 17

*Koch v. Convenience Industry Associates LLC*, No. 1:05-cv-1753-LJM-WTL, 2007 WL. 2901128 (S.D. Ind. Mar. 6, 2007) .......... 6

*Neuder v. Battelle Pac. Northwest National Laboratories*, 194 F.R.D. 289 (D.D.C. 2000) .........11

*Nortel Networks Ltd. v. SMC Electrics*, No. CIV-06-787-C, 2007 WL. 1959281 (W.D. Okla. Jun. 29, 2007) ........................................................................................................5, 6

*Norton v. City of Marietta, Okla.*, 432 F.3d 1145 (10th Cir. 2005) ..............................................10

*Shearing v. Iolab Corp.*, 975 F.2d 1541 (Fed. Cir. 1992) ...............................................................3

*United States v. AT&T*, 86 F.R.D. 603 (D.D.C. 1979) .....................................................................2

*United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) ......................8

*United States v. Zolin*, 491 U.S. 554 (1989) .....................................................................................15

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ..........................................................................2

**STATE CASES**

*Caldwell v. District Court*, 644 P. 26 (Colo. 1982) .........................................................................16

**RULES**

Fed. R. Civ. P. 37….. ...........................................................................................................5, 6

RCFC 37….. ...........................................................................................................................6

## INTRODUCTION

The Government waited over nine months — until after the Court's resolution of the summary judgment motions; after the Court's setting of a trial date; and after the final pre-trial conference — to challenge the withholding of nine documents set forth on privilege logs served on the Government back on January 19, 2007. Under numerous precedents, a discovery motion filed under such circumstances is untimely and should be denied on that ground alone.

Furthermore, the Government's motion is substantively without merit, largely because it is based on false premises. The Government's most critical erroneous assertion is that Plains Exploration & Production Company employee David Rose is not an attorney for the company. That assertion is demonstrably wrong, and ignores both the information set forth on the privilege logs themselves and our efforts to correct the Government's misimpression in communications immediately preceding the filing of the Government's motion.

The Government has also asserted, without support, that only "conclusory details" were provided with respect to the documents on the privilege logs. To the contrary, the privilege logs are entirely sufficient under applicable case law.

Finally, with respect to two of the nine documents at issue, the Government is incorrect as a matter of law in contending that a consultant's participation in these two communications vitiates the privilege.

In light of the failings of the Government's motion, there is no basis for the Court to undertake an *in camera* review of the privileged documents at issue. Indeed, given the specific challenges the Government has raised, it has fallen well short of the legal standard for *in camera* review.

## BACKGROUND AND LEGAL STANDARD

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," existing "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal quotation marks and citation omitted); *see also In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) ("maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice"), quoting *In re Regents of the University of California*, 101 F.3d 1386, 1387 (Fed. Cir. 1996).

Because "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting though the facts with an eye to the legally relevant," *Upjohn*, 449 U.S. at 390–91, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice," *id*. at 390; *see also Shearing v. Iolab Corp.*, 975 F.2d 1541, 1546 (Fed. Cir. 1992) ("the privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling").[1]

[1] "[I]t is not necessary that the party invoking the privilege expressly request confidential legal assistance when that request is implied." *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 315 (2000); *see also In re Spalding Sports Worldwide, Inc*., 203 F.3d at 806 (citing *In re Sealed Case*, 737 F.2d 94, 102 (D.C. Cir. 1984)). More specifically, where "the context of the conversation" makes "it . . . apparent that [the client] sought [the attorney's] professional advice," an express request is not necessary. *In re Sealed Case*, 737 F.2d at 102 (citing *United States v. AT&T*, 86 F.R.D. 603, 624 (D.D.C. 1979) ("The fact that a communication from a client to an attorney did not specifically include a request for legal advice or assistance does not preclude its being privileged, if the information reasonably could be foreseen to be relevant to future advice or assistance.").

Plains' subsidiary Arguello, Inc. served the Government with its first privilege log on November 21, 2006, which it supplemented on January 19, 2007, the same date Plains served its privilege log. These privilege logs provided detailed information on each withheld document, including date, author(s), recipients and copyee(s), and a description of the individual document. Counsel for the Government states that it informally "brought up" certain concerns about these privilege logs in February 2007,[2] but did not even follow up with a letter, much less a motion to compel. As the months passed and the case moved on, the Government would appear to have concluded that there was no basis to challenge Plains' and Arguello's privilege logs and assertions of privilege.

More than nine months later, the Government filed the instant motion to compel, seeking the *in camera* review of nine documents. These documents were described in Plains' and Arguello's privilege logs (Exhibit 1 to the Government's motion to compel) as follows, with the logs noting that an asterisk indicated that sender, recipient, or copyee is an attorney):

---

2 *See* Cosgrove Declaration submitted herewith, Ex. 2 thereto.

| No.[3] | Date | Author(s) | Recipient(s) | Copied To | Title | Brief Description | Type of Privilege |
|---|---|---|---|---|---|---|---|
| 1 | 10/5/2002 | Bob Huguenard | Gregg Maynard * David Rose * | Tom Gladney Jim Rumsey | E-mail | E-mail to counsel seeking legal advice regarding removal of Lease OCS-P 0451 from the Rocky Point Unit. | Attorney-client |
| 2 | 10/7/2002 | Bob Huguenard | Tom Gladney Gregg Maynard * David Rose * | Jim Rumsey | E-mail | E-mail to counsel seeking legal advice regarding the development of Lease OCS-P 0451. | Attorney-client |
| 3 | 10/5/2002 | Tom Gladney | Bob Huguenard Gregg Maynard * David Rose * | Jim Rumsey | E-mail | E-mail to counsel seeking legal advice regarding the development of Lease OCS-P 0451. | Attorney-client |
| 4 | 10/31/2002 | David Rose * | Jim Rumsey Tom Gladney Bob Huguenard | Gregg Maynard * | E-mail with attachment | E-mail from counsel conveying legal advice regarding development of Lease OCS-P 0451 and federal OCS well spacing regulations. | Attorney-client |
| 5 | 10/31/2002 | Jim Rumsey | Tom Gladney Bob Huguenard David Rose * | Gregg Maynard * Jim Rumsey | E-mail | E-mail to counsel seeking legal advice regarding development of Lease OCS-P 0451. | Attorney-client |
| 6 | 2/12/2003 | David Rose * | Gregg Maynard * Jim Rumsey Bob Huguenard | n/a | E-mail with attachment | E-mail from counsel conveying legal advice regarding Santa Barbara County permitting | Attorney-client |

