# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 02-30C, 04-1822C & 05-249C (consolidated)

| | |
|---|---|
| AMBER RESOURCES COMPANY, *et al.*, | |
| *Plaintiffs*, v. | |
| THE UNITED STATES, | No. 02-30C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| ANADARKO E & P COMPANY L.P., *et. al.*, | |
| *Plaintiffs*, v. | |
| | |
| THE UNITED STATES, | No. 04-1822C |
| | (Judge Bruggink) |
| *Defendant.* | |
| ***************************************** | |
| NYCAL OFFSHORE DEVELOPMENT | |
| CORPORATION, | |
| *Plaintiff*, | |
| v. | |
| | |
| THE UNITED STATES, | No. 05-249C |
| *Defendant.* | (Judge Bruggink) |
| ***************************************** | |

## DECLARATION OF DAVID ROSE

David Rose declares and states as follows:

1. I am an employee of Plains Exploration & Production Company. I have been an employee of that company since December 2002. From January 2000 through December 2002, I was an employee of Arguello Inc. ("Arguello"). Arguello was from January 2000 through December 2002 a wholly owned subsidiary of Plains Resources Inc., and then in December 2002 became a wholly owned subsidiary of Plains Exploration & Production Company as part of a corporate reorganization. (Plains Resources Inc. and Plains Exploration & Production Company are collectively referred to as "Plains"). I make this declaration based on my own personal knowledge and could competently testify to the matters herein if called upon to do so.

2. I graduated from the Santa Barbara College of Law in December, 1996. I was admitted to the California bar in June, 1997. I have remained a member in good standing of the California bar since being admitted.

3. In 2000, I was hired by Arguello as a supervisor in the Environmental, Safety, and Regulatory Compliance department in Gaviota, California, and remain in that department (since renamed the Environmental Health and Safety Department). Robert Huguenard, Offshore Vice President for Arguello, and a colleague of mine from a former employer, was aware that I had graduated from law school and was a member of the California bar. Soon after I began working at Arguello, Mr. Huguenard began requesting that I assist him by providing legal advice pertaining to California and federal regulatory issues. Over time, Mr. Huguenard continued to request my legal assistance. This was in part because there were no other attorneys working in Arguello's Gaviota office, and there were no attorneys in the legal

department of Arguello's parent Plains who were knowledgeable about California-specific regulatory issues.

4. In 2000, in light of the increasing frequency with which Mr. Huguenard was calling on me for legal advice, we concluded that it would be prudent to discuss with Plains' office of the general counsel in Houston, Texas whether this arrangement would be acceptable. After discussion, Plains' Houston office recognized the advantages of having an attorney in California, and I was authorized to provide legal advice to Mr. Huguenard and other Arguello employees. It was understood and agreed that I would consult with Plains' attorneys in Houston as needed for guidance and supervision.

5. After receiving clearance to function as an attorney for Arguello, I was called upon to provide legal advice on a regular basis. For instance, I was routinely asked by various employees to provide a legal review of contracts that Arguello was in the process of negotiating with parties such as contractors and suppliers. During this period, I also continued providing legal advice to Arguello with respect to federal, state, and local regulatory issues, all with the approval of Plains' office of the general counsel.

6. Particularly in the 2002 to 2003 time frame, I was asked by Mr. Huguenard to provide legal advice with respect to two related issues in connection with Arguello's efforts to develop the eastern half of Lease OCS-P 0451 following the *Norton* decision. First, Santa Barbara County had raised the issue of possible drainage from Lease 0452 to Lease 0451, and I was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the issues surrounding such possible drainage. Second, in connection with MMS's suggestion that the eastern half of Lease OCS-P 0451 might be removed

from the Rocky Point Unit to facilitate its development, I was asked by Mr. Huguenard and other Arguello and Plains executives to provide legal advice with respect to the de-unitization issues.

7. In the course of providing such legal advice, I was involved in high level discussions and correspondence with Arguello and Plains management, including Plains Vice President Tom Gladney and Mr. Huguenard. Were it not for the fact that I was providing legal advice with respect to the drainage and de-unitization issues, I would not have been included in such high-level discussions.

8. I have reviewed the documents withheld on grounds of privilege whose production is now sought by the Government in its motion to compel. I would not have been involved in the communications contained in those documents were I not an attorney assisting Arguello and Plains on the drainage and de-unitization issues. For each of the documents raised by the Government in which I am a sender or recipient, I am providing or being requested to provide legal advice with respect to the Rocky Point project. For certain of the documents, Gregg Maynard (a Plains attorney), is also being requested to provide legal advice with respect to the same.

9. In connection with my non-legal responsibilities for Arguello, I am the contact of record with the Federal Aviation Administration for the Platform Hidalgo Heliport. The pages included in Exhibit 2 to the Government's motion to compel simply reflect this fact.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 10/25/07

David Rose