[3] This list is numbered to correspond with the Government's list of documents beginning on page 6 of the motion to compel.

| No.[3] | Date | Author(s) | Recipient(s) | Copied To | Title | Brief Description | Type of Privilege |
|---|---|---|---|---|---|---|---|
| | | | | | | issues. | |
| 7 | undated | Bob Huguenard | Tom Gladney<br>Jim Rumsey<br>Gregg Maynard *<br>David Rose *<br>John Peirson | n/a | Memo | Memorandum to counsel seeking legal advice regarding development of Lease OCS-P 0451 and related permitting issues. | Attorney-client |
| 8 | 12/19/2002 | David Rose * | Tom Goeres | n/a | E-mail | E-mail from counsel conveying legal advice regarding development of Lease OCS-P 0451. | Attorney-client |
| 9 | 12/5/2002 | John Peirson | David Rose *<br>Gary Hertfelder<br>Tom Goeres<br>Robert Huguenard | Gregg Maynard *<br>Tom Gladney | E-mail | E-mail to counsel requesting legal advice regarding development of Lease OCS-P 0451 and *Norton* litigation. | Attorney-client |

## ARGUMENT

### I. The Government's Motion is Untimely.

"Although Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made clear that a party seeking to compel discovery must do so in a timely fashion." *Nortel Networks Ltd. v. SMC Elecs.*, No. CIV-06-787-C, 2007 WL 1959281, at *1 (W.D. Okla. June 29, 2007) (citing cases); *accord, e.g.*, *Celgene Corp. v. Centocor, Inc.*, No. CIV. A. 03-5978, 2006 WL 305431, at * 1 (E.D. Pa. Feb. 8, 2006) (denying motion to compel as untimely); *Buttler v. Benson*, 193 F.R.D. 664, 665-66 (D.

Colo. 2000) (same).[4] "Once, as here, a party registers a timely objection to [a] requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute waiver of discovery violations." 2007 WL 1959281, at 1.

Although the Government here had identified purported deficiencies in the privilege logs by at least February 2007, *see* p. 4, *supra*, it waited for nine months, until after summary judgment motions were filed and resolved; after the trial date was set; and after the pre-trial conference was held; to file its motion to compel. Numerous courts have denied motions to compel as untimely under comparable circumstances. *See, e.g., Buttler*, 193 F.R.D. at 666 (denying motion as untimely when filed after the pretrial conference and less than two months before the start of trial); *Celegene*, 2006 WL 305431, at * 1 (motion to compel untimely when "Plaintiff was aware of the deficiencies it considered in Defendant's production of documents and corporate designee testimony many weeks, if not months, prior to the filing of their Motion to Compel"); *Nortel Networks*, 2007 WL 1959281, at * 1-2 (motion to compel untimely when filed two months before trial date and six weeks after dispute arose); *Koch v. Convenience Indus. Assocs. LLC*, No. 1:05-cv-1753-LJM-WTL, 2007 WL 2901128, at * 1 (S.D. Ind. Mar. 6, 2007) (motion to compel untimely when, *e.g.*, it was filed more than four months after the discovery responses at issue were served).

Some courts look to the discovery cutoff date, deeming motions to compel untimely if filed thereafter. *See*, *e.g.*, *Days Inn Worldwide*, *Inc. v. Sonia Investments*, 237 F.R.D. 395, 397-98 (N.D. Tex 2006) (compiling numerous cases); *Flynn v. Health Advocate*, *Inc.*, No.

---

4 Fed.R.Civ.P. 37 and RCFC 37 are substantively identical for purposes relevant to this motion.

Civ.A.03-3764, 2005 WL 288989, at *8 (E.D. Pa. Feb. 8, 2005) ("no excuse" for filing motion to compel three months after discovery cutoff date with respect to purported deficiencies identified a month before the cutoff), *aff'd*, 169 Fed. Appx. 99 (3d Cir. 2006); *Francois v. Washmonbo, Inc*,, No. 05-23368-CIV, 2007 WL 1322311, at *3 (S.D. Fla. May 4, 2007) (motion to compel filed after discovery cutoff denied in light of failure to state any good cause for delay).

Here, the Court's October 5, 2006 Order set a deadline of October 11, 2006 for the production of documents, required that depositions be completed by January 5, 2007, and provided that "absent extraordinary cause and a further order of the Court, there shall be no other discovery amongst the parties or of any third party regarding the Government's Motion for Reconsideration of the Court's Rescission of Lease OCS-P 0452 dated January 19, 2006 . . . ." (*See* October 4, 2006 Defendant's Unopposed Motion for Reconsideration Regarding Lease OCS-P 0452; *granted by* October 6, 2006 Order). The parties later stipulated to certain additional "limited discovery," under which plaintiffs agreed to provide limited categories of documents responsive to new document requests by January 19, 2007, with additional depositions by February 23, 2007; the October 6, 2006 Order otherwise remained in effect. (*See* December 22, 2006 Corrected Joint Motion for Entry of Scheduling Order, ¶¶ 1 - 2, 4; *granted by* January 3, 2007 Scheduling Order).[5]

The Government's motion was filed months late and should be denied as untimely, as were the motions filed in all of the cases cited *supra*.

---

[5] In addition, the Court's March 7, 2007 Scheduling Order provided for limited additional expert discovery through April 13, 2007.

## II. The Privilege Logs Adequately Describe the Privileged Documents.

A privilege log should "'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" *United States v. Constr. Prods. Research, Inc*., 73 F.3d 464, 473 (2d Cir. 1996) (internal citation omitted). This Court's application of this general standard in *First Heights Bank, FSB v. United States* is instructive. 46 Fed. Cl. 312 (2000). There, the privilege log was sufficiently detailed to justify the claim of attorney-client privilege when the documents were "characterized as memos and reports giving legal advice" and "identified by author, addressee, and date." *Id.* at 315. Moreover, this Court noted that the majority of the documents identified in the privilege log were "either authored by or addressed to . . . counsel" actively representing the client. *Id.*[6]

Here, the privilege log entries are at least as detailed, if not more so. Each entry clearly indicates that the communication was authored by or sent to an attorney and describes the subject matter of the document. To the extent that the descriptions may seem redundant, this is because the correspondents were often discussing the very same topics over extended periods of time. In such a case, it obviously would be expected that the "brief description" would remain constant.

---

[6] In contrast, courts have held privilege logs insufficiently detailed to establish the attorney-client privilege where, for example, a log entry merely identified a document as a "[h]andwritten note" about a "'Proxy Statement'" with no reference to any request or provision of legal rights, *see Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993), or merely stated "Summary of Enclosures" with comment "Self-Explanatory," *see Construction Products Research*, 73 F.3d at 473–74.

The descriptions contained in the privilege logs were clearly sufficient. Indeed, it would be impossible to provide significantly greater detail without compromising the privileged communications themselves.

## III. David Rose is an Attorney for Plains/Arguello.

David Rose, a Plains/Arguello employee, was listed on both privilege logs, and clearly identified as an attorney for the company on each. *See* pp. 5-6, *supra*.

Since the privilege log was served over nine months ago in January 2007, the Government did not ask a single question during depositions, or otherwise pursue any discovery whatsoever, with respect to Mr. Rose's educational background, membership in the Bar, or his function at Plains/Arguello. Rather than developing any evidence that might support its position, the Government purports to challenge Mr. Rose's status as an attorney solely by referencing the results of a Google search, and focusing on the wording of Mr. Rose's job title. (Gov't Br. 5.)

As explained in detail in his attached sworn declaration,[7] Mr. Rose is a member of the California bar and was acting as an attorney for Plains/Arguello with respect to the Rocky Point project and the communications at issue in this motion.[8]

Mr. Rose graduated from the Santa Barbara College of Law in December, 1996, was admitted to the California bar in June, 1997, and has remained a member in good standing of the California bar ever since. (Rose Decl. ¶ 2.) After being hired in 1999 as a supervisor in Arguello's Environmental, Safety, and Regulatory Compliance department, Arguello Offshore

---

[7] The factual basis for asserting the attorney-client privilege can be supplemented through the submission of declarations. *See, e.g., Energy Capital Corp, v. United States*, 45 Fed. Cl. 481, 492 (2000); *Bowne*, 150 F.R.D. at 474 (additional information establishing the attorney-client privilege may be "supplied by affidavit").

[8] We attempted without success to correct the Government's misimpression to the contrary prior to its filing the instant motion, *see* Cosgrove Decl., Ex. 1.

Vice President Robert Huguenard began requesting that Mr. Rose assist him by providing legal advice pertaining to California and federal regulatory issues. (*Id.* ¶ 3.)

In 2000, in light of the increasing frequency with which Mr. Huguenard was calling on Mr. Rose for legal advice, the arrangement that Mr. Rose would function as an attorney was formalized with Plains' office of the general counsel in Houston, Texas. (*Id.* ¶ 4.) Plains' Houston office recognized the advantages of having an attorney in California, and Mr. Rose was authorized to provide legal advice to Mr. Huguenard and other Arguello or Plains employees. (*Id.*) It was understood and agreed that Mr. Rose would consult with Plains' attorneys in Houston as needed for guidance and supervision. (*Id*.)

After receiving authorization to function as an attorney for Arguello, Mr. Rose was called upon to provide legal advice on a regular basis. (*Id.* ¶ 5.) For instance, Mr. Rose was routinely asked to provide a legal review of contracts that Arguello was in the process of negotiating with parties such as contractors and suppliers. (*Id.*)

Particularly in the 2002 to 2003 time frame, Mr. Rose was asked to provide legal advice with respect to two related issues in connection with Arguello's efforts to obtain the federal and local permits necessary to develop the eastern half of Lease OCS-P 0451 following the decision in *Norton v. City of Marietta, Okla.*, 432 F.3d 1145 (10th Cir. 2005). (*Id.* ¶ 6.) First, Santa Barbara County had raised the issue of possible drainage from Lease 0452 to Lease 0451, and Mr. Rose was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the issues surrounding such possible drainage. (*Id.*) Second, in connection with MMS's suggestion that the eastern half of Lease OCS-P 0451 might be removed from the Rocky Point Unit to facilitate the approval of its development permit, Mr.

Rose was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the de-unitization issues. (*Id.*)

In the course of providing such legal advice, Mr. Rose was involved in high level discussions and correspondence with Arguello and Plains management, including Plains Vice President Tom Gladney and Mr. Huguenard. Were it not for the fact that he was providing legal advice with respect to the drainage and de-unitization issues, Mr. Rose would not have been included in such high-level discussions. (*Id.* ¶ 7.)

Mr. Rose has personally confirmed that for each document withheld on grounds of privilege with respect to which he was the sender or recipient and whose production is now sought by the Government, he was providing or being requested to provide legal advice. (*Id.* ¶ 8.)

Mr. Rose's communications qualify under the attorney-client privilege because "[c]ommunications made by and to in-house lawyers [from] representatives of [a] corporation seeking and obtaining legal advice may be protected by the attorney-client privilege just as much as communications with outside counsel." *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998); *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000) ("the attorney-client privilege applies to 'in-house' counsel just as it would to any other attorney").[9]

The Government's unsupported assertion that Mr. Rose could not be an attorney for the company because of his title as "supervisor" (Gov't Br. 5) is mistaken. The applicability

[9] The touchstone for determining the applicability of the privilege is whether the employee sought to "secure[e] legal advice" from the in-house lawyer. *Coleman v. Am. Broad. Co.*, 106 F.R.D. 201, 205-06 (D.D.C. 1985). "The mere fact that business considerations are weighed in the rendering of legal advice [by an in-house lawyer] does not vitiate the attorney-client privilege." *Id.*

of the attorney-client privilege turns on the nature of the communications with the attorney, and not on the attorney's job title. An in-house lawyer's service as a company Vice-President "does not dilute the privilege." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Similarly, a memorandum prepared by the company's "Vice-President for Taxes" (who was a lawyer) was privileged because it memorialized the attorney's legal advice. *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d at 11-12.

As clearly articulated in Mr. Rose's declaration, with respect to the Rocky Point project, and the specific documents at issue here, he was acting as an attorney, and the documents at issue were properly withheld as privileged.

## IV. The Involvement of a Consultant to Plains/Arguello Does Not Vitiate the Privilege.

With respect to two entries on the privilege log, the Government asserts that the presence of a consultant to Plains/Arguello (John Peirson, an environmental and permitting consultant) compromises the attorney-client privilege. The Government's position is not consistent with governing precedent.

In *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 490-491 (2000), Chief Judge Damich found that third parties (such as outside consultants) may in appropriate circumstances be included as part of a corporate client for purposes of applying the attorney-client privilege. The Chief Judge relied on one of the leading commentaries on the attorney-client privilege, observing:

> When . . . third parties have an established working relationship with the corporate client that is similar to that of regular employees, they should be treated like regular employees [for purposes of the attorney-client privilege.]

*Energy Capital Corp*, 45 Fed. Cl. at 490 (quoting Paul R. Rice, *Attorney-Client Privilege in the United States* § 4:19 (1993) (bracketed text original to court's opinion)).[10] As the Rice treatise further recognized:

> There is little justification for distinguishing between 'permanent' employees who communicate with counsel on matters that are within the scope of their employment, and 'temporary' employees (outside agents) who provide the same services to the corporation, often with the same continuity of employment (although without the same fringe benefits from the employer), and whose communications are equally important to the legal services that counsel renders to the corporate client.

Rice, *supra*, § 4:19. *See also Energy Capital Corp.* 45 Fed. Cl. at 490, quoting *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994) ("A literalistic extension of the privilege only to persons on the corporations' payroll would invariably prevent a corporation's attorney from engaging in a confidential discussion with a corporation's independent accountant, no matter how important the accountant's information would be to the attorney.")

To determine whether a consultant may be included in privileged communications, Chief Judge Damich adopted the rule as proposed in the Rice treatise:

> A corporate attorney-client privilege faithful to *Upjohn* would protect communications of those persons (otherwise qualifying) who, either when they are speaking or after they have acquired their information: (1) possess decision making responsibility regarding the matter about which legal help is sought, (2) are implicated in the chain of command relevant to the subject matter of the legal services, or (3) are personally responsible for or involved in the activity that might lead to liability for the corporation.

45 Fed. Cl. at 490 (quoting Rice, *supra*, § 4:19).

---

[10] As Chief Judge Damich noted, 45 Fed. Cl. at 490, the Federal Circuit has in other contexts cited the Rice treatise with approval. *See Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

As set forth in the attached sworn declaration of consultant John Peirson, the conditions of Mr. Peirson's engagement satisfy the foregoing test. Mr. Peirson has worked on permitting issues with respect to the Rocky Point or Point Arguello unit areas since 1983 (Peirson Decl. ¶ 4), and was retained for that purpose by Arguello starting in 1999. (*Id.* ¶ 6.) At that time, he assumed direct responsibility for permitting-related issues with respect to the Rocky Point Unit, and became personally responsible for preparing and filing Rocky Point-related permit applications that were to be submitted to Santa Barbara County, the Minerals Management Service, and the California Coastal Commission. (*Id.*)

Mr. Perison was responsible for deciding, *e.g.*, what filings need to be made with each relevant agency, the deadlines for such filings, and the contents of each filing. (*Id.* ¶ 7.) Most of the permit-related filings and correspondence with the various regulatory agencies regarding Rocky Point were prepared by Mr. Peirson or at his direction. (*Id.* ¶ 8.) This included the revisions to the Point Arguello Unit Development and Production Plan to include the development of the Rocky Point Unit from the Point Arguello Unit platforms (which was later limited to the development of the East Half of Lease OCS-P 0451), the application to Santa Barbara County for Modification of the Final Development Plan For the Point Arguello Project, and the consistency analysis prepared for submission to the California Coastal Commission. (*Id.*) In the course of preparing these applications, Mr. Peirson was in regular contact with Plains staff and management, and regularly delegated assignments directly to Plains employees. (*Id.*)

Mr. Peirson also attended Rocky Point-related meetings between Plains and the Minerals Management Service, Santa Barbara County and the California Coastal Commission, and at such meetings he represented Plains and spoke on the company's behalf. (*Id.* ¶ 9.)

Furthermore, Mr. Peirson has maintained the confidentiality of Plains information and materials, (*id.* ¶ 10), pursuant to a Master Services Agreement between his firm and Plains, which requires that he keep confidential all non-public company information. (*Id.*)

Here, as in the *In re Bieter* case relied upon in *Energy Capital*, the privilege fully applies to communications to and from Mr. Peirson, as "[t]here is no principled basis to distinguish [his] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially . . . . [H]e was in all relevant respects the functional equivalent of an employee." 16 F.3d at 938.

**V. There Is No Basis for an *In Camera* Review.**

There is no basis for an *in camera* review of the nine documents at issue in the Government's motion.

Even when a party has alleged the crime-fraud exception to the attorney-client privilege, the Supreme Court has admonished that "[a] blanket rule allowing *in camera* review as a tool for determining the applicability of the crime-fraud exception . . . would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *United States v. Zolin*, 491 U.S. 554, 571 (1989). "There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting . . . agents." *Id.*

The Court therefore established an evidentiary threshold that opponents of a privilege claim must satisfy before a district court may undertake *in camera* review. *Id*. at 572. Specifically, in crime-fraud cases "'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.*

(quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982)). "*Once that showing is made*, the decision whether to engage in *in camera* review rests in the sound discretion of the district court," which should consider factors such as "the volume of materials" to be reviewed, "the relative importance to the case of the alleged privileged information," and "the likelihood that the evidence produced through *in camera* review . . . will establish that the crime-fraud exception does apply." *Id.* (emphasis added).

The Supreme Court thus established a critical evidentiary threshold that a moving party must surpass before a trial court can even consider whether to perform an *in camera* review, in cases where the crime-fraud exception is claimed. "The law does not clearly specify what type of showing should be made by the opposing party to justify *in camera* review of the documents…" outside the crime-fraud context. *In re Grand Jury Investigation*, 974 F.2d 1068, 1073–74 (9th Cir. 1992). It is impossible to imagine, however, how the threshold could possibly be *lower* when crime-fraud is not alleged.

The Ninth Circuit has held that the threshold "standard established in *Zolin* for crime-fraud *in camera* review applies equally well when a party seeks *in camera* review to contest assertions of the privilege," thereby requiring the party opposing the privilege to "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged," with the trial court still retaining discretion not to conduct an *in camera* review even if that threshold is met. *In re Grand Jury Investigation*, 974 F.2d at 1074–75.

Here, there is no basis for the "intrusion" on the privilege that the Government seeks. Each of the Government's arguments can be resolved without an *in camera* review. *First*, the Government alleges that the descriptions of the documents on the privilege logs are

insufficient. Yet the sufficiency of the descriptions are readily observable on the face of the logs themselves, *see* pp. 5-6, *supra*.

*Second*, the Government argues that Mr. Rose was not an attorney for the company, but as discussed in Section III, *supra*, and as set forth in Mr. Rose's declaration, this is simply untrue, and resolution of his status does not in any event require a review of the withheld documents.

*Third*, the Government argues that correspondence to and from Mr. Peirson cannot be privileged because he is an outside consultant. But resolution of that issue turns on the law applying the attorney client privilege to such consultants, *see* Section IV, *supra*, and once again does not require or support *in camera* review.

In sum, each of the arguments raised by the Government can readily be resolved without the *in camera* review of any of the nine withheld documents. The requirements of *Zolin* are not met and an *in camera* review cannot be justified.

**VI. A Brief Discussion of Individual Documents.**

The foregoing discussion disposes entirely of the arguments advanced in the Government's motion to compel. However, we include the following brief discussion of the individual documents that the Government has moved to have produced or reviewed *in camera*.

- **Documents Nos. 1, 2, & 3.** These are October 5, 2002 and October 7, 2002 emails to legal counsel Rose and Maynard (among others), sent by Plains/Arguello executives Huguenard and Gladney. As described in the privilege log, each of these emails seeks legal advice with respect to the subject of this litigation.
- **Document No. 4.** This is an email from counsel (Mr. Rose) providing legal advice to two in-house clients.

- **Document No. 5**. This is an email from Mr. Rumsey of Plains, requesting comments from counsel (David Rose), copied to Mr. Maynard (Plains counsel).
- **Document No. 6.** This is an email from one counsel (Mr. Rose) to another counsel (Mr. Maynard) and two Plains executives providing legal advice regarding an attached document.
- **Document No. 7.** This is a memorandum from Mr. Huguenard conveying confidential information and seeking advice from two Plains counsel (Maynard and Rose), also sent to two Plains executives (Gladney and Rumsey), and Mr. Peirson.
- **Document No. 8.** This is an email from counsel (Mr. Rose) providing legal advice to a Plains employee (Mr. Goeres).
- **Document No. 9.** This is an email from Mr. Peirson providing confidential information relating to legal issues (including, as reflected on the privilege log, with respect to the *Norton* decision) to counsel (Mr. Rose and Mr. Maynard) for the purpose of counsel's provision of legal advice to the company, and to other senior Plains personnel.

## CONCLUSION

For the foregoing reasons, the Government's motion to compel should be denied.

Respectfully submitted,

s/ Steven J. Rosenbaum
by s/ Thomas J. Cosgrove
Steven J. Rosenbaum
*Counsel of Record*
Thomas J. Cosgrove
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-5568
Facsimile: (202) 778-5568

Attorneys for Plains Exploration &
Production Company and Arguello, Inc.

October 19, 2007

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,*<br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,*<br>v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ****************************************** | |

**DECLARATION OF DAVID ROSE**

David Rose declares and states as follows:

1. I am an employee of Plains Exploration & Production Company. I have been an employee of that company since December 2002. From January 2000 through December 2002, I was an employee of Arguello Inc. ("Arguello"). Arguello was from January 2000 through December 2002 a wholly owned subsidiary of Plains Resources Inc., and then in December 2002 became a wholly owned subsidiary of Plains Exploration & Production Company as part of a corporate reorganization. (Plains Resources Inc. and Plains Exploration & Production Company are collectively referred to as "Plains"). I make this declaration based on my own personal knowledge and could competently testify to the matters herein if called upon to do so.

2. I graduated from the Santa Barbara College of Law in December, 1996. I was admitted to the California bar in June, 1997. I have remained a member in good standing of the California bar since being admitted.

3. In 2000, I was hired by Arguello as a supervisor in the Environmental, Safety, and Regulatory Compliance department in Gaviota, California, and remain in that department (since renamed the Environmental Health and Safety Department). Robert Huguenard, Offshore Vice President for Arguello, and a colleague of mine from a former employer, was aware that I had graduated from law school and was a member of the California bar. Soon after I began working at Arguello, Mr. Huguenard began requesting that I assist him by providing legal advice pertaining to California and federal regulatory issues. Over time, Mr. Huguenard continued to request my legal assistance. This was in part because there were no other attorneys working in Arguello's Gaviota office, and there were no attorneys in the legal

department of Arguello's parent Plains who were knowledgeable about California-specific regulatory issues.

4. In 2000, in light of the increasing frequency with which Mr. Huguenard was calling on me for legal advice, we concluded that it would be prudent to discuss with Plains' office of the general counsel in Houston, Texas whether this arrangement would be acceptable. After discussion, Plains' Houston office recognized the advantages of having an attorney in California, and I was authorized to provide legal advice to Mr. Huguenard and other Arguello employees. It was understood and agreed that I would consult with Plains' attorneys in Houston as needed for guidance and supervision.

5. After receiving clearance to function as an attorney for Arguello, I was called upon to provide legal advice on a regular basis. For instance, I was routinely asked by various employees to provide a legal review of contracts that Arguello was in the process of negotiating with parties such as contractors and suppliers. During this period, I also continued providing legal advice to Arguello with respect to federal, state, and local regulatory issues, all with the approval of Plains' office of the general counsel.

6. Particularly in the 2002 to 2003 time frame, I was asked by Mr. Huguenard to provide legal advice with respect to two related issues in connection with Arguello's efforts to develop the eastern half of Lease OCS-P 0451 following the *Norton* decision. First, Santa Barbara County had raised the issue of possible drainage from Lease 0452 to Lease 0451, and I was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the issues surrounding such possible drainage. Second, in connection with MMS's suggestion that the eastern half of Lease OCS-P 0451 might be removed

from the Rocky Point Unit to facilitate its development, I was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the de-unitization issues.

7. In the course of providing such legal advice, I was involved in high level discussions and correspondence with Arguello and Plains management, including Plains Vice President Tom Gladney and Mr. Huguenard. Were it not for the fact that I was providing legal advice with respect to the drainage and de-unitization issues, I would not have been included in such high-level discussions.

8. I have reviewed the documents withheld on grounds of privilege whose production is now sought by the Government in its motion to compel. I would not have been involved in the communications contained in those documents were I not an attorney assisting Arguello and Plains on the drainage and de-unitization issues. For each of the documents raised by the Government in which I am a sender or recipient, I am providing or being requested to provide legal advice with respect to the Rocky Point project. For certain of the documents, Gregg Maynard (a Plains attorney), is also being requested to provide legal advice with respect to the same.

9. In connection with my non-legal responsibilities for Arguello, I am the contact of record with the Federal Aviation Administration for the Platform Hidalgo Heliport. The pages included in Exhibit 2 to the Government's motion to compel simply reflect this fact.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 10/25/07

David Rose

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,*<br><br>v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,*<br>v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ****************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ****************************************** | |

**DECLARATION OF JOHN F. PEIRSON, Jr.**

John F. Peirson, Jr. declares and states as follows:

1. I am an environmental consultant with MRS, a consulting firm located in Ventura, California. I make this declaration based on my own personal knowledge and could competently testify to the matters herein if called upon to do so.

2. MRS provides environmental and permitting-related consulting services for various industries. Approximately 60% to 70% of MRS's business involves permitting work related to proposed industrial projects in the State of California. About half of that work is on behalf of companies attempting to develop industrial projects, with the remainder on behalf of government agencies that hire MRS to conduct environmental reviews of proposed projects that have permit applications. The rest of MRS's business mainly involves consulting with respect to permit compliance and environmental surveys.

3. I have over 25 years of experience as a permitting consultant. In my work on behalf of permit applicants, I typically assist clients by preparing applications for state, local, and federal permits, submitting the applications, and then representing the clients before the relevant agencies in connection with the applications. I have extensive experience representing clients before the Minerals Management Service, the California Coastal Commission, Santa Barbara County, and other local agencies.

4. I have worked on permitting issues with respect to the Rocky Point or Point Arguello unit areas since 1983, when the previous firm I worked for (ADL) was retained by Santa Barbara County, the Minerals Management Service, and the California Coastal Commission to prepare an Environmental Impact Report and Environmental Impact Statement with respect to the Point Arguello Project. Leases OCS-P 0451 and 0452, which I am informed are the subject of this litigation, are adjacent to the Point Arguello Unit and the development wells on the eastern half of Lease OCS-P 0451 have been drilled from Platform Hidalgo, one of the platforms from which the Point Arguello production wells were drilled.

5. In the 1993/1994 timeframe, I was retained by Chevron to perform an extensive Gas Reinjection Study for the Point Arguello Unit. Soon after beginning work for Chevron, I assumed broad responsibility with respect to Point Arguello permitting requirements and became Chevron's main point of contact as it related to permitting issues with Santa Barbara County. After Arguello Inc. ("Arguello"), a wholly owned subsidiary of Plains Resources Inc., replaced Chevron as the operator of the Point Arguello Unit in 1999, I was retained by and continued working on Point Arguello permitting issues for the new operator. I continued to do so after Arguello became a wholly owned subsidiary of Plains Exploration & Production Company in December 2002 as part of a corporate reorganization (collectively all of the Plains entities are referred to as "PXP").

6. When I was retained by PXP in 1999, I also assumed direct responsibility for permitting-related issues with respect to the Rocky Point Unit. In this capacity, I was personally responsible for preparing and filing Rocky Point-related permit applications that were to be submitted to Santa Barbara County, the Minerals Management Service, and the California Coastal Commission.

7. During the course of my work on Rocky Point, I was responsible for the overall management of the permitting process. I was given responsibility for determining what filings needed to be made with each relevant agency, for setting the deadlines for such filings, and for determining the contents of each filing. I was given this level of management responsibility with respect to Rocky Point because of my strong relationships with the regulatory agencies, and because PXP did not have sufficient internal capacity to prepare and file the permit applications on its own.

8. Most, if not all, of the permit-related filings and correspondence with the various regulatory agencies on Rocky Point were prepared by me or at my direction. This

included the revisions to the Point Arguello Unit Development and Production Plan to include the development of the Rocky Point Unit from the Point Arguello Unit platforms (which was later limited to the development of the East Half of Lease OCS-P 0451), the application to Santa Barbara County for Modification of the Final Development Plan For the Point Arguello Project, and the consistency analysis prepared for submission to the California Coastal Commission. In the course of preparing these applications, I was in regular contact with PXP staff and management, and regularly delegated assignments directly to PXP employees. For instance, in preparing the revisions to the Point Arguello Unit Development and Production Plan that were submitted to the Minerals Management Service, I would typically assign coverage of specific technical subjects (e.g., geology, reservoir, engineering, etc.) directly to qualified PXP employees and then incorporate the employees' work product into the final permit application. In nearly all cases, I personally filed the relevant permit applications with the regulatory agencies on PXP's behalf.

9. I also attended Rocky Point-related meetings between PXP and the Minerals Management Service, Santa Barbara County and/or the California Coastal Commission. At such meetings, I represented PXP before the agencies and spoke on the company's behalf.

10. My work with PXP is governed by a Master Services Agreement that governs all work between MRS and PXP. That agreement requires that MRS keep confidential all non-public company information. Since working for PXP, I have, in fact, maintained as confidential all non-public company information that has been provided to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 18, 2007

John F. Peirson, Jr.

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs,* <br> v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| *************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs,* <br> v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| *************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff,* | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| *************************************** | |

## DECLARATION OF THOMAS J. COSGROVE

Thomas J. Cosgrove declares and states as follows:

1. I am an attorney at the law firm Covington & Burling LLP and am a member in good standing of the Bar of the Court of Federal Claims. I provide this declaration in support of Plaintiffs' Opposition to Defendants Motion to Compel Production of Documents Withheld on the Basis of Attorney-Client Privilege.

2. Attached hereto are true and correct copies of or excerpts from the following documents as set forth below:

| **Exhibit** | **DESCRIPTION** |
|---|---|
| 1 | October 10, 2007 Email from Thomas Cosgrove To Gregg Schwind |
| 2 | October 10, 2007 Email from Gregg Schwind to Thomas Cosgrove |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 10/19/2007

Thomas J. Cosgrove

# EXHIBIT 1

**Cosgrove, Thomas**

**From:** Cosgrove, Thomas
**Sent:** Wednesday, October 10, 2007 2:38 PM
**To:** 'Schwind, Gregg (CIV)'
**Cc:** Kidd-Miller, Allison (CIV); Rosenbaum, Steven
**Subject:** RE: Amber v. U.S.; Privilege Challenge Motion

Gregg,

First, you sent your email after close of business on Friday. Monday was a holiday. It is now only Wednesday. In light of the fact that the privilege logs at issue are more than ten months old, it is beyond ridiculous for you to be filing a motion now, and even more so on such short notice.

Second, setting aside your failure to raise any issue whatsoever with respect to these logs for almost a full year, in your email you have not articulated any basis whatsoever to challenge Plains' and Arguello's assertion of privilege. This is not surprising because, in formulating the privilege logs, we carefully evaluated each document and have concluded that each is within the scope of the attorney-client privilege.

Third, based on your cryptic comment on the phone last Friday and a review of the documents you have chosen to challenge, it seems that you are under a misimpression that David Rose of Arguello is not an attorney. If this is in fact your position, you are wrong. David Rose is a member of the California bar and serves as an attorney to the company with respect to California-related issues (e.g., California regulatory issues).

Fourth, as an aside, I don't understand your suggestion that there is an "accelerated" trial schedule here. We have both known for more than two months that trial would begin in November or December, and it is still only early October.

In closing, we would suggest that you reconsider your seemingly ill-conceived motion.

Regards,
Tom Cosgrove

-----Original Message-----
From: Schwind, Gregg (CIV) [mailto:Gregg.Schwind@usdoj.gov]
Sent: Wednesday, October 10, 2007 1:51 PM
To: Cosgrove, Thomas; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV)
Subject: RE: Amber v. U.S.; Privilege Challenge Motion

Tom:

Unfortunately, with the accelerated schedule for trial, we intend to file the motion this afternoon if you cannot agree by then to withdraw the privilege assertions. Of course, if you later decide to abandon privilege with respect to any of the documents, that's fine.

Gregg

-----Original Message-----
From: Cosgrove, Thomas [mailto:tcosgrove@cov.com]
Sent: Wednesday, October 10, 2007 1:18 PM
To: Schwind, Gregg (CIV) ; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV)
Subject: Re: Amber v. U. S.; Privilege Challenge Motion

Gregg,

I am traveling this week, but promise to have our response to you by Friday.

Tom

----- Original Message -----
From: Schwind, Gregg (CIV) <Gregg.Schwind@usdoj.gov>
To: Schwind, Gregg (CIV) <Gregg.Schwind@usdoj.gov>; Cosgrove, Thomas; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV) <Allison.Kidd-Miller@usdoj.gov>
Sent: Fri Oct 05 20:49:45 2007
Subject: RE: Amber v. U.S.; Privilege Challenge Motion

Tom:

I neglected to mention that we will also challenge the assertion of privilege with respect to the two documents on the Supplemental Arguello Privilege Log dated January 19, 2007. These are:

12/19/02 document from Rose to Goeres, and

12/5/02 document from Pierson to Rose, Hertfelder, Goeres, and Huguenard.

Thanks,

Gregg

---

From: Schwind, Gregg (CIV)
Sent: Friday, October 05, 2007 8:46 PM
To: 'Cosgrove, Thomas'; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV)
Subject: Amber v. U.S.; Privilege Challenge Motion

Tom:

As discussed briefly today among the many issues related to the Scheduling Order, we intend to file a motion challenging Plains' assertion of privilege over the following documents listed on the January 19, 2007 privilege log:

10/5/02 document from Huguenard to Maynard and Rose, with copies to Gladney and Rumsey.

10/5/02 document from Gladney to Huguenard, Maynard, and Rose.

10/7/02 document from Huguenard to Gladney, Maynard, and Rose.

10/31/02 document from Rose to Rumsey, Gladney, and Huguenard, with copy to Maynard (please confirm that this is the e-mail redacted from page ARGUELLO-00115; if not, please identify the correct document on the log).

10/31/02 document from Rumsey to Gladney, Huguenard, and Rose, with copies to Maynard and Rumsey.

2/12/03 document from Rose to Maynard, Rumsey, and Huguenard.

Undated document from Huguenard to Gladney, Rumsey, Maynard, Rose, and Peirson.

Please let us know if you are willing to produce voluntarily any of the seven challenged documents. Also, please let us know if you are willing to provide any further description of the documents beyond what is contained in the privilege log. While this motion will in no way interfere with the trial dates set by the Court, we want to get the issue briefed and decided sooner rather than later. Therefore, our intent is to file next week a motion to compel their production.

Thanks.

Gregg

Gregg M. Schwind
Trial Attorney
U.S. Department of Justice
Civil Division, Commercial Litigation Branch 1100 L Street, N.W.
Washington, D.C. 20530 [Overnight zip code: 20005]
Tel: (202) 353-2345
Fax: (202) 514-8624

# EXHIBIT 2

**Cosgrove, Thomas**

**From:** Schwind, Gregg (CIV) [Gregg.Schwind@usdoj.gov]
**Sent:** Wednesday, October 10, 2007 3:20 PM
**To:** Cosgrove, Thomas
**Cc:** Kidd-Miller, Allison (CIV); Rosenbaum, Steven
**Subject:** RE: Amber v. U.S.; Privilege Challenge Motion

Tom:

Thank you. My understanding from your response is that Plains will not withdraw, or even revisit, any of its privilege assertions. The challenge concerns a mere nine documents, none of which you ever intended to review in a good faith effort to narrow the issues in dispute. There was no reason to wait until Friday for that response, except to delay the filing of our motion for tactical reasons.

To correct the record, I brought up the privilege issue in February, shortly after we received the log; I recall that you refused to provide any better description of the documents for us to assess the validity of the assertions. You and I both worked Monday despite its status as a Federal holiday; you spoke several times from your office. David Rose does not work for Plains as an attorney. And we only learned last week that trial would begin on December 3.

Gregg

-----Original Message-----
From: Cosgrove, Thomas [mailto:tcosgrove@cov.com]
Sent: Wednesday, October 10, 2007 2:38 PM
To: Schwind, Gregg (CIV)
Cc: Kidd-Miller, Allison (CIV); Rosenbaum, Steven
Subject: RE: Amber v. U.S.; Privilege Challenge Motion

Gregg,

First, you sent your email after close of business on Friday. Monday was a holiday. It is now only Wednesday. In light of the fact that the privilege logs at issue are more than ten months old, it is beyond ridiculous for you to be filing a motion now, and even more so on such short notice.

Second, setting aside your failure to raise any issue whatsoever with respect to these logs for almost a full year, in your email you have not articulated any basis whatsoever to challenge Plains' and Arguello's assertion of privilege. This is not surprising because, in formulating the privilege logs, we carefully evaluated each document and have concluded that each is within the scope of the attorney-client privilege.

Third, based on your cryptic comment on the phone last Friday and a review of the documents you have chosen to challenge, it seems that you are under a misimpression that David Rose of Arguello is not an attorney. If this is in fact your position, you are wrong. David Rose is a member of the California bar and serves as an attorney to the company with respect to California-related issues (e.g., California regulatory issues).

Fourth, as an aside, I don't understand your suggestion that there is an "accelerated" trial schedule here. We have both known for more than two months that trial would begin in November or December, and it is still only early October.

In closing, we would suggest that you reconsider your seemingly ill-conceived motion.

Regards,
Tom Cosgrove

-----Original Message-----
From: Schwind, Gregg (CIV) [mailto:Gregg.Schwind@usdoj.gov]
Sent: Wednesday, October 10, 2007 1:51 PM
To: Cosgrove, Thomas; Rosenbaum, Steven

Cc: Kidd-Miller, Allison (CIV)
Subject: RE: Amber v. U.S.; Privilege Challenge Motion

Tom:

Unfortunately, with the accelerated schedule for trial, we intend to file the motion this afternoon if you cannot agree by then to withdraw the privilege assertions. Of course, if you later decide to abandon privilege with respect to any of the documents, that's fine.

Gregg

-----Original Message-----
From: Cosgrove, Thomas [mailto:tcosgrove@cov.com]
Sent: Wednesday, October 10, 2007 1:18 PM
To: Schwind, Gregg (CIV); Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV)
Subject: Re: Amber v. U.S.; Privilege Challenge Motion

Gregg,

I am traveling this week, but promise to have our response to you by Friday.

Tom

----- Original Message -----
From: Schwind, Gregg (CIV) <Gregg.Schwind@usdoj.gov>
To: Schwind, Gregg (CIV) <Gregg.Schwind@usdoj.gov>; Cosgrove, Thomas; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV) <Allison.Kidd-Miller@usdoj.gov>
Sent: Fri Oct 05 20:49:45 2007
Subject: RE: Amber v. U.S.; Privilege Challenge Motion

Tom:

I neglected to mention that we will also challenge the assertion of privilege with respect to the two documents on the Supplemental Arguello Privilege Log dated January 19, 2007. These are:

12/19/02 document from Rose to Goeres, and

12/5/02 document from Pierson to Rose, Hertfelder, Goeres, and Huguenard.

Thanks,

Gregg

---

From: Schwind, Gregg (CIV)
Sent: Friday, October 05, 2007 8:46 PM
To: 'Cosgrove, Thomas'; Rosenbaum, Steven
Cc: Kidd-Miller, Allison (CIV)
Subject: Amber v. U.S.; Privilege Challenge Motion

Tom:

As discussed briefly today among the many issues related to the Scheduling Order, we intend to file a motion challenging Plains' assertion of privilege over the following documents listed on the January 19, 2007 privilege log:

10/5/02 document from Huguenard to Maynard and Rose, with copies to Gladney and Rumsey.

10/5/02 document from Gladney to Huguenard, Maynard, and Rose.

10/7/02 document from Huguenard to Gladney, Maynard, and Rose.

10/31/02 document from Rose to Rumsey, Gladney, and Huguenard, with copy to Maynard (please confirm that this is the e-mail redacted from page ARGUELLO-00115; if not, please identify the correct document on the log).

10/31/02 document from Rumsey to Gladney, Huguenard, and Rose, with copies to Maynard and Rumsey.

2/12/03 document from Rose to Maynard, Rumsey, and Huguenard.

Undated document from Huguenard to Gladney, Rumsey, Maynard, Rose, and Peirson.

Please let us know if you are willing to produce voluntarily any of the seven challenged documents. Also, please let us know if you are willing to provide any further description of the documents beyond what is contained in the privilege log. While this motion will in no way interfere with the trial dates set by the Court, we want to get the issue briefed and decided sooner rather than later. Therefore, our intent is to file next week a motion to compel their production.

Thanks.

Gregg

Gregg M. Schwind
Trial Attorney
U.S. Department of Justice
Civil Division, Commercial Litigation Branch 1100 L Street, N.W.
Washington, D.C. 20530 [Overnight zip code: 20005]
Tel: (202) 353-2345
Fax: (202) 514-8624